**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| John Doe 1, John Doe 2, John Doe 3, John Doe 4, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| vs. | Civil Case No. _____ |
| The Ohio State University, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

1.     The Ohio State University is preeminent undergraduate and graduate research university and a perennial athletic powerhouse.

2.     Today, in 2018,[1] Ohio States' Strategic Plan vows that:



What Ohio State does matters. And how we do it matters….
We owe it to our students, our faculty, our staff and to our community. We owe it to ourselves. And, because we are Ohio State, we owe it to the nation.

3.     Plaintiffs file this lawsuit in the hope that Ohio State will make good on that promise. Ohio State is right: now is the "time" for "change."

4.     To make a change, Ohio State must take responsibility for a dark (and until recently, buried) chapter in its storied history, a chapter during which its campus became a "cesspool of deviancy" and its doctor and assistant professor, Dr. Richard Strauss sexually assaulted, battered, molested, and/or harassed potentially thousands of its students.

5.     Throughout all times alleged in this Complaint, Dr. Strauss was employed by Defendant Ohio State University ("OSU") to provide medical care and treatment to

---

[1] The Ohio State University, Office of the President, https://president.osu.edu/strategicplan/ (last visited July 16, 2018).

OSU's students and student-athletes. He was also employed as an assistant professor of medicine.

6.     As a sports team doctor and assistant professor, Dr. Strauss was clothed in the authority and legitimacy of OSU. He was not only a medical doctor—he was OSU's official medical doctor.

7.     Dr. Strauss used his position of trust and confidence to regularly and systematically sexually assault, abuse, batter, molest, and harass male students and student-athletes over the entire course of his career in his capacity as an employee, agent, and/or representative of OSU.

8.     Despite being repeatedly informed of Dr. Strauss's sexual assault, abuse, battery, molestation, and/or harassment, OSU failed to take appropriate action (or, in fact, any action whatsoever) to stop or prevent Dr. Strauss from continuing his rampant sexual misconduct.

## JURISDICTION AND VENUE

9.     Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

10.     This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.*, as more fully set forth herein.

11.     This Court has subject matter jurisdiction over this action under numerous statutes, including 28 U.S.C. § 1331 (federal question jurisdiction).

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the

events  giving rise to Plaintiffs' claims arose in this judicial district.

## **PARTIES**

13.      Plaintiffs incorporate by reference the allegations contained in the previous paragraphs.

14.      Plaintiff John Doe 1 is a resident of the State of Ohio and a former student-athlete on OSU's varsity wrestling team. He was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during an examination in the 1990s.

15.      Plaintiff John Doe 2 is a resident of the State of Ohio and a former student-athlete on OSU's varsity wrestling team. He was first abused by Dr. Strauss when he was 14 years old, and he was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during approximately 50 examinations by Dr. Strauss in the late 1980s and 1990s.

16.      Plaintiff John Doe 3 is a resident of the State of Ohio and a former student-athlete on OSU's varsity wrestling team. He was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during an examination in the 1990s.

17.      Plaintiff John Doe 4 is a resident of the State of Ohio and a former student-athlete on OSU's varsity wrestling team. He was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during multiple physical examinations and in the locker room of Larkins Hall on the campus of Ohio State University in the 1990s.

18.      Defendant  The Ohio State University ("OSU" or "Ohio State")  is and at all relevant times has been a state-owned and operated public university and institution of higher education organized and existing under laws of the State of Ohio. OSU receives

federal financial assistance and is therefore subject to Title IX, 20 U.S.C. § 1681, *et seq.*

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

19.     OSU hired Dr. Strauss in 1978 as an assistant professor of medicine. From 1981 to 1995, Strauss was the university's team doctor and had contact with athletes in baseball, cheerleading, cross country, fencing, football, gymnastics, ice hockey, lacrosse, soccer, swimming, tennis, track, volleyball, and wrestling.

20.     Dr. Strauss was employed by OSU until he retired in 1998. Dr. Strauss was a prolific sexual predator— he is estimated to have sexually assaulted, abused, battered, molested, and/or harassed 1,500 to 2,500 male student athletes during his 20-year tenure at Ohio State.

21.     To many at OSU, Dr. Strauss was known simply as "Doc." The student athletes, however, had a different nickname for Dr. Strauss: "Dr. Jelly Paws." Dr. Strauss earned the nickname from his notoriously hands-on physical examinations.

22.     For decades, Dr. Strauss was a fixture in the locker rooms, showers, and saunas of Larkins Hall, the former student and faculty recreation center on the Ohio State campus that housed the wrestling, gymnastics, and swimming teams.

