## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE 1, et al., | ) | Case No. 2:18-cv-00692 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Magistrate Judge Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT THE OHIO STATE UNIVERSITY'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendant The Ohio State University hereby moves this Court to dismiss all claims asserted against it in plaintiffs' Complaint. The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

MICHAEL DeWINE
ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Stephen E. Dutton (0096064)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
      bricker@carpenterlipps.com
      barthel@carpenterlipps.com
      dutton@carpenterlipps.com

Special Counsel for Defendant The Ohio State University

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION.

Plaintiffs are four former wrestlers who attended The Ohio State University ("Ohio State"), a public land grant institution, during the "late 1980s and 1990s," and are suing Ohio State individually and as putative class representatives for the conduct of Dr. Richard Strauss.

By way of background, in March 2018, a former wrestler reported allegations related to Dr. Richard Strauss to Ohio State. From the start, Ohio State took these allegations seriously. In rapid response, by April 5, 2018, Ohio State announced it was retaining an outside law firm to oversee an independent investigation into the allegations. To date, the investigators have conducted confidential interviews of more than 335 former students and university staff believed to have information concerning the allegations related to Dr. Strauss. The independent investigators additionally are investigating factually what university leaders in place at the time of the alleged events may have known. In this regard, they have interviewed over 95 individuals who worked at the university during the relevant time period, including athletic department, medical center, and student health center staff, as well as faculty. Former administrators, human resources professionals, and legal counsel also have been interviewed. The investigators remain in regular communication with the Franklin County Prosecutor's Office. In furtherance of their determination to understand what occurred, and who knew about it at the time, Ohio State and its current leaders continue to encourage persons possessing information related to Dr. Strauss to contact the investigators. That independent investigation continues and Ohio State remains committed to appropriately addressing its factual findings, whatever they may be.

Separate from the independent investigation, however, plaintiffs have filed the instant legal proceeding. In their Complaint in this lawsuit, plaintiffs assert they were injured due to the alleged conduct of Dr. Strauss in the "late 1980s and 1990s," at least twenty years ago, and that

they have legal rights and remedies pursuant to Title IX, Chapter 20 U.S.C. Section 1681 *et seq.* ("Title IX") and Chapter 42 U.S.C. Section 1983 ("Section 1983").  The instant Motion is ***not*** directed towards plaintiffs' claims of injury.  Rather, in this Motion, while respectful of plaintiffs and their claimed injuries, Ohio State maintains that plaintiffs' proffered legal causes of action are legally deficient on their face and should be dismissed.

First, and without exception, every civil legal claim is subject to a statute of limitations, *i.e.*, a defined time period within which a civil claim must be brought or else be barred.  The Supreme Court of the United States has observed that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-349 (1944)).

The statute of limitations for a Title IX claim, such as asserted by plaintiffs in Count One of their Complaint, is two years.  The acts alleged in plaintiffs' Complaint occurred decades ago. Plaintiffs attended Ohio State during the "late 1980s and 1990s."  Dr. Strauss worked at Ohio State between 1978 and 1998, and died in 2005.  Larkins Hall was torn down in 2005.  Plaintiffs did not file their Complaint until July 16, 2018.  Their Title IX claims are barred by the applicable two-year statute of limitations and should be dismissed with prejudice.

Additionally, plaintiffs acknowledge that Ohio State is and was "at all relevant times [] a state-owned and operated public university and institution of higher education organized and existing under the laws of the State of Ohio."  As an instrumentality of the State of Ohio, Ohio

State is entitled to the same immunities to which Ohio is entitled as a sovereign state.  Pursuant to the Eleventh Amendment of the Constitution of the United States, states are immune from suit in federal courts, including immunity from state law claims.  "The [Eleventh] Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Pursuant to the Eleventh Amendment and because Ohio State is not a person for purposes of Section 1983, plaintiffs' Section 1983 claims should be dismissed.

In filing this Motion to Dismiss, Ohio State is not ignoring or being dismissive of plaintiffs' factual allegations.  But statutes of limitations and the long-standing constitutional principle of immunity exist as critical attributes of our system of laws.  Here, the applicable statute of limitations and constitutional principle of immunity establish that plaintiffs' civil claims are legally barred.  They should be dismissed.

