# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN GARRETT, et al., | ) | Case No. 2:18-cv-00692 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Magistrate Judge Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT THE OHIO STATE UNIVERSITY'S
## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant The Ohio State University hereby moves this Court to dismiss all claims asserted against it in plaintiffs' First Amended Complaint. The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

        MICHAEL DeWINE
        ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
       Michael H. Carpenter (0015733) (Trial Attorney)
       Timothy R. Bricker (0061872)
       David J. Barthel (0079307)
       Stephen E. Dutton (0096064)
       CARPENTER LIPPS AND LELAND LLP
       280 Plaza, Suite 1300
       280 North High Street
       Columbus, OH 43215
       E-mail: carpenter@carpenterlipps.com
             bricker@carpenterlipps.com
             barthel@carpenterlipps.com
             dutton@carpenterlipps.com

       Special Counsel for Defendant The Ohio State University

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION.**

Plaintiffs allege they attended The Ohio State University ("Ohio State") from the late 1970s to 1999. They are suing Ohio State individually and as putative class representatives for the conduct of Dr. Richard Strauss.

By way of background, in March 2018, a former wrestler reported allegations related to Dr. Strauss to Ohio State. From the start, Ohio State took these allegations seriously. In rapid response, by April 5, 2018, Ohio State announced it was retaining an outside law firm to oversee an independent investigation into the allegations. To date, the investigators have conducted confidential interviews of more than 335 former students and university staff believed to have information concerning the allegations related to Dr. Strauss. The independent investigators additionally are investigating factually what university leaders in place at the time of the alleged events may have known. In this regard, they have interviewed over 100 individuals who worked at the university during the relevant time period, including athletic department, medical center, and student health center staff, as well as faculty. Former administrators, human resources professionals, and legal counsel also have been interviewed. The investigators remain in regular communication with the Franklin County Prosecutor's Office. In furtherance of their determination to understand what occurred, and who knew about it at the time, Ohio State and its current leaders continue to encourage persons possessing information related to Dr. Strauss to contact the investigators. That independent investigation continues and Ohio State remains committed to appropriately addressing its factual findings, whatever they may be.

Separate from the independent investigation, however, plaintiffs have filed the instant legal proceeding. In their original complaint, plaintiffs asserted they were injured due to the alleged conduct of Dr. Strauss in "the late 1980s and 1990s," at least twenty years ago, and that they had

legal rights and remedies pursuant to Title IX, Chapter 20 U.S.C. Section 1681 *et seq.* ("Title IX") and Chapter 42 U.S.C. Section 1983 ("Section 1983"). Defendant Ohio State moved to dismiss the original complaint on September 7, 2018. In response, Plaintiffs filed their First Amended Complaint on October 26, 2018.

First, and without exception, every civil legal claim is subject to a statute of limitations, *i.e.*, a defined time period within which a civil claim must be brought or else be barred. The Supreme Court of the United States has observed that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (quoting *Order of R.R Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-349 (1944)).

The statute of limitations for a Title IX claim, such as asserted by plaintiffs, is two years. The acts alleged in plaintiffs' First Amended Complaint occurred decades ago. Plaintiffs attended Ohio State from the late 1970s to 1999. Dr. Strauss worked at Ohio State between 1978 and 1998, and died in 2005. Larkins Hall was torn down in 2005. Plaintiffs did not file their initial complaint until July 16, 2018. Their Title IX claims are barred by the applicable two-year statute of limitations and should be dismissed with prejudice.

In filing this Motion to Dismiss, Ohio State is not ignoring or being dismissive of plaintiffs' factual allegations. But statutes of limitations are critical attributes of our system of laws. Here, the applicable statute of limitations establishes that plaintiffs' claims are legally barred. They should be dismissed.

## II. PLAINTIFFS' ALLEGATIONS AND PROCEDURAL HISTORY.

On July 16, 2018, four former wrestlers who allege they attended Ohio State during "the late 1980s and 1990s" commenced this action by filing a complaint against Ohio State individually and as putative class representatives, asserting that former Ohio State physician, Dr. Richard Strauss, sexually assaulted, battered, molested, and/or harassed them while at Ohio State. *See* Compl. (Doc. # 1) at ¶¶ 14-17. Those plaintiffs brought claims against Ohio State pursuant to Title IX and Section 1983. *Id.* at ¶¶ 76-111.

