**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN (COLUMBUS) DIVISION**

Brian Garrett,
Edward Gonzales,
Kent Kilgore,
Adam Plouse, and
John Does 1-35, individually and
on behalf of all others similarly situated,

          Plaintiffs,

vs.

The Ohio State University,

          Defendant.

Civil Case 2:18-cv-00692-MHW-EPD

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## I.    INTRODUCTION

Until it had to, OSU couldn't have cared less about Dr. Strauss's rampant sexual brutality that destroyed Plaintiffs' lives. OSU's innocent victims trusted OSU to educate, care for, and nurture them. They relied on OSU to groom them into confident and self-assured students and student-athletes. But instead, OSU enabled a demented, known predator and allowed him to fashion a sick sexual playground where he could have his way with OSU's young students. Heaven forbid anyone find out what was really happening at the mighty Ohio State University, lest its reputation buckle and its donations wither.

This case isn't about what Strauss did. It never has been. It's about what OSU *didn't* do. OSU's deliberate indifference despite actual notice is what fuels Plaintiffs' Title IX claim, and it's a basis firmly rooted in law.

Because the law recognizes Plaintiffs' claim, OSU ignores the law and focuses instead and exclusively on the dates of Strauss's molestation—even recognizing these allegations' commonality. But Plaintiffs aren't alleging OSU's liability for Strauss's brutality; they're alleging OSU's liability for ignoring it until it no longer could. For this reason, it doesn't matter whether Strauss's ugliness happened twenty years ago or two hundred years ago, whether he's dead or alive, or that OSU (for whatever reason) demolished Larkins Hall in 2005.

What matters is that OSU kept mum until it could keep mum no longer. But to OSU's distress, the jig is up. So what is OSU doing? Is it owning its behavior? Far from it. Though claiming that it cares about its students, it strives to dismiss Plaintiffs' complaint and to leave them with nothing but nightmares—all while insisting that OSU is not "being dismissive."[1]

Had Plaintiffs blown the statute of limitations on their deliberate-indifference-based Title IX claim, they wouldn't be bothering the Court. But Plaintiffs did *not* sit on their cause of action, and they did *not* file too late. They immediately filed when OSU came out (so to speak) about its deliberate indifference and alerted the world that it had failed to prevent thousands of sexual assaults against its students. Plaintiffs did what's

---

[1] Defendant The Ohio State University's Motion to Dismiss Plaintiffs' First Amended Complaint, Doc. 38, at 3.

right, and they followed the law. All they now seek is their day in Court and that—win or lose—OSU finally show them the respect that they deserve.

## II.  THE STORY OF OSU'S UGLINESS

*Doctor Jelly Paws*. That's what they called him—at least those whom Strauss fondled. Word was that when student-athletes suffered minor injuries, they had to ask themselves whether their injuries were bad enough that it was worth getting molested.

But Plaintiffs' lawsuit isn't about him. And it's certainly not about the Strauss-based allegations "[i]n their original complaint, [where they] asserted they were injured due to the alleged conduct of Dr. Strauss in 'the late 1980s and 1990s.'"[2]

Plaintiffs' lawsuit is about how OSU enabled Strauss, ignored his conduct, and disregarded its students. And OSU knows this. Their complaint is about how OSU, sadly, couldn't have cared less about Strauss's monstrosity, except to the extent OSU strived mightily to keep it quiet. To this end, OSU erects a series of straw men and promotes endless fallacies derived from unpleaded theories since only this way can it hope the Court will let it shamefully off the hook.

The next business day after Plaintiffs filed their first-amended complaint,[3] the OSU Board of Trustees announced a special executive session. On November 5, the Board met behind closed doors to discuss Plaintiffs' case.[4] Only days later, Plaintiff Garrett requested an audience with the Board at their November 2018 meeting. On the

---

[2] Doc. 38 at 1.
[3] Doc. 33.
[4] https://news.osu.edu/notice-of-meeting-board-of-trustees-executive-session-scheduled/

same day as OSU granted his request[5] it moved to dismiss his first-amended complaint.[6]

On November 15, OSU's hired team at Perkins Coie updated the Board on its investigation—the investigation that OSU only announced and initiated in April 2018 when its protecting walls finally crumbled.[7] The next day, the Board heard from Garrett and other survivors and plaintiffs.[8] Board Chairman Michael J. Gasser concluded the presentation by thanking the victims and promising them, "**Rest assured that this Board is not dismissing you**. We are committed to doing the right thing. This investigation will be over soon. And we look forward to coming up with the appropriate response and action at that time."[9]

Yet OSU has not withdrawn its Motion to Dismiss.