23.     A former OSU wrestling coach described Larkins Hall as "a cesspool of deviancy," saying "Coaching my athletes in Larkins Hall was one of the most difficult things I ever did."[2]

---

[2]  Rachael Bade and John Bresnahan, *'A cesspool of deviancy': New claims of voyeurism test Jordan denials*, POLITICO, (July 6, 2018), https://www.politico.com/story/2018/07/06/jim-jordan-harassment-ohio-state-wrestling-699192. (last visited July 16, 2018).

24.     Student athletes were regularly harassed in Larkins Hall by sexually aggressive men who attended the university or worked there:

> The voyeurs would masturbate while watching the wrestlers shower or sit in the sauna, or engage in sexual acts in the areas where the athletes trained, the former wrestlers said.
> …
> The situation was so egregious that former wrestling head coach Russ Hellickson would at times have to physically drag the gawkers out of the building, several sources familiar with his actions at the time said. Hellickson pleaded with the university multiple times to move their athletes to a private facility, the sources said….[3]

25.     Student athletes also pleaded with the university administration to make changes to Larkins Hall to protect student athletes.

26.     During the 1994-1995 season, two wrestlers met with then-Athletic Director Andy Geiger ("AD Geiger") in his office. The wrestlers complained about the voyeuristic and lewd conduct of the men in the lockers and saunas of Larkins Hall, including that of Dr. Strauss.

27.     They presented AD Geiger with drawings of changes to the wrestling and gymnastics locker room that they believed would enhance safety and privacy for student athletes.

28.     AD Geiger promised to look into doing something about the situation.

29.     But OSU did nothing.

30.     It did not move the athletes to a private facility, as Coach Hellickson requested.

---

[3] *Id.*

31.     And it did not make the changes the wrestlers suggested.

32.     Only one thing changed: the locker room carpet was cleaned.

33.     Ohio State demolished Larkins Hall in 2005, the same year Dr. Strauss took his own life.

34.     Dr. Strauss thrived in the "cesspool of deviancy" at Larkins Hall. Like many sexual predators, once he selected his prey, he took steps to groom them for abuse.

35.     He once moved his locker to be next to the locker of one of his favorite wrestlers, who, accordingly to another former wrestler, looked like an "Abercrombie & Fitch model."

36.     Dr. Strauss also scheduled his showers so that he could view his favorite athletes naked.

37.     In one instance, Dr. Strauss had just finished showering, had dressed, and was leaving the locker room. As Dr. Strauss was exiting the locker room, one of his favorite wrestlers entered and prepared to shower. Dr. Strauss immediately undid his tie, returned to his locker, undressed, and joined the athlete in the shower, his second shower in a matter of minutes.

38.     Dr. Strauss took his harassment a step further behind the closed door of his examination room.

39.     Ohio State required student athletes to undergo physical examinations by Dr. Strauss at least once per season, and sometimes more often.

40.     During these required examinations, Dr. Strauss forced male student athletes to undress from the waist down and submit to invasive and medically

unnecessary examinations, during which he would touch and fondle their genitalia and digitally penetrate their anuses, often telling the athletes that he was checking for hernias.

41.     There was no medical necessity for Dr. Strauss's examination, touching, and fondling of male student athletes' genitalia or digital anal penetration during the required periodic physical examinations—Dr. Strauss did it for his own personal, sexual gratification.

42.     One former athlete described the first time he was examined by Dr. Strauss in the fall of 1994: "I'm sitting, and he straddled my thigh, mounted my thigh. Rubbed on my thigh. I was just frozen," the athlete said.[4]

43.     Dr. Strauss then asked the athlete to get naked so Dr. Strauss could check for a sports hernia. The athlete said Strauss proceeded to "inspect my penis in detail" for a significant amount of time.[5]

44.     Dr. Strauss gave the athlete a physical again the next year. It lasted about 20 minutes, 15 minutes of which involved Dr. Strauss closely inspecting his genitalia.[6]

45.     The athlete remembers being concerned at the time, but alarms were raised the next year when another doctor gave the athlete a physical. It lasted only five minutes.

The athlete recalls thinking at the time, "No hernia test, didn't get naked. Is that it?"

---

[4] Kevin Stankiewicz, *Former Ohio State athlete says he was sexually assaulted twice by former team doctor Richard Strauss*, THE LANTERN (April 6, 2018), https://www.thelantern.com/2018/04/former-ohio-state-athlete-says-he-was-sexually-assaulted-twice-by-former-team-doctor-richard-strauss/ (last visiting July 16, 2018).
[5] *Id.*
[6] *Id.*

"Then I was like, 'Holy moly,'" the athlete said.