## II.  PLAINTIFFS' ALLEGATIONS AND FACTS OF WHICH THE COURT MAY TAKE JUDICIAL NOTICE.

Plaintiffs are four former wrestlers who allege they attended Ohio State during the "late 1980s and 1990s" and assert they were sexually assaulted, battered, molested, and/or harassed by former Ohio State physician Dr. Richard Strauss while at Ohio State.  *See* Complaint (Doc. # 1) at ¶¶ 14-17.  Plaintiffs acknowledge that Ohio State "is and at all relevant times has been a state-owned and operated public university and institution of higher education organized and existing under the laws of the State of Ohio."  *Id.* at ¶ 18.   Ohio State is, in fact and law, an instrumentality of the State of Ohio.  *See* OHIO REV. CODE § 3345.011 (recognizing Ohio State as a "state university"); OHIO REV. CODE § 3335.01, *et seq.* (creating and governing Ohio State); *Matteson v. Ohio State Univ.*, No. C2-99-1267, 2000 WL 1456988, *3 (S.D. Ohio Sept. 27,

2000) ("[I]t is well settled that Ohio State University is an instrumentality of the State of Ohio").[1]

Plaintiffs have brought Title IX (Count One) and Section 1983 (Count Two) claims against Ohio State. *See* Complaint (Doc. # 1) at ¶¶ 76-111. Dr. Strauss worked at Ohio State from 1978 to 1998, and died in 2005. *Id.* at ¶¶ 19-20, 33. Ohio State demolished Larkins Hall in 2005. *Id.* at ¶ 33.

Thus, plaintiffs' claims are based on acts alleged to have been committed at least twenty (20) years ago, by a person who stopped working at Ohio State twenty (20) years ago, and who died thirteen (13) years ago, and which primarily occurred at a facility demolished thirteen (13) years ago.

## III. <u>DISCUSSION</u>.

A complaint is subject to dismissal under Rule 12(b)(6) if, on its face, the allegations, taken as true, show the plaintiff is not entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If the allegations . . . show that relief is barred by the applicable statute of limitation[s], the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Dismissal under Fed. R. 12(b)(6) is proper "if it is apparent from the face of the complaint that the statute of limitation[s] has run." *Reed v. Ohio State Univ. Med. Ctr.*, No. 2:12-CV-241, 2012 WL 5378379, at *4 (S.D. Ohio Oct. 31, 2012) (citing *Pierce v. County of Oakland*, 652 F.2d 671 (6th Cir.1981)); *see also Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992).

Further, in responding to a Rule 12(b)(1) motion stating that subject matter jurisdiction is lacking, a plaintiff bears the burden of persuading the court that subject matter jurisdiction exists

---

[1] A United States District Court may take judicial notice of public statutes. *See Godboldo v. Cty. of Wayne,* 686 F. App'x 335, 340 (6th Cir. 2017) ("As we have previously held, we 'are required to take judicial notice of the statute and case law of each of the states'").

in order to survive the motion. *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). When considering a facial attack on subject matter jurisdiction, *i.e.*, a motion asserting that a plaintiff has failed to sufficiently allege a basis for subject matter jurisdiction, the court should take the allegations in the complaint as true. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

Here, plaintiffs' Title IX and Section 1983 claims are facially deficient. Plaintiffs' Complaint should be dismissed in its entirety.

### A.    Plaintiffs' Title IX Claims (Count One) Are Barred By The Applicable Two-Year Statute Of Limitations.

Plaintiffs first attempt to state a claim pursuant to Title IX (Count One). *See* Complaint (Doc. # 1) at ¶¶ 76-99. The Sixth Circuit has recognized that Title IX does not provide a statute of limitations for Title IX claims. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728-729 (6th Cir. 1996) ("Neither Title VI nor Title IX provide a limitation period expressly pertaining to judicial proceedings, a failure occasioned, no doubt, by the fact that, for both statutes, private causes of action were implied by the courts"). Accordingly, courts apply "state personal injury limitation periods to Title IX and Title VI claims . . . ." *Id.* at 729. In Ohio, the statute of limitations for personal injury is two (2) years. *See* OHIO REV. CODE § 2305.10(A). Thus, the statute of limitations for a Title IX claim against an instrumentality of the State of Ohio, such as Ohio State, is two years. *See Lillard*, 76 F.3d at 729; *Giffin v. Case W. Reserve Univ.*, No. 98-3267, 1999 WL 238669 at *1-2 (6th Cir. April 13, 1999).

Even though Title IX borrows Ohio's personal injury statute of limitations, federal law determines when a Title IX claim accrues. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015); *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F.Supp.2d 662, 668 (E.D. Ky. 2009).