On September 7, 2018, Ohio State filed a motion to dismiss all claims asserted against it in plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See* Ohio State's Motion to Dismiss (Doc. # 23). Rather than respond to Ohio State's motion to dismiss, plaintiffs filed a First Amended Complaint on October 26, 2018. *See* FAC (Doc. # 33). Similar to the initial complaint, the First Amended Complaint alleges that plaintiffs attended Ohio State as students from "the late 1970s" to 1999 and that they were sexually assaulted, battered, molested, and/or harassed by Dr. Strauss. *See* FAC (Doc. # 33) at ¶¶ 17-18, 56, 60, 66-67, 71-73, 77, 78, 84, 88-89, 95, 97, 99-105. Plaintiffs allege the abuse at issue occurred between "the late 1970s" and 1998. *Id.*

The First Amended Complaint brings claims against Ohio State pursuant only to Title IX; plaintiffs have abandoned the Section 1983 claims previously alleged in their initial complaint. *Id.* at ¶¶ 247-273. Dr. Strauss worked at Ohio State from 1978 to 1998, and died in 2005. *Id.* at ¶¶ 21, 110, 112, 129, 192. Ohio State demolished Larkins Hall in 2005. *Id.* at ¶ 129.

Thus, plaintiffs' Title IX claims are based on acts alleged to have been committed at least twenty (20) years ago, by someone who stopped working at Ohio State twenty (20) years ago, and who died thirteen (13) years ago, and which primarily occurred at a facility demolished thirteen

(13) years ago.¹

### III. PLAINTIFFS' TITLE IX CLAIMS ARE BARRED BY THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.

A complaint is subject to dismissal under Rule 12(b)(6) if, on its face, the allegations, taken as true, show the plaintiff is not entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If the allegations . . . show that relief is barred by the applicable statute of limitation[s], the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Dismissal under Fed. R. 12(b)(6) is proper "if it is apparent from the face of the complaint that the statute of limitation[s] has run." *Reed v. Ohio State Univ. Med. Ctr.*, No. 2:12-CV-241, 2012 WL 5378379, at *4 (S.D. Ohio Oct. 31, 2012) (citing *Pierce v. County of Oakland*, 652 F.2d 671 (6th Cir.1981)); *see also Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992).

Here, plaintiffs attempt to state claims pursuant solely to Title IX. *See* FAC at ¶¶ 247-273. The Sixth Circuit has recognized that Title IX does not itself provide a statute of limitations for Title IX claims. *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728-729 (6th Cir. 1996) ("Neither Title VI nor Title IX provide a limitation period expressly pertaining to judicial proceedings, a failure occasioned, no doubt, by the fact that, for both statutes, private causes of action were implied by the courts"). Accordingly, courts apply "state personal injury limitation periods to Title IX and Title VI claims . . . ." *Id.* at 729. In Ohio, the statute of limitations for personal injury is two (2) years. *See* OHIO REV. CODE § 2305.10(A). Thus, the statute of

---

¹ Ohio State is unaware of the identities of all John Doe plaintiffs in this matter because plaintiffs have not obtained the Court's permission to proceed anonymously, as required by the Sixth Circuit. *See Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636–37 (6th Cir. 2005). Plaintiffs also indicated in their Rule 26(f) Report (Doc. No. 27), that they "will file a formal motion to withdraw[] and a request for substitute counsel for one John Doe plaintiff to be filed on or before October 26 or [for] John Doe to proceed *pro se*." *See* Rule 26(f) Report (Doc. # 27) at 3. Plaintiffs' counsel have not so moved as required by Local Rule 83.4. Instead, they apparently have dropped him as a named plaintiff. *See* Pl. Resp. in Opp. To Def. Motion to Stay Discovery (Doc. # 35) at 6.