Plaintiffs only allege violation of Title IX.[10] The parties agree that an implied private cause of action exists under Title IX,[11] a two-year limitations period applies,[12] and

---

[5] http://radio.wosu.org/post/richard-strauss-survivors-ask-address-ohio-state-board-trustees

[6] Doc. 38.

[7] https://news.osu.edu/perkins-coie-team-updates-trustees-on-strauss-investigation/

[8] https://abc6onyourside.com/news/local/ohio-states-board-of-trustees-listens-to-update-on-strauss-investigation

[9] https://www.facebook.com/pg/WSYXABC6/videos/ at 49:50 (emphasis added).

[10] FAC ¶¶ 247-73.

[11] OSU's Motion to Dismiss Plaintiffs' First Amended Complaint, Doc. 38 at 5–6; *Cannon v. Univ. of Chicago,* 441 U.S. 677, 717 (1979) (holding an implied private right of action exists under Title IX); *see also Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 76 (1992) (holding that both injunctive relief and damages are available in a suit brought pursuant to the implied private right of action under Title IX).

[12] Doc. 38, at 5–6; *see also Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 729 (6th Cir. 1996) (discussing rationale behind application of state's personal injury limitation period to implied private cause of action under Title IX); Ohio R.C. 2305.10.

4

federal law governs the determination of this claim's accrual date.[13] Indeed, besides OSU's limited challenge to Garrett's individual claim, it does not challenge that Plaintiffs' first-amended complaint states a claim for relief under Title IX—only that Plaintiffs' claim is time-barred. But dispute over the date a cause of action accrues is a classic factual dispute that precludes a 12(b)(6)-stage dismissal.[14] Thus, if the Court agrees that Plaintiffs have not "conclusively" pled themselves out of court, it should deny OSU's motion.

### III.    LAW AND DISCUSSION

**A.    Rule 12(b)(6) embraces a liberal and forgiving standard, and disputes concerning statutes of limitations are not susceptible to dismissal.**

To survive a motion to dismiss, a complaint must make a claim and plead facts plausibly showing that the plaintiff is entitled to relief.[15] The court must construe the complaint in the light most favorable to the plaintiff and treat all well-pleaded allegations as true.[16]

Defendant bears the burden of demonstrating that plaintiff has failed to state a claim for relief.[17] "Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run[, and i]f the defendant

---

[13] Doc. 38, at 12–13.

[14] "[T]he determination of when a cause of action accrues is to be decided by the trier of fact." *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 933 F. Supp. 2d 974, 1016 (S.D. Ohio 2013) (*citing Dalesandro v. Ohio Dep't of Transp.*, No. 10AP–241, 2010 WL 5238609, at *3 (Ohio Ct. App. Dec. 16, 2010).

[15] *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (citing *Iqbal*, 556 U.S. at 679).

[16] *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[17] *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007).

meets this requirement then the burden shifts to the plaintiff to establish an exception to the statute of limitations."[18]

A Rule 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations,[19] and courts disfavor dismissing claims as untimely at the motion-to-dismiss stage.[20] Plaintiffs have no duty to plead facts negating an affirmative defense.[21] And although the statute of limitations provides an affirmative defense, it does not create a jurisdictional defect that strips a court of authority to determine a plaintiff's claims.[22]

Dismissal based on statute of limitations is only appropriate if the complaint "shows conclusively on its face that the action is indeed time-barred."[23] Accepting the well-pleaded facts as true, as a court must,[24] Defendant's motion fails because Plaintiffs' first-amended complaint shows that Plaintiffs' Title IX claims accrued within the past

---

[18] *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (citations omitted).