"I was always afraid. [Strauss] was the leading doctor on steroid use in the world, and I was always like, he could always say that medically there's some reason that he needs to spend 15 minutes on my penis," the athlete said. "He could have said that, and he's dead now, but that's what always scared me. But now I'm like, that's crazy. Especially when that other doctor came in in five minutes and checked me out."[7]

46. As the former athlete explained, he felt powerless to stop Strauss's abuse:

"Someone had to make that decision [to let Strauss continue conducting physicals]," the athlete said. "Let's say he's a great doctor, fine. He doesn't have to do the physicals, because it's like someone was pretty much feeding us to him. I didn't have a choice to say, 'I want somebody else to do my physical because I didn't feel like I had any power in that position.'"[8]

47. Indeed, OSU fed student-athletes to Dr. Strauss, and they were powerless to stop him.

48. Many of the student-athletes depended on athletic scholarships to attend OSU, scholarships which were contingent on playing by the school's rules, including the requirement to undergo physical examinations by Dr. Strauss.

49. But Dr. Strauss did not confine his abuse to the periodic physical examinations required by Ohio State.

50. He treated student-athletes for everything from heartburn to sprained ankles.

51. Regardless of the ailment, Dr. Strauss's treatment of male student athletes almost always included examination, touching, and fondling of their genitalia, and it

---

[7] *Id.*
[8] *Id.*

frequently included digital anal penetration under the guise of checking for hernias.

52.     Some athletes saw it as the price of getting treatment.

53.     One former student athlete, an All-American wrestler in the 1990s, said he constantly did a calculation before deciding whether to see Dr. Strauss: "Is this injury bad enough that I'm going to get molested for it?"[9]

54.     OSU forced student athletes to make a chilling decision: either seek treatment from Dr. Strauss and submit to his molestation, or forego treatment and live with illness of injury. With their collegiate athletic careers and scholarships on the line, many athletes sought treatment from Dr. Strauss for their physical conditions, at a high cost to their mental and emotional health.

55.     They had to receive physicals before competing, whether or not they were injured, which meant that systematic sexual abuse from Dr. Strauss was inevitable under the Devil's bargain OSU forced them to make with themselves.

56.     OSU knew or should have known from the beginning that Strauss was a sexual predator.

57.      In 1978—Dr. Strauss's first year at OSU—Dr. Strauss fondled a former wrestling team captain during an exam. The wrestler left the exam and went to the Ohio State student health center where he complained about Dr. Strauss's fondling to another doctor.

---

[9] The Associated Press, *Ex-Athletes Say Ohio State Doc Groped, Ogled Men for Years*, The New York Times (July 6, 2018), https://www.nytimes.com/aponline/2018/07/06/us/ap-us-ohio-state-team-doctor.html (last visited on July 16, 2018).

58.     The doctor shrugged him off. Ohio State did nothing.

59.     More complaints poured in over the years.

60.     In 1993, another former OSU wrestler complained about Dr. Strauss to former head wrestling coach Russ Hellickson after being groped during three exams. The wrestler said that Coach Hellickson told Dr. Strauss to stop such behavior.

61.     Coach Hellickson told Dr. Strauss that some of the athletes were "uncomfortable" with him showering with them, to which the doctor responded that Hellickson also showered with the athletes. Hellickson responded: "Not for an hour, Doc."[10]

62.     Coach Hellickson also complained to Dr. Strauss about touching his athletes: "I said 'When you're doing weigh-ins, you're too hands on, Doc,'" Hellickson said.[11]

63.     As the complaints against Dr. Strauss mounted, OSU eventually held a hearing on Dr. Strauss in or around the spring of 1997.[12]

64.     Upon information and belief, OSU took no legal or disciplinary action against Dr. Strauss as a result of the hearing.

---

[10] Eliza Collins, *Ex-OSU coach defends Jordan in abuse scandal but says team doctor made athletes 'uncomfortable'*, USA TODAY (July 10, 2018), https://www.usatoday.com/story/news/politics/2018/07/10/trump-conservatives-sticking-jordan-over-abuse-allegations-but-others/769402002/. (last visited July 16, 2018).

[11] *Id.*

[12] Kevin Stankiewicz, *Former Ohio State athlete says he was sexually assaulted twice by former team doctor Richard Strauss*, THE LANTERN (April 6, 2018), https://www.thelantern.com/2018/04/former-ohio-state-athlete-says-he-was-sexually-assaulted-twice-by-former-team-doctor-richard-strauss/. (last visiting July 16, 2018).