A Title IX claim "accrues on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to [his] cause of action." *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *1 (W.D. Mich. May 26, 2017) (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)); *Anderson*, 616 F. Supp. 2d at 668 ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action") (citing *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir.2005)). "This is an objective inquiry, which looks to what event should have alerted the typical lay person to protect his or her rights." *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016) (citation and quotation marks omitted).

The Southern District of Ohio and numerous other courts, including district courts within the Sixth Circuit, have held that a Title IX injury accrues when the alleged sexual abuse, assault, or harassment occurred. *See*, *e.g.*, *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 991 (S.D. Ohio 2018) (Title IX claims accrued at the time of the sexual harassment, in suit alleging it was "widely known for over a decade among faculty and students" that professor sought "sexual relationships with students and young faculty," and incoming students were warned professor was a "sexual predator"); *Bowling*, 2017 WL 4512587, at *2 (Title IX claims accrued on the date of the last sexual assault); *Anderson*, 616 F.Supp.2d at 668 (Title IX claims "accrued at the time of the alleged abusive acts" by school employees); *King-White*, 803 F.3d at 762 (Title IX claim accrued when plaintiff was abused by teacher, not when plaintiff learned nearly two years later during the teacher's criminal case that school officials allegedly had ratified and acted with deliberate indifference to the abuse); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440-441 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (Title IX claims accrued at time of sexual abuse, not when former president and chancellor admitted in news article published decades after the abuse that he and other administrators had been aware of the risk of the abuse when it was

7

occurring); *Varnell v. Dora Consol. Sch. Dist.*, No. 12-CV-905 JCH/GBW, 2013 WL 12146483, at *6-*7 & n.4 (D.N.M. May 13, 2013), *report and recommendation adopted*, No. 12-CV-905 JCH/GBW, 2013 WL 12149185 (D.N.M. June 24, 2013), *aff'd*, 756 F.3d 1208 (10th Cir. 2014) (Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach, not when the plaintiff "recently" learned of the superintendent's alleged concealment of the abuse, where plaintiff "was repulsed by the sexual conduct when it was occurring" and the school district could not now be liable because its "failure to prevent the abuse could only occur while the abuse was ongoing"); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, No. CIV-09-533-L, 2010 WL 152138, at *3 (W.D. Okla. Jan. 14, 2010) (plaintiff "impliedly concede[d]" that Title IX claim "had to have accrued" when the plaintiff was a student at the school because the alleged sexual abuse by the school employee only "occurred while she was a student at the school"); *Padula v. Morris*, No. 205-CV-00411-MCE-EFB, 2008 WL 1970331, at *4 (E.D. Cal. May 2, 2008) (Title IX claim "accrued on the last date Plaintiffs[] suffered an incident of sexual harassment"); *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997) (Title IX claim "accrued when [the student] knew or had reason to know of her injury—October 29, 1997[,]" the date her professor allegedly "sexually harassed her by touching her against her will on various parts of her body and indicating that he wanted to be with her privately"); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (Title IX claim accrued when alleged sexual assault from hazing occurred).

Here, it is apparent from the face of plaintiffs' Complaint that the two-year limitation period applicable to plaintiffs' Title IX claims expired long ago. Plaintiffs allege Dr. Strauss "sexually assaulted," "abuse[d]," "battered," "molested," "harassed," "fondl[ed]," and/or "digital[lly] [] pentrat[ed]" them during the late 1980s and 1990s and/or that improper conduct

occurred at Larkins Hall between 1978 and 1998.  *See* Complaint (Doc. # 1) at ¶¶ 4, 7-8, 14-17,

66, 84.  Additionally, as detailed by plaintiffs themselves in great specificity in their Complaint,

each plaintiff was aware of the alleged abusive acts at the time they occurred:

### Allegations Demonstrating Student-Athletes' Awareness

- "To many at OSU, Dr. Strauss was known simply as 'Doc.' The student athletes, however, had a different nickname for Dr. Strauss:  'Dr. Jelly Paws.'  Dr. Strauss earned the nickname from his notoriously hands-on physical examinations." Complaint ¶ 21.

- "For decades, Dr. Strauss was a fixture in the locker rooms, showers, and saunas of Larkins Hall, the former student and faculty recreation center on the Ohio State campus that housed the wrestling, gymnastics, and swimming teams."  *Id*. ¶ 22.

- "Student athletes were regularly harassed in Larkins Hall by sexually aggressive men who attended the university or worked there:  'The voyeurs would masturbate while watching the wrestlers shower or sit in the sauna, or engage in sexual acts in the areas where the athletes trained[.]'"  *Id*. ¶ 24.