5

limitations for a Title IX claim against an instrumentality of the State of Ohio, such as Ohio State, is two years. *See Lillard*, 76 F.3d at 729; *Giffin v. Case W. Reserve Univ.*, No. 98-3267, 1999 WL 238669 at *1-2 (6th Cir. April 13, 1999).

Even though Title IX borrows Ohio's personal injury statute of limitations, federal law determines when a Title IX claim accrues. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 762 (5th Cir. 2015); *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F.Supp.2d 662, 668 (E.D. Ky. 2009). A Title IX claim "accrues on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to [his] cause of action." *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *1 (W.D. Mich. May 26, 2017) (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001), *abrogated in part on other grounds as recognized by Bressler v. Wiegle*, No. 3:06 CV 3115, 2008 WL 886124, at *9 (N.D. Ohio Mar. 28, 2008)); *Anderson*, 616 F. Supp. 2d at 668 ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action") (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). "Otherwise stated, '[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful.'" *Anderson*, 616 F. Supp. 2d at 668 (quoting *Amini v. Oberlin College*, 259 F.3d 493, 600 (6th Cir. 2001)); *see also Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) ("'[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock,'" and this is true "regardless of how complex or difficult to discover the elements of the cause of action may be") (quoting *Rotella v. Wood*, 528 U.S. 549, 555-556, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)). Accrual also "is an objective inquiry, which looks to what event should have alerted the typical lay person to protect his or her rights." *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016) (citation omitted).

The Sixth Circuit, the Southern District of Ohio, and numerous courts, including other district courts within the Sixth Circuit, have held that a Title IX injury accrues at the time the alleged sexual abuse, assault, or harassment occurs. *See, e.g., Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) (Title IX and Section 1983 claims accrued at time student was sexually abused by her high school coach because "[e]ven if this Court accepted as true that [plaintiff] was completely unaware both that she was being sexually abused and that the Board knew of that sexual abuse," plaintiff was "aware of facts that should have aroused her suspicion of the claims against the defendants at the time of her injuries" and did not "exercise[] reasonable care and diligence to discover whether she had a viable legal claim" in waiting almost seven years after she turned 18 years old to sue) (brackets, quotation marks, and citations omitted); *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 991 (S.D. Ohio 2018) (Title IX claims accrued at the time professor sexually harassed students); *Bowling,* 2017 WL 4512587, at *2 (Title IX claims accrued on the date of the last sexual assault of the student)[2].

---

[2] *See also Anderson*, 616 F.Supp.2d at 668 ("the Court finds that insofar as Plaintiffs were injured while attending Fayette County Public Schools, they were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board, at the time it was allegedly inflicted. This is to say that Plaintiffs' causes of action accrued at the time of the alleged abusive acts"); *King-White*, 803 F.3d at 762-763 (Title IX claim accrued when female high school student was sexually abused by her female teacher, not when student learned nearly two years after the abuse during the teacher's criminal case that school officials allegedly had ratified and acted with deliberate indifference to the abuse); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9-10 (2d Cir. 2014), *cert. denied* 135 S.Ct. 1702 (Mar. 30, 2015) (Title IX claims of former high school students by their teachers accrued "[w]hen plaintiffs left [the high school], more than 20 years before filing this suit," not when former president and chancellor of the school admitted in news article published decades after the abuse that he and other administrators had been aware of the risk of the abuse when it was occurring, because plaintiffs' "unquestionabl[e] aware[ness] of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [the high school] . . . was sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers"); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1210, 1216-1217 (10th Cir. 2014) (Title IX claim accrued no later than the last date former female high school student was sexually abused by her female coach, not when student "learned the full extent of the resultant emotional injury"); *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296-297 (4th Cir. 2007) (Title IX claim arising from sexual