[19] *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir. 2012).

[20] *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank,* 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("Ordinarily, dismissing claims as untimely under Rule 12(b)(6) is disfavored because plaintiffs have no duty to plead facts negating an affirmative defense, such as the statute of limitations.").

[21] *Id*.

[22] *State ex rel. Jones v. Suster*, 701 N.E.2d 1002, 1009 (Ohio 1998).

[23] *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012).

[24] *Owner Operator Indep. Drivers Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.,* 501 F.3d 493, 502 (6th Cir. 2007), quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

two years or that Plaintiffs only discovered their claim against OSU (as opposed to any claim against Dr. Strauss) within the past year.

What's more, "'awareness' [of the existence of the injury and causation] does not mean actual knowledge; rather, all that must be shown is the existence of 'circumstances [that] would lead a reasonable person to investigate further.'"[25] So even if Plaintiffs were aware that Strauss assaulted and injured them, they had no reason to know or suspect—until April 2018, when OSU publicly initiated an investigation—that OSU's deliberate indifference to complaints and its unreasonable failure to take action contributed to their abuse or in their denial of educational benefits at OSU.[26]

This means that it was not until April 2018 that Plaintiffs first knew OSU could have—and should have—stopped or prevented their assault but didn't.[27] And because disputes over a claim's accrual date is a classic factual dispute, OSU gives this Court no choice but to deny its motion to dismiss.[28]

**B.    Plaintiffs plausibly plead their Title IX claim against OSU.**

Plaintiffs plead a proper Title IX claim against OSU, and OSU never says otherwise. Congress enacted Title IX to avoid using federal resources to support discriminatory practices and to provide individual citizens effective protection against

---

[25] *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602, 616 (W.D. Tex. 2017) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001)).
[26] FAC ¶¶ 48-54, 169, 197–98, 219, 231–32, 248–68.
[27] *Id.*
[28] "[T]he determination of when a cause of action accrues is to be decided by the trier of fact." *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc*., 933 F. Supp. 2d 974, 1016 (S.D. Ohio 2013) (*citing Dalesandro v. Ohio Dep't of Transp*., No. 10AP–241, 2010 WL 5238609, at *3 (Ohio Ct. App. Dec. 16, 2010).

discriminatory practices.[29] Upon notice of abuse or harassment, OSU (as a recipient of federal funds) was required to take "such remedial action" as [wa]s necessary to overcome the effects of the discrimination.[30]

A plaintiff subjected to sexual harassment or a sexually hostile environment has an implied right of action under Title IX when the institution's response to notice of the harassment amounts to "deliberate indifference."[31] "The premise [of a Title IX claim] is an official decision by the recipient not to remedy the violation."[32] Deliberate indifference is actionable when a plaintiff can demonstrate that the school's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."[33]

Plaintiffs' first-amended complaint pleads countless facts alleging their Title IX claim and OSU's deliberate indifference. It describes that OSU subjected Plaintiffs to sexual harassment or a sexually hostile environment[34]; that appropriate OSU personnel, such as head coaches, trainers, athletic director, and director of student health, had actual notice of this abuse[35]; and that OSU's lack of response and coverup amount to deliberate

---

[29] *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 509 (6th Cir. 2001) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 704 (1979).

[30] *See* 34 C.F.R. § 106.3.

[31] *Klemencic*, 263 F.3d at 510.

[32] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

[33] *Davis v. Monroe County Bd. of Ed.,* 526 U.S. 629, 648 (1999); *see also Vance v. Spencer Cnty. Pub. Sch. Dist.,* 231 F.3d 253, 260-61 (6th Cir. 2000) ("where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances.").

[34] FAC ¶¶ 11–105, 118–20, 130–35, 179–89, 196–97.