65.     Dr. Strauss quietly retired from his positions at OSU after the hearing.

## CLASS ACTION ALLEGATIONS

66.     Plaintiffs bring this action individually and pursuant to Federal Rule of Civil Procedure 23 (b)(3) or (c)(4) on behalf of themselves and the following "Nationwide Class":

> All male students or student-athletes of Ohio State University who (1) were examined by Dr. Richard Strauss at Ohio State University or (2) participated in a varsity athletic sport that utilized the locker rooms, showers, and/or saunas at Larkins Hall at any time between 1978 and 1998.

67.     The Classes consists of hundreds, if not thousands, of men throughout the United States, making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by the Ohio State.

68.     The claims of Plaintiffs are typical of the Classes. The claims of the Plaintiff and the Classes are based on the same legal theories and arise from the same factual pattern involving the Defendant's misconduct.

69.     There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect only individual Class members within the meaning of Fed. R. Civ. P. 23(a)(2), (b)(3), and (c)(4).

70.     Common questions of fact or common questions of law affecting members of the Class include, but are not limited to, the following:

> a.  Whether Defendant owed a legal duty to the members of the Class under federal and/or state law?

b.   Whether Defendant violated Title IX of 20 U.S.C. §1681?

c.   Whether Defendant violated 42 U.S.C. § 1983?

d.   Whether Defendant displayed deliberate indifference to the sexual abuse, assaults, and discrimination at Ohio State?

e.   Whether Defendant had knowledge or knew that Richard Strauss was engaging in sexual abuse of Ohio State's male students and student-athletes?

f.   Whether Plaintiffs were damaged by the violations caused by Defendants?

71.     Absent a class action, most of the members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to liability, in that it conserves the resources of the courts and the litigants and promotes the consistency and efficiency of adjudication.

72.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and who have expertise in prosecuting personal injury, sexual abuse, and civil rights cases on behalf of vulnerable victims.

73.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and they have the financial resources and experience in handling sex abuse cases to do so.

74.     Neither Plaintiffs nor their counsel have any interests adverse to those of

the other members of the Class.

75.     Plaintiffs and the Class will have personal injury damages that are individualized, but those can be managed separately.

## CLAIMS FOR RELIEF

### Count One
### Violation of Title IX, 20 U.S.C. § 1681 *et seq*

76.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

77.     Title IX, 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…."

78.     Title IX also protects third parties from sexual harassment or violence in a school's education programs and activities.

79.     Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature and "includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

80.     Plaintiffs are "persons" within the meaning of 20 U.S.C. §1681(a).

81.     Defendant OSU receives federal financial assistance and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. §1681, et seq.

82.     As the U.S. Department of Education's Office of Civil Rights has

explained, Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

83. Dr. Strauss's actions and conduct were carried out in his capacity as a team doctor and assistant medical professor of OSU.

84. Dr. Strauss's sexual assault, battery, molestation, and harassment of Plaintiffs, including the fondling of testicles, fondling and penetration of penises, and nonconsensual digital anal penetration, was sexual discrimination and sexual harassment under Title IX.

85. Pursuant to Title IX, Defendant OSU was obligated and required to investigate all allegations of sexual assault, battery, molestation, and harassment, including allegations that sexual assault, battery, molestation, and harassment has been committed by an employee, student, or third party.

86. Defendant OSU owed Plaintiffs duties under Title IX, which duties included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, or any other form of sexual misconduct.

87. An "appropriate person" of OSU, within the meaning of Title IX, including but not limited to, former Athletic Director and Assistant University Vice President Andy Geiger and former head wrestling coach Russell Hellickson, had actual and/or constructive notice of sexual assault, battery, molestation, and harassment committed by Dr. Strauss and the other sexual predators, as described herein this Complaint.

88. Thus, the complaints of sexual abuse at Ohio State involving Dr. Strauss

were not left unreported at the level of the coaches. Rather, the rampant sexual abuse and culture of sexual abuse was reported to Ohio State administrators and to the head of the Athletic Department. But these officials turned a blind eye to the abuse.

89.     Former wrestling head coach, Russell Hellickson, has publicly stated in 2018 that it was widely known that Dr. Strauss was engaging in improper sexual behavior and that he reported this behavior to higher authorities within OSU, but they did nothing.

90.     OSU failed to carry out its duties to investigate and take corrective action, or to make appropriate recommendations, under Title IX following the complaints of sexual assault, as described herein.

91.     Despite the complaints and concerns conveyed by athletes and coaches to Defendant OSU and its agents and/or representatives, as described herein, sexual abuse and misconduct allegations went unaddressed, which violated reporting policies and procedures and Title IX and was done in a manner that displayed deliberate indifference to the sexual misconduct and abuse that was occurring.