- "Student athletes also pleaded with the university administration to make changes to Larkins Hall to protect student athletes. During the 1994-1995 season, two wrestlers met with then-Athletic Director Andy Geiger ('AD Geiger') in his office. The wrestlers complained about the voyeuristic and lewd conduct of the men in the lockers and saunas of Larkins Hall, including that of Dr. Strauss. They presented AD Geiger with drawings of changes to the wrestling and gymnastics locker room that they believed would enhance safety and privacy for student athletes."  *Id*. ¶¶ 25-27.

- "Dr. Strauss thrived in the 'cesspool of deviancy' at Larkins Hall.  He once moved his locker to be next to the locker of one of his favorite wrestlers, who, accordingly [sic] to another former wrestler, looked like an 'Abercrombie & Fitch model.'  Dr. Strauss also scheduled his showers so that he could view his favorite athletes naked.  In one instance, Dr. Strauss had just finished showering, had dressed, and was leaving the locker room. As Dr. Strauss was exiting the locker room, one of his favorite wrestlers entered and prepared to shower. Dr. Strauss immediately undid his tie, returned to his locker, undressed, and joined the athlete in the shower, his second shower in a matter of minutes."  *Id*. ¶¶ 34-37.

- "Ohio State required student athletes to undergo physical examinations by Dr. Strauss at least once per season, and sometimes more often.  During these required examinations, Dr. Strauss forced male student athletes to undress from the waist down and submit to invasive and medically unnecessary examinations, during which he would touch and fondle their genitalia and digitally penetrate their anuses[.]"  *Id*. ¶¶ 39-40.

- "Regardless of the ailment, Dr. Strauss's treatment of male student athletes almost always included examination, touching, and fondling of their genitalia, and it frequently included digital anal penetration . . . ." *Id*. ¶ 51.

- "OSU forced student athletes to make a chilling decision: either seek treatment from Dr. Strauss and submit to his molestation, or forego treatment and live with illness of [sic] injury." *Id*. ¶ 54.

- "[S]ystematic sexual abuse from Dr. Strauss was inevitable under the Devil's bargain OSU forced them to make with themselves." *Id*. ¶ 55.

- "[T]he rampant sexual abuse and culture of sexual abuse [relating to Dr. Strauss] was reported to Ohio State administrators and to the head of the Athletic Department." *Id*. ¶ 88.

- "Former wrestling head coach, Russell Hellickson, has publicly stated in 2018 that it was widely known that Dr. Strauss was engaging in improper sexual behavior . . . ." *Id*. ¶ 89.

## **Additional Allegations Demonstrating Plaintiffs' Awareness**

- "Plaintiff John Doe 1[,] . . . a former student-athlete on OSU's varsity wrestling team[,] . . . was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during an examination in the 1990s." *Id*. ¶ 14.

- "Plaintiff John Doe 2[,] . . . a former student-athlete on OSU's varsity wrestling team[,] . . . was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during approximately 50 examinations by Dr. Strauss in the late 1980s and 1990s." *Id*. ¶ 15.

- "Plaintiff John Doe 3[,] . . . a former student-athlete on OSU's varsity wrestling team[,] . . . was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during an examination in the 1990s." *Id*. ¶ 16.

- "Plaintiff John Doe 4[,] . . . a former student-athlete on OSU's varsity wrestling team[,] . . . was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during multiple physical examinations and in the locker room of Larkins Hall on the campus of Ohio State University in the 1990s." *Id*. ¶ 17.

- "Dr. Strauss's sexual assault, battery, molestation, and harassment of Plaintiffs, including the fondling of testicles, fondling and penetration of penises, and nonconsensual digital anal penetration, was sexual discrimination and sexual harassment . . . . " *Id*. ¶ 84.

- "OSU's failure to properly and appropriately investigate and take corrective action for the complaints of Dr. Strauss's and other sexual predators' sexual

assault, battery, molestation, and harassment resulted in Plaintiffs being subjected to further sexual assault, battery, molestation, harassment, and a sexually hostile environment." *Id.* ¶¶ 96-97.

Plaintiffs also plead the following determinative facts: Dr. Strauss stopped working at Ohio State in 1998 and died in 2005, and Larkins Hall was demolished in 2005. *Id.* at ¶¶ 20, 33.