Here, it is apparent from the face of plaintiffs' First Amended Complaint that the two-year limitation period applicable to plaintiffs' Title IX claims expired long ago. Plaintiffs allege Dr. Strauss "sexually assaulted," "battered," "abused," "molested," "harassed," "fondled," and/or "digitally penetrated" them between "the late 1970s" and 1997 and/or that "devian[t]," "harass[ing,]," "voyeuristic," and "lewd" conduct occurred at Larkins Hall between 1978 and 1998. *See* FAC at ¶¶ 18, 52, 56, 60, 63, 66, 70-105, 111, 119-120, 122, 139-140, 154, 162-164, 219, 255. Additionally, as detailed by plaintiffs themselves in great specificity in their First Amended Complaint, each plaintiff was aware of the alleged abusive acts at the time they occurred, including a belief, at the time of the exams, that Dr. Strauss's "exams were medically inappropriate and deeply uncomfortable[.]" *See* FAC at ¶ 201. Plaintiffs also plead the following additional "common" facts establishing their awareness of the alleged abusive acts at the time they occurred:

**Allegations Common To All Plaintiffs' Awareness**

- "Dr. Strauss's abuse . . . traumatized many victims for decades. Indeed, some victims

---

assault of former student by her junior high school teacher "eighteen or nineteen years earlier" accrued at the time of the assault); *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000) (Title IX claim accrued at the time the former students were sexually abused and harassed by their instructor, school employees, and other students because the plaintiffs "remembered the events of abuse, and therefore nothing prevented them from asserting their claims during the two years after they reached majority"); *Clifford v. Regents of Univ. of Cal.*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (Title IX claim accrued when alleged sexual assault, harassment, and hazing occurred); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, No. CIV-09-533-L, 2010 WL 152138, at *3 (W.D. Okla. Jan. 14, 2010) (plaintiffs "impliedly concede[d]" that Title IX claim "had to have accrued at the time [the former student] was a student at the [school]" because "the Complaint alleges that the inappropriate and sexual relationship between [the former student] and . . . the school employee[] occurred while she was a student"); *Singleton v. Chicago Sch. Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*, No. 00C395, 2000 WL 777925, at *19 (N.D. Ill. June 13, 2000) (Title IX claims accrued at time principal harassed or discriminated against former teacher because plaintiff "knew or should have known that her rights were being violated at the time in which she was subjected to such alleged violations"); *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997) (Title IX claim "accrued when [the student] knew or had reason to know of her injury— October 29, 1997[,]" the date her professor allegedly "sexually harassed her by touching her against her will on various parts of her body and indicating that he wanted to be with her privately").

continue to be afraid to see doctors to this day . . . ." FAC ¶ 165.

- There were "widespread and repeated complaints of Dr. Strauss's conduct." *Id*. ¶ 231.

**Allegations Common To All Student-Athlete Plaintiffs' Awareness**

- Dr. Strauss's "notoriously hands-on examinations earned him different nicknames over the years, including 'Dr. Jelly Paws,' 'Dr. Drop-Your-Drawers,' 'Dr. Nuts,' and 'Dr. Cough.'" These were nicknames well-known by OSU . . . student athletes." *Id*. ¶¶ 115-116.

- "For decades, Dr. Strauss was a fixture in the locker rooms, showers, and saunas of Larkins Hall, the former student and faculty recreation center on the Ohio State campus that housed the wrestling, gymnastics, and swimming teams. . . . Dr. Strauss would shower with athletes after workouts at the Larkins facility, and had his locker in the students' locker room. Dr. Strauss generally showered multiple times daily—a shower with each team—where he would wash himself while staring at the showering athletes. On many occasions, Dr. Strauss would postpone performing medical treatments after practice so that he could shower with the wrestling team. Dr. Strauss also scheduled his showers so that he could view his favorite athletes naked." *Id*. ¶¶ 118, 131-134.

- "A former OSU wrestling coach described Larkins Hall as a 'cesspool of deviancy,' saying 'Coaching my athletes in Larkins Hall was one of the most difficult things I ever did.' Student athletes were regularly harassed in Larkins Hall by sexually aggressive men who attended the university or worked there: 'The voyeurs would masturbate while watching the wrestlers shower or sit in the sauna, or engage in sexual acts in the areas where the athletes trained, the former wrestlers said. The situation was so egregious that former wrestling head coach Russ Hellickson would at times have to physically drag the gawkers out of the building[.]'" *Id*. ¶¶ 119-120.