[35] *Id.* ¶¶ 121–28, 143, 166–68, 170–72, 258–59.

indifference.[36] If OSU wants to challenge these allegations, it can do so at summary judgment but not on a motion to dismiss.[37]

**C.      Plaintiffs allege that they did not discover the existence of their claims against OSU until a few months ago.**

According to the federal discovery rule "a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the conduct of the defendant."[38] The rule "governs when a claim accrues" and "incorporates the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action."[39] The Sixth Circuit and courts in this district have applied the discovery rule in cases where "the injury complained of may not manifest itself immediately and, therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations."[40]

Until the recent media reports about Strauss's widespread abuse that spawned OSU's concession to investigate its own conduct, Plaintiffs had no reason to know that *OSU* had injured them.[41] OSU acknowledges as much, noting that this case began "*in March 2018*, [when] a former wrestler reported allegations related to Dr. Strauss to Ohio

---

[36] *Id.* ¶¶ 112–14, 167, 169, 174–76, 190–94, 213, 215, 220–26, 261–70.

[37] *See Klemencic*, 263 F.3d at 510 (resolving factual questions concerning deliberate indifference at summary judgment).

[38] *Id.* (internal quotations omitted); *Brown v. United States Gov't*, No. 2:16-CV-0358, 2017 WL 2378375, at *5 (S.D. Ohio June 1, 2017), *recons. denied sub nom. Brown v. United States*, No. 2:16-CV-0358, 2018 WL 1151775 (S.D. Ohio Mar. 5, 2018).

[39] *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201 (1997) (internal quotation marks omitted).

[40] *Lutz*, 717 F.3d at 470 (internal quotations omitted).

[41] FAC ¶¶ 49, 51, 178, 198.

State."[42] In this manner, "[t]he acts alleged in plaintiffs' First Amended Complaint [did *not*] occur[] decades ago," as OSU insists[43]; they occurred only a few months ago as the law recognizes.

In *Hernandez* v. *Baylor University*,[44] the Western District of Texas declined to dismiss plaintiff's Title IX claims as untimely when she alleged that she first became aware of the university's deliberate indifference to a known issue of sexual misconduct within its football program four years after a university football player assaulted her— when a law firm investigating the university's handling of sexual-assault allegations released its report.[45] Although the plaintiff knew she had been assaulted and that the perpetrator had assaulted other women, the court believed it was reasonable to infer that her claims did not accrue until later investigations publicly revealed that the university knew and could have prevented her assault.[46]

---

[42] Doc. 38, at 1 (emphasis added).

[43] Doc. 38 at 3. (emphasis added).

[44] *Hernandez*, 274 F. Supp. 3d 602 (W.D. Tex. 2017).

[45] *Id.* at 617 (denying motions to dismiss pre-assault Title IX claim based on a statute of limitations defense, holding that, based on allegations, plaintiff "had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault," where plaintiff did not learn of university's role in causing her sexual assault until law firm hired to investigate university's handling of sexual assaults released findings years later); *see also Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 663. (W.D. Tex. 2017) (same); *T.R. v. Boy Scouts of America*, 181 P.3d 758, 766 (Or. 2008) (where plaintiff was sexually abused by a police officer, the date when plaintiff's federal civil rights claim against city began to accrue was a question for jury, and it was reasonable for jury to conclude that claim accrued when plaintiff discovered from news coverage the city's role in causing sexual abuse by police officer).

[46] *Hernandez*, 274 F. Supp. 3d at 616–17.

As alleged, Plaintiffs believed it was "medically inappropriate and deeply uncomfortable" to get treated by Strauss.[47] But many Plaintiffs thought they were the only ones he abused.[48] Believing their experiences were isolated events, and not having reported these events, they had no reason to suspect that OSU played a role in perpetuating a culture of deliberate indifference to Strauss and to a sexually hostile environment.[49]

Plaintiffs who were privy to locker room banter about Strauss assumed that because others had similar experiences and OSU did nothing, Strauss's conduct was "just what you had to go through to be in a big university."[50] OSU affirmed that warped belief by continuing to mandate that its athletes receive Strauss's services at least annually for physicals.[51] For these reasons, Plaintiffs had no reason to suspect or to further investigate any claims regarding OSU's actions—or lack thereof—until OSU finally confessed in Spring 2018.[52]