92.     The sheer scale of the abuse (involving student athletes from at least 14 sports) multiplied by the years it went on for (nearly 20 years) makes it implausible to suggest that Defendant OSU (through its agents and/or representatives) did not know of the endemic sexual abuse.

93.     OSU acted with deliberate indifference by failing to respond to the allegations of sexual assault, abuse, and molestation in light of the known circumstances, Dr. Strauss's conduct toward male athletes, and the scale of the abuse, which occurred

both in private examination rooms and also publicly in the showers and training facilities by Dr. Strauss and the other sexual predators allowed to roam freely within Larkins Hall.

94.     OSU failed to adequately supervise or otherwise ensure Dr. Strauss complied with Title IX and other state and federal laws even though OSU had gained actual knowledge that Dr. Strauss posed a substantial risk of additional sexual abuse of male students and student-athletes.

95.     OSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiffs was in violation of Title IX, 20 U.S.C. § 1681, et seq.

96.     OSU's failure to properly and appropriately investigate and take corrective action for the complaints of Dr. Strauss's and other sexual predators' sexual assault, battery, molestation, and harassment resulted in Plaintiffs being subject to further sexual assault, battery, molestation, harassment, and a sexually hostile environment.

97.     OSU's failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiffs to further sexual assault, battery, molestation, harassment, and a sexually hostile environment, effectively denying them access to educational opportunities at OSU, including appropriate medical care.

98.     OSU failed to offer counseling services to current or former victims of Dr. Strauss, including Plaintiffs.

99.     As a direct and proximate result of the OSU's actions and inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish,

shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self- esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

## Count Two
### Violation of Section 1983 (42 U.S.C. § 1983)

100.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

101.     Plaintiffs enjoy protections under the Fourteenth Amendment of the United States Constitution.

102.     Plaintiffs enjoy the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery, molestation, and harassment under the Fourteenth Amendment to the United States Constitution.

103.     At all times pertinent hereto, Ohio State and its employees, agents, and/or representatives were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the Ohio State University and State of Ohio.

104.     The acts as alleged throughout this Complaint demonstrate a violation of these constitutionally protected rights, which were clearly established at the time of the acts and of which reasonable persons in the Defendant's position knew or should have known.

105.     Defendant had, at all times pertinent hereto, the ultimate responsibility and

authority to train and supervise its employees, agents, and representatives, in the appropriate manner of preventing, detecting, and reporting sexual abuse, assault, and molestation and as a matter of custom, policy, and/or practice failed to do so with deliberate indifference.

106.    At all times pertinent hereto, Defendant Ohio State acted in a supervisory role to Dr. Strauss, who was employed by Ohio State as a athletics team doctor and as an assistant medical professor.

107.    By failing to prevent the repeated sexual assaults, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to numerous reports of Dr. Strauss's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, Defendant is liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

108.    Defendant is also liable to Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies, and practices that deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

109.    As a direct and proximate result of Defendant's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self- esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of

earning and loss of earning capacity.

110.    In the alternative, the actions or inactions of Defendant were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages.

111.    Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that this Court will:

a.    Enter judgment against Defendant in such amounts as will fully and adequately compensate Plaintiffs for the damages they have suffered, in an amount to be determined at trial;

b.    Award Plaintiffs punitive damages against Defendants in an amount to be determined by a jury for Defendant's violations of federal law;

c.    Award Plaintiffs pre-judgment and post-judgment interest;

d.    Award Plaintiffs their actual expenses of litigation, including

reasonable attorney's fees;

      e.      Appoint Plaintiffs as class representatives;

      f.      Appoint Plaintiffs' counsel as counsel for the Class; and

      g.      Award Plaintiffs such other and further relief as the Court deems

just and proper.

Respectfully Submitted,


/s/ Simina Vourlis
Simina Vourlis
The Law Office of Simina Vourlis
856 Pullman Way
Columbus, OH 43212
(614) 487-5900
(614) 487-5901 fax
svourlis@vourlislaw.com

Rex A. Sharp
Ryan C. Hudson
Scott B. Goodger
Larkin Walsh
REX. A. SHARP, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com
lwalsh@midwest-law.com

Robert Allard
CORSIGLIA, MCMAHON AND ALLARD,
LLP
96 North Third Street, Suite 620
San Jose, CA 95112
(408) 289-1417
(408) 289-8127 fax
rallard@cmalaw.net

Jonathan Little
SAEED AND LITTLE, LLP
1433 N. Meridian St.
Indianapolis, IN 46202
317-721-9214
jon@sllawfirm.com

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
619-295-0035
619-295-0172 fax
steve@estey-bomberger.com

***COUNSEL FOR PLAINTIFFS***