Taken as true, the above facts demonstrate that the two-year statute of limitations to bring Title IX claims expired in 2000 at the latest, two years after Dr. Strauss stopped working at Ohio State. Plaintiffs did not file their Complaint until July 16, 2018. *See generally id.* Thus, plaintiffs' Title IX claims were filed nearly two decades after the applicable two-year statute of limitations had expired. As a matter of law, plaintiffs' Title IX claims (Count One) are time-barred and should be dismissed with prejudice. *See Giffin*, 1999 WL 238669 at *1-2 (affirming dismissal of Title IX claim that "was filed after the two-year statutory period had run"); *American Pipe & Const. Co.*, 414 U.S. at 554.

**B.** **Plaintiffs' Section 1983 Claims (Count Two) Should Be Dismissed Because They Are Barred By The Eleventh Amendment.**

Plaintiffs also assert claims against Ohio State pursuant to Section 1983 (Count Two). *See Complaint* (Doc. # 1) at ¶¶ 100-111. Plaintiffs acknowledge, however, that Ohio State is a "state-owned and operated public university and institution." *Id.* at ¶ 18. It is well settled that Ohio State is an instrumentality of the State of Ohio. *See* OHIO REV. CODE § 3345.011 (recognizing Ohio State as a "state university"); OHIO REV. CODE § 3335.01, *et seq.* (creating and governing Ohio State); *Matteson*, 2000 WL 1456988, at *3 ("[I]t is well settled that Ohio State University is an instrumentality of the State of Ohio") (citing *Bailey v. Ohio State Univ.*, 487 F. Supp. 601, 606 (S.D. Ohio 1980); *Thacker v. Trustees of Ohio State Univ.*, 298 N.E.2d 542, 543-44 (Ohio 1973), *overruled in part on other grounds by Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St. 2d 31, 426 N.E.2d 784 (1981); *Hall v. Medical College of Ohio at*

*Toledo*, 742 F.2d 299, 301-03 (6th Cir.1984); *Thomson v. Ohio State Univ. Hosp.*, 5 F.Supp.2d 574, 576 (S.D. Ohio 1998)).  For example, the Ohio legislature has granted the Ohio governor authority to appoint members of Ohio State's Board of Trustees. *See* OHIO REV. CODE § 3335.02. Additionally, the State of Ohio holds title for all lands used by Ohio State. *See* OHIO REV. CODE § 3335.13.  Because Ohio State is a state entity, plaintiffs' Section 1983 claims (Count Two) against it are barred as a matter of law, as set forth below.

> **1.      Plaintiffs' Section 1983 Claims (Count Two) Should Be Dismissed Because They Are Barred By The Eleventh Amendment.**

The Eleventh Amendment provides, and the Supreme Court has long held, "[t]hat a state may not be sued without its consent[.]"  *In re State of New York*, 256 U.S. 490, 497 (1921); U.S. CONST. amend. XI.  "[T]he entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given; not one brought by citizens of another state, or by citizens or subjects of a foreign state, because of the Eleventh Amendment; and not even one brought by its own citizens[.]"  *Id.*; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) ("[A] federal court could not entertain a suit brought by a citizen against his own State").  In effect, the Eleventh Amendment "deprives the federal courts of jurisdiction to entertain a suit brought by an individual against a nonconsenting State."  *Touvell v. Ohio Dept. of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 395 (6th Cir. 2005); *see also Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) ("The sovereign immunity guaranteed by this Amendment  deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity").

Congress has not abrogated Eleventh Amendment immunity for Section 1983 cases.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, syllabus (1989) ("That Congress, in passing

[Section] 1983, had no intention to disturb the States' Eleventh Amendment immunity and so alter the federal-state balance in that respect was made clear in our decision in *Quern*") (citing *Quern v. Jordan*, 440 U.S. 332, syllabus (1979)).

Neither the State of Ohio nor Ohio State has consented, and does not here consent, to be sued in this Court. To the contrary, the State of Ohio has waived sovereign immunity only insofar as it has consented to be sued in the Ohio Court of Claims. *See* OHIO REV. CODE § 2743.02(A)(1). "[A] state's waiver of sovereign immunity in its own courts is ***not*** a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100 n.9. As an instrumentality of the State of Ohio, Ohio State is entitled to Eleventh Amendment immunity to the same extent as the State. *Bailey*, 487 F.Supp. at 604-606 (finding Ohio State is immune from suit the same as the state of Ohio); *Thacker*, 298 N.E.2d at 544 n. 1 (cataloging decisions). Thus, this Court lacks subject matter jurisdiction to adjudicate plaintiffs' Section 1983 claims (Count Two) and they must be dismissed. *See Butler v. Ohio State Univ. Med. Ctr.*, No. 2:06-CV-1075, 2008 WL 11351363, at *2 (S.D. Ohio June 23, 2008) (Watson, J.) (holding the doctrine of sovereign immunity barred plaintiff's Section 1981 and Section 1983 claims because Ohio State is an arm of the state); *Nuovo v. The Ohio State University*, 726 F.Supp.2d 829, 850 (S.D.Ohio 2010) (dismissing Section 1983 claim against Ohio State, in part, because the Eleventh Amendment prohibits Section 1983 claims against state entities).[2]