- "Student athletes also pleaded with the University administration to make changes to Larkins Hall to protect student athletes. During the 1994-1995 season, two wrestlers met with then-Athletic Director Andy Geiger ("AD Geiger") in his office. The wrestlers complained about the voyeuristic and lewd conduct of the men in the lockers and saunas of Larkins Hall. They specifically complained of Dr. Strauss's conduct. They presented AD Geiger with drawings of changes to the wrestling and gymnastics locker room that they believed would enhance safety and privacy for student athletes." *Id*. ¶¶ 121-123.

- During Dr. Strauss's physical examinations of student athletes, "Dr. Strauss forced male student athletes to undress from the waist down and submit to invasive and medically unnecessary examinations, during which he would touch and fondle their genitalia and digitally penetrate their anuses . . . . There was no medical necessity for Dr. Strauss's examination, touching, and fondling of male athletes' genitalia or digital anal penetration during the required periodic physical examinations—Dr. Strauss did it for his own personal, sexual gratification." *Id*. ¶¶ 139-140.

- "Regardless of the ailment, Dr. Strauss's treatment of male student athletes almost always included examination, touching, and fondling of their genitalia, and it frequently included

9

digital anal penetration." *Id*. ¶ 154.

- "Some athletes saw it as the price of getting treatment. Ohio State forced student athletes to make a chilling decision: either seek treatment from Dr. Strauss and submit to his molestation or forego treatment and live with illness or injury. Athletes had to receive physicals before competing, whether or not they were injured, which meant that systematic sexual abuse from Dr. Strauss was inevitable under the Devil's bargain Ohio State forced them to make with themselves. With their collegiate athletic careers and scholarships on the line, many athletes sought treatment from Dr. Strauss for their physical conditions, at a high cost to their mental and emotional health." *Id*. ¶¶ 157-160.

- "[S]ome of the athletes were 'uncomfortable' with [Dr. Strauss] showering with them[.]" *Id*. ¶ 171.

Plaintiffs termed the above allegations "Factual Allegations Common to All Counts." *Id.* at pg. 16. Plaintiffs also realleged and incorporated these allegations into their Title IX claims. *Id*. at ¶ 247.

In regard to allegations specific to a particular plaintiff, plaintiffs alleged the following:

**Plaintiff Brian Garrett's Awareness**

- "Brian graduated from OSU with a Bachelor of Science in Nursing degree in 1996. He attended the graduate nursing program (nurse practitioner major) at OSU in 1997 and 1998. He completed his Master of Science in Nursing degree at the University of Cincinnati (switched majors to nurse anesthesia as OSU did not offer this major) in 2003. He is currently employed as a Certified Registered Nurse Anesthetist." *Id*. at ¶ 17.

- "Brian was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss at an off-campus health clinic in 1996." *Id*. at ¶ 18.

- While Brian was working at Dr. Strauss's off-campus health clinic in the fall of 1996, Dr. Strauss "removed [a] patient's pants and began to heavily fondle the patient's penis and testicles until the patient achieved an erection. The patient turned bright red; Brian presumes the patient was embarrassed. . . . Dr. Strauss continued to fondle the patient until the patient ejaculated. Brian was shocked by what he witnessed. Dr. Strauss then instructed Brian to retrieve tissues so that Dr. Strauss could clean up the ejaculation. . . . Brian recalls feeling uneasy about the incident . . . ." *Id*. at ¶¶ 34-38.

- "Later that same day, Dr. Strauss asked Brian if he had any ailments. Brian complained to Dr. Strauss that he was experiencing severe heartburn. Dr. Strauss offered to examine and treat Brian. . . . Dr. Strauss then unexpectedly removed Brian's pants and began fondling his genitalia. . . . Brian was in shock. He immediately left the clinic and never returned. . . ." *Id*. at ¶¶ 39-41.