But even had Plaintiffs investigated OSU's involvement, their investigation would have been futile considering the virtues and commendations that OSU lauded upon Strauss to keep his twisted scheme (and OSU's involvement in and enablement of it) safely under wraps. OSU continued to feed athletes to Strauss for regular care and even

---

[47] FAC ¶¶ 38, 47–48, 201.
[48] *Id.* ¶ 45.
[49] *Id.* ¶¶ 45, 47–53, 231–32.
[50] *Id.* ¶ 65.
[51] *Id.* ¶¶150–52.
[52] *Id.* ¶¶ 45–53, 178, 198.

affirmed his reputation by awarding him emeritus status upon retirement.[53] Not until OSU got caught and admitted the need for an investigation could Plaintiffs have reasonably known that OSU was involved in causing them injury.[54]

Information of OSU's institutional knowledge (and OSU's concealment of it),[55] was simply unavailable to Plaintiffs during the two-year period following their abuse. Had this information been available, Plaintiffs would have sued then. And if OSU doesn't believe Plaintiffs' allegation that they lacked knowledge sufficient to fashion a deliberate-indifference-based Title IX claim against OSU until now, that's why we have discovery.

For OSU's part, it devotes almost a third of its brief to recounting Strauss's cruelty,[56] emphasizing that "[t]he acts alleged in plaintiffs' First Amended Complaint occurred decades ago."[57] Well, *of course* Strauss's acts occurred decades ago. That's the whole point of Plaintiffs' case. OSU swept all these facts under the rug for decades and was deliberately indifferent to them until March 2018.

Yet OSU refuses even once to acknowledge that Plaintiffs' lawsuit alleges OSU's deliberate indifference. Instead, OSU takes refuge in various cases involving claims that Plaintiffs *don't* allege.

---

[53] *Id.* ¶¶ 148, 176.
[54] *Id.* ¶¶ 43, 51, 197, 198, 201–04, 219, 231–32.
[55] *Id.* ¶231.
[56] Doc. 38, at 8–12.
[57] *Id.* at 3.

For instance, OSU cites *Twersky v. Yeshiva University*[58] for the proposition that discovery of the injury starts the clock.[59] But Ohio is bound by Sixth Circuit law, which instructs that accrual depends on what event should have alerted the typical lay person to protect her rights—here, Plaintiffs' deliberate-indifference claim against OSU, *not* their claim against Strauss himself.[60]

Plus, under the federal discovery rule, "the statute of limitations begins to run when a reasonable person knows, or in the exercise of due diligence should have known, both his injury *and the cause of that injury*."[61] Here, that cause is OSU, which Plaintiffs could not have known until Spring 2018 because OSU did everything possible to keep its involvement and enablement secret.

OSU's trio of string citations don't help answer when Plaintiffs' claims accrued because none them recognize that Plaintiffs' case involves the federal-discovery rule. In *Gilley v. Dunaway*,[62] the Sixth Circuit ruled that plaintiff had not adequately pleaded tolling of her Title IX claim under Kentucky's fraudulent-concealment statute. The statute under which Gilley sought tolling required allegations that the defendant had "abscond[ed] or conceal[ed]" itself or "obstruct[ed] the prosecution of" her claims.[63]

---

[58] 993 F. Supp. 2d 429 (S.D.N.Y. 2014).

[59] *Id.* at 440.

[60] *Helm v. Ells*, 642 F. App'x 558, 561 (6th Cir. 2016).

[61] *Campbell v. Grand Trunk W. R.R. Co*., 238 F.3d 772, 775 (6th Cir. 2001) (emphasis added); *see also Owner Operator*, 540 F. Supp. 2d at 932.

[62] 572 F. App'x 303 (6th Cir. 2014) (affirming district court's dismissal of plaintiff's claims as time-barred by Kentucky's one-year statute of limitations for personal injury actions, concluding plaintiff could not benefit from Kentucky's tolling statute where she had not alleged defendants fraudulently concealed her causes of action).

[63] *Id*. at 306.