### 2. Ohio State Is Not A Person For Purposes of Section 1983 And The Two-Year Statute Of Limitations Applicable to Section 1983 Claims Has Expired.

Plaintiffs' Section 1983 claims (Count Two) also are futile for two reasons. First, to be

---

[2] *See also Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-CV-753, 2012 WL 3779934, *3 (S.D. Ohio Aug. 31, 2012) ("Plaintiff's Section 1983 claim against the University is barred by the Eleventh Amendment, and it is hereby DISMISSED"); *Petrone v. Cleveland State Univ.*, 993 F.Supp. 1119, 1124 (N.D. Ohio 1998) (dismissing Section 1983 claim, noting that Cleveland State University, a public university, "is immune from suit in this Court").

subject to suit under Section 1983, a defendant must be deemed a "person" for purposes of Section 1983. The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. at 71. Thus, because Ohio State is not a "person" for purposes of Section 1983, plaintiffs' Section 1983 claims fail to state a claim against Ohio State for which relief can be granted. *Butler*, 2008 WL 11351363, at *3 (Watson, J.) (dismissing Section 1983 claim against The Ohio State University Medical Center because it was not a "person" as defined by Section 1983); *Nuovo*, 726 F.Supp.2d at 850 (S.D. Ohio 2010) (dismissing Section 1983 claim against Ohio State, in part, because Ohio State is not a "person" for purposes of Section 1983).

Second, like the Title IX claims, courts apply Ohio's two-year personal injury statute of limitations to Section 1983 claims arising in Ohio. *See Monfort Supply Co. v. Hamilton Cty. Bd. of Zoning Appeals*, No. 104CV145, 2006 WL 3703686, *2 (S.D. Ohio Dec. 13, 2006) (Watson, J.) ("The statute of limitation for a section 1983 action arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"). Federal law governs when the two-year statute of limitations for plaintiffs' Section 1983 claims begins to run. *Id.* "The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* (citations omitted); *see also Eidson v. State of Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) ("[I]n determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights.").

The abuse alleged by plaintiffs occurred during the late 1980s and 1990s, and the alleged improper conduct at Larkins Hall occurred between 1978 and 1998. *See* Complaint (Doc. # 1) at

¶¶ 14-17, 19-20, 66.   For the reasons already discussed, plaintiffs' Complaint allegations demonstrate that all plaintiffs knew of the alleged abuse when it occurred.  *Supra*, Section III.A. Therefore, based on plaintiffs' own allegations, the statute of limitations for plaintiffs' Section 1983 claims (Count Two) against Ohio State expired long before the current Complaint was filed.  *See Monfort Supply Co.*, 2006 WL 3703686 at *2.

## IV.  <u>CONCLUSION.</u>

Plaintiffs' claims are based on acts alleged to have been committed at least twenty (20) years ago, by a person who stopped working at Ohio State twenty (20) years ago, and who died thirteen (13) years ago, and at a facility which was demolished thirteen (13) years ago.  As such, plaintiffs' Title IX claims (Count One) are barred by the applicable two-year statute of limitations.  Plaintiffs' additional Section 1983 claims (Count Two) are barred because Ohio State is entitled to immunity pursuant to the Eleventh Amendment.  Finally, plaintiffs' additional Section 1983 claims (Count Two) also are futile because Ohio State is not a "person" for purposes of Section 1983 and the applicable two-year statute of limitations has expired.

For these reasons, plaintiffs' Complaint should be dismissed in its entirety.

Respectfully submitted,

MICHAEL DeWINE
ATTORNEY GENERAL OF OHIO

By:    /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Stephen E. Dutton (0096064)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
         bricker@carpenterlipps.com
         barthel@carpenterlipps.com
         dutton@carpenterlipps.com

Special Counsel for Defendant The Ohio State
University

16

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on September 7, 2018.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.


/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University