10

**Plaintiff Ed Gonzalez's Awareness**

- "Plaintiff Ed Gonzalez is a . . . former student-athlete on OSU's track team. Ed was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during examinations in the 1990s." *Id*. ¶ 56.

- "When Ed was an incoming freshman, he was directed to Dr. Strauss for a physical. Dr. Strauss had Ed remove his clothing and Dr. Strauss stared at Ed's testicles, during which time Dr. Strauss put his face very close to Ed's genitals and appeared to be attempting to conceal an erection. Dr. Strauss then massaged Plaintiff Gonzalez's chest for an inappropriate amount of time and commented that he had 'large pecs for a hurdler.'" *Id*. ¶¶ 57-59.

**Plaintiff Kent Kilgore's Awareness**

- "Plaintiff Kent Kilgore is . . . a former student athlete on OSU's swim team. Ken was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during examinations in the 1980s." *Id*. ¶ 60.

- "When Kent was an incoming freshman, on partial scholarship for swimming, he was directed to Dr. Strauss for a physical. Dr. Strauss used no gloves. Dr. Strauss examined his anal region and inserted his finger in Kent's rectum. Dr. Strauss fondled Kent's genitals and held his penis 'in his hand and played with it like playdough.' While at OSU, Kent had two 'physicals' by Dr. Strauss, and has not had a physical since." *Id*. at ¶¶ 61-64.

**Plaintiff Adam Plouse's Awareness**

- "Plaintiff Adam Plouse is . . . a former student athlete on OSU's wrestling team. Adam was sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during examinations in the 1990s." *Id*. ¶ 66.

- "Beginning his freshman year, he was warned by upperclassmen about Dr. Strauss, and tried to keep his distance." *Id*. ¶ 68.

- "Nevertheless, when Adam was a freshman, he was directed to Dr. Strauss for a physical where he endured an extensive and inappropriate hernia check." *Id*. ¶ 69.

- "On many occasions in Larkins Hall, Dr. Strauss watched Adam shower in a way that made Adam uncomfortable." *Id*. ¶ 70.

**John Doe Plaintiffs' 1-35 Awareness**

- Each John Doe plaintiff alleges he was a "former student-athlete" participating on an Ohio State athletic team and/or a student who "attended Ohio State," and was "sexually assaulted, battered, molested, and/or harassed by Dr. Strauss during his time at OSU." *Id*. ¶¶ 71-105.

11

- "A former OSU gymnast, and Plaintiff herein, specifically recalls any time he saw Dr. [sic] for a medical issue, whether it was an annual physical, a broken bone, or an ear infection, he was required to disrobe and endure an extended and uncomfortable examination of his lower body." *Id*. ¶ 155.

- "One Plaintiff went to the campus health clinic with what he believed was strep throat. Dr. Strauss required him to disrobe, and ultimately fondled him to erection and ejaculation. The student had to remind Dr. Strauss to do the strep swab before leaving." *Id*. ¶ 162.

- "One Plaintiff saw Dr. Strauss at the OSU health center in the 1990s for burning with urination. Dr. Strauss digitally penetrated his anus, under the guise of checking his prostate, and commented 'Don't worry, this sometimes makes guys ejaculate.' On a follow-up visit, Dr. Strauss fondled the student to ejaculation. []" *Id*. at ¶ 163.

Plaintiffs also plead the following determinative facts: Dr. Strauss stopped working at Ohio State in 1998 and died in 2005, and Larkins Hall was demolished in 2005. *Id.* at ¶¶ 21, 112, 129.

Taken as true, the above facts demonstrate that the two-year statute of limitations for plaintiffs to bring their Title IX claims expired in 2000 at the latest. *See id*. at ¶¶ 112, 237 (alleging most recent act of abuse occurred in 1998). Plaintiffs did not file their initial Complaint until July 26, 2018. *See* Complaint (Doc. # 1). Thus, plaintiffs' Title IX claims were filed eighteen (18) years after the applicable two-year statute of limitations had expired. As a matter of law, their claims are time-barred and should be dismissed with prejudice. *See Giffin*, 1999 WL 238669 at *1-2 (affirming dismissal of Title IX claim that "was filed after the two-year statutory period had run"); *American Pipe & Const. Co.*, 414 U.S. at 554.