Here, Plaintiffs were not "aware of facts that should have aroused [their] suspicion" of the claims *against OSU* at the time Strauss abused them. They had no reason to investigate because they either knew Strauss had been reported and that OSU reaffirmed him or they had no reason to think their abuse was anything but an isolated incident, meaning no reason existed to "exercise[] reasonable care and diligence to discover whether [they] had a viable legal claim." [64]

*Adams v. Ohio University*,[65] although arising on a motion to dismiss, did not involve a statute-of-limitations challenge. Defendants challenged the sufficiency of allegations to support, among other things, the notice and deliberate-indifference elements of the Title IX claim, elements that OSU does not challenge.

To the extent *Adams* is relevant, it rejects OSU's argument that remote-in-time factual allegations of abuse cannot constitute the notice required for a Title IX claim.[66] *Adams* adds that an institution's post-assault remedial efforts (such as OSU's bought-and-paid-for investigation) provide no defense to its pre-assault failures but for which Plaintiffs "would not have been subjected to misconduct."[67]

Finally, *Bowling v. Holt Public School*[68] acknowledges that application of the continuing-violation theory in the Title IX context is an unresolved question in this

---

[64] *Id.* at 308.
[65] 300 F. Supp. 3d 983 (S.D. Ohio 2018).
[66] *Id.* at 998 ("the mere fact that the previous allegations are distant in time will not bar Plaintiffs' claims from continuing at this stage").
[67] *Id.*, 300 F. Supp. 3d at 1000.
[68] No. 1:16-CV-1322, 2017 WL 4512587 (W.D. Mich. May 26, 2017).

Circuit.[69] There, Bowling sought to use incidents of nonsexual harassment to extend the reach of her Title IX claim for sexual harassment.[70] In contrast to Bowling, Plaintiffs assert that OSU's deliberate indifference, undetectable until 2018, created a sexually hostile environment that continued until then. It was OSU's deception, not Plaintiffs' alleged inadvertence, that renders Plaintiffs' claim timely under Title IX.[71] *Bowling* agrees, suggesting that a continuing violation theory is viable and survives dismissal.[72]

OSU won't acknowledge Plaintiffs' accrual theory even once. Plaintiffs asserted their rights under Title IX within months of realizing the existence of their claim against OSU. The federal discovery rule affords Plaintiffs their day in court, and the Court should not dismiss Plaintiffs, because OSU concealed for decades its apathy to reports concerning Strauss.

Simply put, Plaintiffs are neither suing "for the conduct of Dr. Strauss," nor do they seek redress for "expired" sexual abuse injuries sustained in the 70s, 80s, and 90s.[73] And while Plaintiffs' carefully plead Strauss's abuses, their Title IX claim against OSU concerns *OSU's* conduct, *OSU's* failure, and *OSU's* Title IX violation. Their first-amended complaint alleges that OSU's failures occurred within the last year or were only discoverable during the last year, meaning Plaintiffs' claims are not time-barred.

---

[69] *Id.* at *2 (Sixth Circuit has not ruled, and that "courts are split on whether the [continuing violation] doctrine applies to Title IX claims . . . .").

[70] *Id.*, at *2.

[71] FAC ¶¶173–176, 181, 188–189, 74, 216, 223–225.

[72] *Id.* (noting Title IX claims can't be salvaged by continuing violation theory where "allegations show that [continuing violation doctrine] does not apply").

[73] *See* Doc. 38 at 2, 8.

**D.** **Plaintiffs' Title IX violations are timely because they are continuous and ongoing.**

OSU's deliberate indifference, which is the conduct underlying Plaintiffs' claim, was not confined to a point in history like Strauss's abuses were. OSU's deliberate indifference *continued throughout* history. OSU was deliberately indifferent from the time of the first complaint against Strauss in 1978[74] and through the announcement of its investigation in April 2018,[75] which announcement was within two years of the first complaint's filing.

OSU's duty to act was triggered when it first learned of Strauss's abuse.[76] But OSU didn't act, at least in a way that helped Strauss's victims instead of itself. OSU maintained a façade of safety and strengthened the sexually hostile environment in which Strauss thrived, thus perpetuating a campus culture of deliberate indifference to student safety.[77] OSU failed to comply or delayed compliance with its Title IX obligations until it finally investigated Strauss's misconduct in April of 2018.[78]

---

[74] FAC ¶ 166.