To the extent plaintiffs seek to argue they were unaware "that Dr. Strauss's conduct was . . . sexual assault" or constituted sexual abuse, such argument improperly seeks to blur the concept of discovering an injury with the concept of discovering that a particular injury may give rise to a Title IX claim. *See* FAC at ¶¶ 47, 201. A Title IX claim "accrues on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to [his] cause of action." *Bowling,* 2017 WL 4512587, at *1; *Anderson*, 616 F. Supp. 2d at 668 ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which

is the basis of his action"). "Otherwise stated, '[a] plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful.'" *Anderson*, 616 F. Supp. 2d at 668 (quoting *Amini v. Oberlin College*, 259 F.3d 493, 600 (6th Cir. 2001)); *see also Twersky*, 993 F. Supp. 2d at 440 ("'[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock,'" and this is true "regardless of how complex or difficult to discover the elements of the cause of action may be").

## IV. LEAD PLAINTIFF AND PUTATIVE CLASS REPRESENTATIVE BRIAN GARRETT FAILS TO STATE A TITLE IX CLAIM AGAINST OHIO STATE.

As discussed above, the Title IX claims of all plaintiffs are barred by the expiration of the statute of limitations. In addition to the statute of limitations, it appears from the face of the First Amended Complaint that the Title IX claim of lead plaintiff and putative class representative Brian Garrett has a further infirmity in that Ohio State cannot be liable because the alleged abuse occurred at Dr. Strauss's privately owned and managed, off-campus clinic. *See* FAC (Doc. # 33) at ¶¶ 18, 33-41.

In this regard, plaintiffs allege Dr. Strauss abused Mr. Garrett "two miles from campus" at an "off-campus" health clinic (Men's Clinics of America) "ran" by "only one doctor—Richard Strauss"—"through a corporation he formed in 1996, Richard H. Strauss, M.D., Inc.," after Ohio State "removed" and "ousted" Dr. Strauss as a treating physician from its on-campus student health center. *Id*. at ¶¶ 18, 21-22, 24-25. Mr. Garrett graduated from Ohio State in 1996. *Id.* at ¶ 17. He began working for the Men's Clinics of America "in the fall of 1996." *Id.* at ¶ 33.

In the context of off-campus activities, the Sixth Circuit has held that "[w]hen conduct occurs at a school in another district or off school grounds entirely, the school district has control over neither the harasser, nor the context." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 366 (6th Cir. 2012); *see also Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch.*, 122

13

F.3d 654, 655-656 (8th Cir. 1997) (dental school was not liable under Title IX for instructor's sexual assault of a dental student at the instructor's "off-campus," "independent," "private dental practice that was not affiliated with the school").

## V. **PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES.**

Plaintiffs seek an award of punitive damages against Ohio State. See FAC (Doc. # 33) at ¶ 272 & ¶ (b) of Prayer for Relief. Punitive damages are not recoverable under Title IX as a matter of law. *See Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 WL 31951264, at *16 (S.D. Ohio Nov. 15, 2002) (citing *Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097, 2102–03, 153 L.Ed.2d 230 (2002)); *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) ("punitive damages are not available for private actions brought to enforce Title IX"). Therefore, plaintiffs' request for punitive damages also should be dismissed with prejudice.

## VI. **CONCLUSION.**

Plaintiffs' Title IX claims are barred by the applicable two-year statute of limitations because they are based on acts alleged to have been committed at least twenty (20) years ago, by a person who stopped working at Ohio State twenty (20) years ago and who died thirteen (13) years ago, and at a facility which was demolished thirteen (13) years ago. Additionally, plaintiffs cannot recover punitive damages under Title IX. For all of these reasons, plaintiffs' First Amended Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

MICHAEL DeWINE
ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Stephen E. Dutton (0096064)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com
dutton@carpenterlipps.com

Special Counsel for Defendant The Ohio State University

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on November 9, 2018. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University