[75] *Id.* ¶ 198.

[76] *Vance*, 231 F.3d at 260–61 ("If this Court were to accept [Defendant]'s argument, a school district could satisfy its obligation where a student has been raped by merely investigating and absolutely nothing more. Such minimalist response is not within the contemplation of a reasonable response. Although no particular response is required, and although the school district is not required to eradicate all sexual harassment, the school district must respond and must do so reasonably in light of the known circumstances. Thus, where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior. Where a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances.")

[77] FAC ¶¶ 173–176, 181, 188–189, 74, 216, 223–225.

[78] *Id.* ¶¶ 197–98. *See also Gebser*, 524 U.S. at 290 (deliberate indifference presupposes

OSU's belated (and suspect) investigation does not constitute the remediation that Title IX requires.[79] Plaintiffs' allegations of OSU's recent and ongoing conduct—despite OSU's notice of sexual harassment and a sexually hostile environment on campus—state a plausible and timely claim for relief under Title IX. Only by wading into the facts and resolving the merits—something that Rule 12(b)(6) forbids—can the Court reach an opposite result. It matters not that Strauss retired twenty years ago or that he died or Larkins Hall was demolished. Plaintiffs may bring a Title IX claim "even in the absence of any further affirmative acts of harassment," and requiring further acts would "run counter to the goals of Title IX."[80]

## E. Brian Garrett alleges a plausible Title IX claim.

OSU was in a position to control Strauss and the conditions under which he victimized Garrett and others. In 1996, before Strauss opened his off-campus clinic and lured Garrett to work there, OSU knew of Strauss's dangerous propensities and his threat to students. Yet OSU acted with deliberate indifference by allowing him continued access to vulnerable students. OSU's pre-assault failures resulted in Garrett's abuse. Had OSU responded appropriately to Strauss's known threat rather than concealing it and ignoring complaints, Garrett's abuse would never have happened.

---

that the school knows of a Title IX violation, but it "refuses to take action to bring the recipient into compliance. The premise, in other words, is an official decision by the recipient not to remedy the violation."); *see also Allen*, 913 F. Supp. 2d at 505.

[79] FAC ¶¶ 203–216. *See also Vance,* 231 F.3d at 260–61 ("where a school district has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances.").

[80] *Karasek v. Regents of the Univ. of Cal.,* No. 15-CV-03717, 2015 WL 8527338, at *12 (N.D. Cal. Dec. 11, 2015).

Yet OSU cherry-picks a line from the Sixth Circuit's decision in *Pahssen* to support its argument that "when conduct occurs at a school in another district or off school grounds entirely, the school district has control over neither the harasser, nor the context."[81] But *Pahssen's* analysis, and the Supreme Court decision it relies on, establishes that "the purpose of Title IX . . . is to hold school districts liable under 'circumstances[—like those alleged here—]wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs.'"[82]

To the extent OSU challenges Garrett's adequacy as class representative, this argument belongs at class certification. And where OSU argues sufficiency under Rule 12(b)(6), Garrett was a student, albeit in between his undergraduate and graduate school programs[83]; Strauss was an OSU employee[84]; OSU was on notice of Strauss's sexual misconduct[85]; Strauss leveraged his formal position and reputation at OSU to lure students like Garrett to staff his clinic[86]; Strauss used his position and reputation at OSU

---

[81] *Pahssen v. Merrill Cmty. Sch. Distr.*, 668 F. 3d 356, 366 (6th Cir. 2012) (affirming summary judgment for defendant, the school district where perpetrator had attended, on plaintiff's claim that the former district didn't take appropriate action before allowing the perpetrator to transfer to the district where he harassed plaintiff).

[82] *Id.* at 366 (quoting *Davis*, 526 U.S. at 645). Similarly unhelpful to Defendant is their citation to *Lam v. Curators of the Univ. of Missouri at Kansas City Dental School*, 122 F.3d 654, 655 (8th Cir. 1997), in which the Eighth Circuit affirmed judgment for the University as to a plaintiff's Title IX claim arising from her work in a dental clinic that was not affiliated with the university where she was harassed by a dentist who also acted as a university instructor and there was no allegation that the school was aware of or could have controlled or prevented the conduct.

[83] FAC ¶ 17.

[84] *Id.* ¶ 21.

[85] *Id.* ¶¶ 19, 21, 193, 258–260.

[86] *Id.* ¶¶ 29–31; Doc. 33.

18

to lure students to visit his clinic and even advertised discounted health services via OSU's campus newspaper[87]; and Strauss staffed the clinic with OSU nursing students,[88] which he interviewed on campus.[89] These facts, especially when taken together and in Plaintiffs' favor, allege a plausible Title IX claim.

## IV. CONCLUSION

What OSU did—or more accurately, what it didn't do—is abominable. No right-minded person disputes that. OSU engaged in a cover up, it's that simple. For years, it pretended away Strauss' cruelty and its enablement of it. But finally, the curtain is being drawn back. And we are just now discovering the ugly truth of OSU's conduct.

OSU's litigation defense belies the empathy that OSU publicly promotes. OSU was deliberately indifferent to what Strauss did to its students because OSU didn't want to get in trouble for it. But as we know, lies beget lies, and now—finally—OSU is caught.

Plaintiffs sued OSU when they first learned of OSU's (and not solely Strauss's) involvement in, and responsibility for, OSU's decades-long coverup. If OSU believes Plaintiffs knew or should have known sooner, then let OSU demonstrate this in discovery. But to extinguish Plaintiffs' claim now—particularly when the law permits the claims as pled—simply devastates OSU's victims even more.

---

[87] FAC ¶¶ 22–26.
[88] *Id.* ¶ 29.
[89] *Id.* ¶¶ 29–30.

All Plaintiffs did was to trust OSU. And OSU destroyed them. Win or lose, Plaintiffs have set forth factual allegations that entitle them to their day in Court. If OSU won't make good on its promise to do the right thing, the Court should require it to, for which reason Plaintiffs' respectfully request that this Honorable Court deny OSU's motion to dismiss.

Dated: December 18, 2018                    Respectfully Submitted,

                                            s/*Anne M. Valentine*
                                            Anne M. Valentine
                                            Leeseberg & Valentine
                                            175 S. Third Street, PH-1
                                            Columbus, OH 43215
                                            (614) 221-2223
                                            (614) 221-3106 fax
                                            avalentine@leesebergvalentine.com

                                            Simina Vourlis
                                            The Law Office of Simina Vourlis
                                            856 Pullman Way
                                            Columbus, OH 43212
                                            (614) 487-5900
                                            (614) 487-5901 fax
                                            svourlis@vourlislaw.com

Rex A. Sharp
Ryan C. Hudson
Scott B. Goodger
Larkin Walsh
Sarah T. Bradshaw
REX. A. SHARP, P.A.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
rhudson@midwest-law.com
sgoodger@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

Robert Allard
CORSIGLIA, MCMAHON AND ALLARD,
LLP
96 North Third Street, Suite 620
San Jose, CA 95112
(408) 289-1417
(408) 289-8127 fax
rallard@cmalaw.net

Jonathan Little
SAEED AND LITTLE, LLP
133 W. Market St. #189
Indianapolis, IN 46204
317-721-9214
jon@sllawfirm.com

Stephen Estey
ESTEY & BOMBERGER LLP
2869 India Street
San Diego, CA 92103
619-295-0035
619-295-0172 fax
steve@estey-bomberger.com

Joseph Sauder
SAUDER SCHELKOPF LLC
555 Lancaster Avenue
Berwyn, PA 19312
(610) 200-0580
(610) 421-1326
jgs@sstriallawyers.com

Daniel R. Karon (#0069304)
Beau D. Hollowell (#0080704)
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel.: 216.622.1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Attorneys for Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true and correct copy of the foregoing document was filed and served, via the Court's CM/ECF system on December 18, 2018, on all counsel of record.


By:     <u>*s/Anne M. Valentine*</u>
        Attorney for Plaintiffs