**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| BRIAN GARRETT, et al., | ) |
|           Plaintiffs, | ) Case No. 2:18-cv-00692 |
| v. | ) Judge Michael H. Watson |
| | ) Magistrate Judge Deavers |
| THE OHIO STATE UNIVERSITY, | ) |
|           Defendant. | ) |

**DEFENDANT THE OHIO STATE UNIVERSITY'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

**I.     INTRODUCTION.**

In their Response in Opposition to Defendant The Ohio State University's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. #47) ("Opposition"), plaintiffs do not contest that their Title IX claims are subject to a two-year statute of limitations. Plaintiffs also admit that (i) "*of course* Strauss's acts occurred decades ago," *id*. at 12 (emphasis in original); (ii) they believed the acts of Dr. Strauss were inappropriate at the time the acts occurred; and (iii) they knew Dr. Strauss worked for Ohio State at all material times. *Id*. at 1-3, 11.

Plaintiffs' admissions are consistent with the detailed allegations in their First Amended Complaint (Doc. #33) (the "FAC"), which establish the abuse alleged was committed at least twenty (20) years ago, by someone who stopped working at Ohio State twenty (20) years ago and who died thirteen (13) years ago, and which primarily occurred at a facility demolished thirteen (13) years ago, and that plaintiffs knew the conduct was inappropriate at the time it happened:

- Dr. Strauss began his employment at Ohio State in *1978*. *See id*. at ¶¶ 110, 166, 192.

- As described by plaintiffs themselves with great specificity in their FAC, plaintiffs allege Dr. Strauss "sexually assaulted," "battered," "abused," "molested," "harassed," "fondled," and/or "digitally penetrated" them between "the late 1970s" and 1997 and/or that "devian[t]," "harass[ing,]" "voyeuristic," and "lewd" conduct occurred at Larkins

> Hall *between 1978 and 1998*. *Id.* at ¶¶ 18, 52, 56, 60, 63, 66, 70-105, 111, 119-120, 122, 139-140, 154, 162-164, 219, 255.

- Also as described by plaintiffs themselves in great specificity in their FAC, each plaintiff was aware of the alleged abusive acts at the time they occurred and believed the acts were inappropriate. *Id.* at ¶¶ 17-18, 34-41, 56-59, 60-64, 66, 68-70, 71-105, 118-123, 131-134, 139-140, 154-155, 157-160, 162-163, 165, 171, 201, 231; *see also* Motion to Dismiss (Doc. #38) at 8-12.

- Dr. Strauss' last year of employment at Ohio State was *1998*. FAC (Doc. # 27) at ¶¶ 21, 112.

- Dr. Strauss died in *2005*. *Id.* at ¶ 129.

- Larkins Hall was demolished in *2005*. *Id*.

Recognizing their own allegations and on-point Sixth Circuit law conclusively establish their Title IX claims are barred by the applicable two-year statute of limitations, plaintiffs focus instead on events which occurred subsequent to the filing of the FAC and argue "it doesn't matter whether Strauss's ugliness happened twenty years ago or two hundred years ago . . . ." Opp. (Doc. #47) at 2. In doing so, plaintiffs ask the Court to disregard both the statute of limitations and their own detailed allegations from their FAC. This Court should not do so.

Additionally, contrary to plaintiffs' position that dismissals based on Rule 12(b)(6) motions raising statutes of limitations are "inappropriate" and "disfavor[ed],"s*ee id.* at 6-7, courts routinely grant Rule 12(b)(6) dismissals of Title IX claims based on statute of limitations grounds and overwhelmingly reject the delayed accrual and tolling that plaintiffs seek.

In filing its Motion to Dismiss and Reply, Ohio State was not, and is not, ignoring or being dismissive of plaintiffs' factual allegations. But statutes of limitations are critical attributes of our system of laws. Because the allegations in the FAC affirmatively demonstrate that plaintiffs' Title IX claims are time-barred, plaintiffs' lawsuit should be dismissed with prejudice in its entirety as a matter of law.

## II. COURTS ROUTINELY DISMISS CLAIMS BASED ON THE APPLICABLE STATUTE OF LIMITATIONS.

Contrary to plaintiffs' position, courts routinely dismiss claims pursuant to Fed. R. Civ. P. 12(b)(6) based on the applicable statute of limitations, ***including Title IX claims***. Despite acknowledging that "federal law governs the determination of this claim's accrual date," plaintiffs cite cases applying Ohio, rather than federal, accrual law and/or cases that do not involve Title IX claims. *Id*. at 5 & n.14, 7 n.28.

None of the cases plaintiffs cite support their position that accrual of the statute of limitations should be delayed or tolled. For example, in *Cataldo v. U.S. Steel Corp*., 676 F.3d 542 (6th Cir. 2012), the Sixth Circuit affirmed the Rule 12(b)(6) dismissal of claims based on the applicable statute of limitations. *Id*. at 552. The *Cataldo* court confirmed that "dismissing [a] claim under Rule 12(b)(6) is appropriate" where "the allegations in the complaint affirmatively show that the claim is time-barred." *Id*. at 547 (citing *Jones v. Bock*, U.S. 199, 215 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]")). Consistent with *Cataldo*, the Sixth Circuit in *Lutz v. Chesapeake Appalachia, L.L.C*., 717 F.3d 459 (6th Cir. 2013) and the Southern District of Ohio in *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc*., 933 F. Supp. 2d 974 (S.D. Ohio 2013) and *Owner Operator Indep. Drivers Ass'n v. Comerica Bank*, 540 F. Supp. 2d 925 (S.D. Ohio 2008) recognized, respectively, that: "dismissal is warranted if the allegations in the complaint affirmatively show that the statute of limitations has run," *Lutz*, 717 F.3d at 464, 474 ("conclud[ing] that the discovery rule is not applicable to toll the statute of limitations") (citations omitted)); "[w]hen the facts are undisputed, application of the statute of limitations is a question of law" to be decided by the court, *Kehoe*, 933 F. Supp. 2d at 1016; and "dismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively

pleads herself out of court by alleging facts that are sufficient to establish the defense," *Owner Operator Indep. Drivers Ass'n*, 540 F. Supp. 2d at 929 (citing *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)).

Ohio State's Motion to Dismiss cites numerous cases in which **Title IX claims** were dismissed pursuant to Rule 12(b)(6) or Rule 12(c) because the pleadings demonstrated that such claims were barred by the applicable statute of limitations. *See, e.g., Gilley v. Dunaway*, 572 F. App'x 303, 309 (6th Cir. 2014); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp. 2d 662, 667 (E.D. Ky. 2009); *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *1 (W.D. Mich. May 26, 2017); *King-White v. Humble Indep. School Dist.*, 803 F.3d 754, 765 (5th Cir. 2015); *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9-10 (2d Cir. 2014), *cert. denied* 135 S.Ct. 1702 (Mar. 30, 2015); *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014); *Singleton v. Chicago School Reform Bd. of Trustees of Bd. of Educ. of City of Chicago*, 2000 WL 777925, *19 (N.D. Ill. June 13, 2000); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, 2010 WL 152138, *3 (W.D. Okla. Jan. 14, 2010).

As in the above cited cases, the allegations in plaintiffs' FAC here establish that their Title IX claims are barred by the applicable two-year statute of limitations, and that dismissal pursuant to Rule 12(b)(6) is appropriate.

### III. PLAINTIFFS ADMIT THEY BELIEVED THE ALLEGED ABUSIVE ACTS WERE INAPPROPRIATE AT THE TIME THEY OCCURRED.

Plaintiffs admit they were aware that the acts of Dr. Strauss were inappropriate at the time they occurred, as alleged in the FAC. *See* Opp. (Doc. #47) at 11 ("As alleged, Plaintiffs believed it was 'medically inappropriate and deeply uncomfortable' to get treated by Strauss") (quoting

4

FAC at ¶¶ 38, 47-48, 201); *see also* Introduction, *supra* at I (citing FAC). Plaintiffs' admissions and allegations in this regard are dispositive of the statute of limitations issue raised in Ohio State's Motion to Dismiss because, uniformly, courts hold that a Title IX claim accrues at the time the alleged abuse occurs. *See* Motion to Dismiss (Doc. #38) at 7-8 & n.2 (citing cases).

Plaintiffs' assertion that they "had no reason to suspect or to further investigate any claims regarding OSU's actions—or lack thereof—until OSU finally confessed in Spring 2018," Opp. (Doc. #47) at 11, does not change the date of the abuse, or injury, as the proper accrual date. Plaintiffs "confuse[] knowledge of the existence of a legal right with knowledge of an injury, contrary to the Supreme Court's teaching that the former has no bearing on accrual under the discovery rule." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (refusing to find delayed accrual of Title IX claims where plaintiffs alleged they "were unaware" that "the school defendants had injured them" until a newspaper article was published decades after the abuse) (citing *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). Plaintiffs concede that "awareness of the existence of the injury and causation does not mean actual knowledge; rather, all that must be shown is the existence of circumstances that would lead a reasonable person to investigate further." Opp. (Doc. #47) at 7; *see also Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975) ("Any fact that should excite his suspicion is the same as ***actual knowledge of his entire claim***. Indeed, 'the means of knowledge are the same thing in effect as knowledge itself'") (quoting *Wood v. Carpenter*, 101 U.S. 135, 143, 25 L. Ed. 807 (1879)) (emphasis added); *Bowling*, 2017 WL 4512587, at *1 (a Title IX claim "accrues on the date when the plaintiff knew, or through reasonable diligence should have known, of an injury giving rise to [his] cause of action") (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001), *abrogated in part on other grounds as recognized by Bressler v. Wiegle*, No. 3:06 CV 3115, 2008 WL 886124, at *9 (N.D. Ohio Mar. 28, 2008)); *Anderson*, 616 F.Supp.2d at 668 ("Otherwise

5

stated, '[a] plaintiff's [Title IX] action accrues when he discovers that he has been injured, ***not when he determines that the injury was unlawful***'") (quoting *Amini v. Oberlin College*, 259 F.3d 493, 600 (6th Cir. 2001)) (emphasis added); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440 (S.D.N.Y. 2014), *aff'd* 579 F. App'x 7 (2d Cir. 2014) (in Title IX action, "'discovery of the injury, ***not discovery of the other elements of a claim***, is what starts the clock,'" and this is true "regardless of how complex or difficult to discover the elements of the cause of action may be") (quoting *Rotella v. Wood*, 528 U.S. 549, 555-556 (2000)) (emphasis added).

Courts have refused to find a delayed accrual of a Title IX claim where, as here, a plaintiff was aware the acts complained of were inappropriate, aware of the abuser's identity, and aware that the abuser was an employee of the school. *See, e.g., King-White*, 803 F.3d at 762 (Title IX claim accrued at time of abuse where student "was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher"); *Twersky*, 579 F. App'x at 9-10 (Title IX claim accrued at time of abuse because plaintiffs' "unquestionabl[e] aware[ness] of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [the high school] . . . was sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers"); *Anderson*, 616 F. Supp. 2d at 668, 671 (Title IX claims "accrued at the time of the alleged abusive acts" because plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board," and these "facts should have aroused their suspicion of the claims against Defendants at the time of their injuries"); *Wilmink v. Kanawha Cty. Bd. of Educ.*, 214 F. App'x 294, 296 (4th Cir. 2007) (plaintiff was required to bring her Title IX claim within "two years after she turned eighteen" where it was "beyond dispute that plaintiff knew she had been injured in 1984" and "knew the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty"—"her principal and her school board"—"by the

6

time she reached majority").

Courts also have rejected plaintiffs' additional argument that accrual of their Title IX claims is delayed or tolled because they lacked information about a school's specific conduct in not preventing the claimed abuse. *See Gilley v. Dunaway*, 572 F. App'x at 308 (Title IX claims accrued at time student was sexually abused by her high school coach because "[e]ven if this Court accepted as true that [plaintiff] was completely unaware both that she was being sexually abused and that the Board knew of that sexual abuse," plaintiff was "aware of facts that should have aroused her suspicion of the claims against the defendants at the time of her injuries" and did not "exercise[] reasonable care and diligence to discover whether she had a viable legal claim" in waiting almost seven years after she turned 18 years old to sue) (brackets, quotation marks, and citations omitted); *King-White*, 803 F.3d at 762 (Title IX claim accrued when female high school student was sexually abused by her female teacher, not when plaintiffs learned nearly two years after the abuse during the teacher's criminal case of school officials' conduct and school district's policies in ratifying and being deliberately indifferent to the abuse); *Twersky*, 579 F. App'x at 9-10 (Title IX claims accrued at time of sexual abuse, "more than 20 years before filing this suit," not when former president and chancellor of the school admitted that he and other administrators had been aware of the risk of the abuse when it was occurring); *Varnell v. Dora Consol. Sch. Dist.*, 2013 WL 12146483, at *6-*7 & n.4 (D.N.M. May 13, 2013), *report and recommendation adopted*, No. 12-CV-905 JCH/GBW, 2013 WL 12149185 (D.N.M. June 24, 2013) (Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach, not when the plaintiff "recently" learned of the superintendent's alleged concealment of the abuse, where plaintiff "was repulsed by the sexual conduct *when it was occurring*" and the school district could not now be liable because its "failure to prevent the abuse could only occur while the abuse was ongoing"), *aff'd* 756 F.3d 1208, 1210, 1216-1217 (10th Cir. 2014) (Title IX claim accrued no later than the

7

last date former female high school student was sexually abused by her female coach, not when student "learned the full extent of the resultant emotional injury").

Given the well-established and consistent Title IX jurisprudence establishing that Title IX claims accrue at the time of the alleged sexual abuse, assault, or harassment, *see* Motion to Dismiss (Doc. #38) at 7-8 & n.2 (citing cases), it is not surprising plaintiffs could find no Title IX cases supporting their position, and instead cite a contract claim case.[1] *See* Opp. (Doc. #47) at 9 (quoting *Lutz*, 717 F.3d at 470). The cases cited by plaintiffs did not involve Title IX claims, and plaintiffs do not cite any Sixth Circuit or Southern District of Ohio cases holding that the discovery rule may be applied to Title IX claims, or to the type of factual allegations underpinning plaintiffs' claims. *Id.* Nor could they. Application of the discovery rule to Title IX claims generally is inappropriate because sexual abuse is not an "inherently undiscoverable" injury. *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 991 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754 (5th Cir. 2015) ("Since by her eighteenth birthday A.W. knew that she had been injured by Feenstra and that Feenstra was employed by HISD, the discovery rule is not applicable because for limitations purposes, there was nothing left for A.W. to discover" for purposes of Title IX accrual); *cf. Doe v. St. Stephen's Episcopal Sch.*, 382 F. App'x 386, 389-390 (5th Cir. 2010) (discovery rule did not apply to toll tort claims arising from sexual abuse of students because sexual abuse is not "inherently undiscoverable" and plaintiffs "had knowledge of their abuse and had not been deceived into thinking they had not been abused").

The two Title IX cases plaintiffs cite involving Baylor University do not support plaintiffs'

---

[1] *Lutz* involved a contract claim, not a Title IX claim. *Lutz*, 717 F.3d at 474. Additionally, the language plaintiffs quote from *Lutz* arises from Ohio state court decisions which addressed "latent" injuries from asbestos removal or which held that the discovery rule did not apply. *Id.* at 471 (citing *NCR Corp. v. U.S. Mineral Prods. Co.*, 72 Ohio St.3d 269, 649 N.E.2d 175, 177 (1995)) ("latent property-damage action[]" arising from asbestos removal).

delayed accrual arguments. Instead, both cases reinforce that plaintiffs' Title IX claims accrued at the time of the abuse. *See* Opp (Doc. #47) at 10 & n.45 (citing *Hernandez v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Tex. 2017) and *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646 (W.D. Tex. 2017)). Both *Baylor* cases also involve the same operative facts and the same university, and both were decided by the same district judge in a court outside the Sixth Circuit.

The underlying sexual abuse in the *Baylor* cases was student-on-student—not employee-on-student. Had the abuse been employee-on-student, as plaintiffs allege here, the judge deciding the *Baylor* cases expressly acknowledged he would have dismissed the students' claims due to the expiration of the statute of limitations:

> The Fifth Circuit [in *King-White*] concluded that the plaintiffs' Title IX claims accrued by the time the victim turned 18 because, even though the plaintiffs (the victim and her mother) did not know until later about certain school policies and prior complaints from other parents about the teacher, they knew the teacher was employed by the school, knew of the abuse, and knew the school had failed to stop the abuse—which, at the least, would have led a reasonable person to investigate further. *Id*.
>
> Here, however, Plaintiff was sexually assaulted by another student. Unlike the plaintiffs in *King-White*, where the abuser was a school employee, Plaintiff therefore had no reason to suspect that Baylor's alleged deliberate indifference played a role in her assault.

*Hernandez*, 274 F.Supp.3d at 617 (citing *King-White*, 803 F.3d at 762-763). The above reasoning is consistent with the Title IX cases discussed previously holding that the statute of limitations accrues at the time of the abuse when a plaintiff is aware of the inappropriateness of the claimed acts, the abuser's identity, and that the abuser was an employee of the school. *See supra* at 8-9.

The *Baylor* cases also are inapposite. Unlike the plaintiffs in *Baylor* who did not have "reason to further look into whether Baylor had a policy of intentionally discriminating against women who report sexual assault" until "media reports regarding the rampant nature of sexual assault on Baylor's campus first came to light," *see Doe 1*, 240 F. Supp. 3d at 663, plaintiffs here

9

expressly alleged in their FAC that knowledge of Dr. Strauss' inappropriate behavior was widespread. *See* FAC (Doc. #33) at ¶¶ 115-116 (Dr. Strauss' "notoriously hands-on examinations earned him different nicknames over the years, including 'Dr. Jelly Paws,' 'Dr. Drop-Your-Drawers,' 'Dr. Nuts,' and 'Dr. Cough.' These were nicknames well-known by OSU coaching staff, trainers, and student athletes"); ¶ 231 (Ohio State ignored "widespread and repeated complaints of Dr. Strauss's conduct"); ¶ 259 (the "sexual abuse and culture of sexual abuse" were "rampant" and were "reported to head coaches of multiple sports, Ohio State administrators and to the head of the Athletic Department"); ¶ 260 ("Former wrestling coach, Russell Hellickson, has publicly stated in 2018 that it was widely known that Dr. Strauss was engaging in improper sexual behavior . . . ."). The 2018 reports announcing Ohio State's investigation into Dr. Strauss' conduct did nothing to alter plaintiffs' prior, existing knowledge of Dr. Strauss' conduct toward them.

Because of this, plaintiffs attempt to blur the question at issue in the instant briefing—whether the two-year statute of limitations applicable to Title IX claims bars their claims—with the elements they must establish to prove their Title IX claims. In this regard, plaintiffs repeatedly assert that they "plausibly plead their Title IX claim against OSU" because Ohio State was "deliberately indifferent." *See*, *e.g.*, Opp. (Doc. #47) at 2, 7-9; 12. These are conclusory merits assertions that are irrelevant to the statute of limitations issue raised by Ohio State's motion to dismiss. Such alleged conduct by Ohio State relates to the merits of plaintiffs' Title IX causes of action, not whether plaintiffs were on notice to further investigate their claims and timely bring them, which they were.[2] *See Twersky*, 993 F. Supp. 2d at 440 ("The plaintiffs were aware of their abuse at the time it occurred, and of the identity of their abusers and those who employed them—

---

[2] If any portion of this case remains after the Court has ruled on Ohio State's pending motion to dismiss on the basis of the statute of limitations, Ohio State reserves, and will assert, all other applicable defenses, if necessary.

10

thus, had the plaintiffs approached an attorney prior to their turning twenty-one, they could have brought their claims under Title IX").

Plaintiffs also improperly seek to have the Court rely upon extra-pleading materials related to an Ohio State Board of Trustees meeting that occurred subsequent to the filing of the FAC. Opp. (Doc. #47) at 3-4. Procedurally, such extra-pleading materials are inappropriate unless the materials are "integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice," none of which is the case here. *See In re Huntington Bancshares Inc. Secs. Litig.*, 674 F.Supp.2d 951, 965–66 (S.D. Ohio 2009) (Watson, J.). Substantively, the extra-judicial materials are irrelevant. Plaintiffs admit, consistent with the detailed allegations in their FAC, they were aware the alleged acts of Dr. Strauss were inappropriate when they occurred more than twenty years ago. *See* Opp. (Doc. #47) at 1-3, 11; Motion to Dismiss (Doc. #38) at 8-12; Introduction, *supra* at I (citing FAC).

Finally, plaintiffs misstate Ohio State's reliance on certain cases cited in Ohio State's Motion to Dismiss, as follows:

(1) Plaintiffs incorrectly imply that *Twersky v. Yeshiva University*, 993 F. Supp. 2d 429 (S.D.N.Y. 2014), is inapposite because it holds that "discovery of the injury starts the clock," whereas "Ohio is bound by Sixth Circuit law, which instructs that accrual depends on what event should have alerted the typical lay person to protect her rights—here, Plaintiffs' deliberate-indifference claim against OSU, *not* their claim against Strauss himself." Opp. (Doc. #47) at 13 & n.60. *Twersky* actually is consistent with Sixth Circuit law. In *Twersky*, the Court held the Title IX claim at issue accrued at the time of the claimed abuse because "[t]he plaintiffs were aware of their abuse at the time it occurred, and of the identity of their abusers and those who employed them—thus, had the plaintiffs approached an attorney prior to their turning twenty-one, they could have brought their claims under Title IX." *Twersky*, 993 F. Supp. 2d at 440. This is the same

11

standard used by courts in the Sixth Circuit. *See Anderson*, 616 F. Supp. 2d at 668 (Title IX claims "accrued at the time of the alleged abusive acts" because plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board," and these "facts should have aroused their suspicion of the claims against Defendants at the time of their injuries"); *Gilley*, 572 F. App'x at 308; *Bowling*, 2017 WL 4512587 at *1. Here, plaintiffs similarly should have taken steps to protect their claimed rights years ago, at the time they allege they were aware that the conduct of Dr. Strauss was inappropriate.[3] *See* Motion to Dismiss (Doc. #38) at 6-8. They did not and *Twerksy* and Sixth Circuit law agree that plaintiffs' claims are time barred. *Id.*

(2) Plaintiffs also are mistaken that *Adams v. Ohio University*, 300 F. Supp. 3d 983 (S.D. Ohio 2018), "did not involve a statute-of-limitations challenge." Opp. (Doc. #47) at 14. The Southern District of Ohio expressly stated in its opinion the two-year statute of limitations was at issue. *Adams*, 300 F. Supp. 3d at 996. The *Adams* court held that plaintiffs' Title IX injuries accrued when they were sexually harassed by their professor, which, unlike plaintiffs here, had occurred within two years of the filing of the complaint. *Id*. The difference between *Adams* and the instant matter is that for purposes of the accrual of the Title IX claim in *Adams*, the harassment at issue did not involve remote-in-time allegations of abuse like plaintiffs' claims here. Also, in *Adams*, unlike here, the alleged abuser was still alive and employed by the university, and plaintiffs were still graduate students at the university when they filed their Title IX lawsuit. *See id*. at 989, 991, 993.

### IV. THE CONTINUING VIOLATIONS DOCTRINE DOES NOT APPLY.

Plaintiffs assert that the continuing violations doctrine operates to toll the statute of

---

[3]To the contrary, plaintiffs actually admit they made no attempt to investigate their claims at the time of injury. *See* Opp. (Doc. # 47) at 11; *see also* FAC (Doc. #33) at 50.

12

limitations applicable to their Title IX claims. *See* Opp. (Doc. #47) at 16-17. Plaintiffs are incorrect. "The most important tenet of the Sixth Circuit's continuing violations doctrine is that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action." *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 600 (6th Cir. 2014) (citation omitted); *see also Mitchell v. Taylor*, No. 16-6335, 2018 WL 4162255, at *3 (6th Cir. Apr. 16, 2018), *cert. denied*, No. 18-5886, 2018 WL 4283364 (Nov. 5, 2018) ("[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.") (citations and quotation marks omitted). "Put more simply, an overt act (1) ... must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) ... must inflict a new and accumulating injury on the plaintiff." *Z Techs. Corp.*, 753 F.3d at 600 (citation and quotation marks omitted). "[P]assive inaction" and "failure to rectify a prior discriminatory act" are "not sufficient to meet the standard for invoking the continuing-violations doctrine." *Printup v. Dir., Ohio Dep't of Job & Family Servs.*, 654 F. App'x 781, 789 (6th Cir. 2016) (citation and quotation marks omitted); *Pittman*, 612 F. App'x 810, 813 (6th Cir. 2015) (citation omitted).

"[C]ourts are reluctant to apply the [continuing violations] doctrine outside of Title VII" claims, and at least one federal district court within the Sixth Circuit has "concluded that the doctrine does not apply in Title IX cases." *Bowling*, 2017 WL 4512587, at *2 (citing *Dibbern*, 2016 WL 2894491, at *19). Plaintiffs do not cite any case in which a court has applied the continuing violations doctrine to toll the statute of limitations on a Title IX claim.

Regardless, even if applicable to Title IX claims, which it is not, the doctrine would not save plaintiffs' claims here. It is undisputed that Dr. Strauss left Ohio State in 1998 and died in 2005, the same year Larkins Hall was torn down. FAC (Doc. #33) at ¶¶ 21, 112, 129. In regard to Ohio State, plaintiffs do not allege that any injurious act of Ohio State occurred within two years

of the filing of their initial complaint, let alone conduct that constitutes a longstanding policy of discrimination toward plaintiffs or members of their putative class ("male students and student-athletes"). Opp. (Doc. #47) at 16-17; FAC (Doc. #33) at ¶¶ 111-112, 237. In fact, the only conduct within the limitations period upon which plaintiffs rely is Ohio State's announcement of an independent investigation into Dr. Strauss's conduct—which plaintiffs admit was lawful and complied with Title IX. *See* Opp. (Doc. #47) at 16 ("OSU failed to comply or delayed compliance with its Title IX obligations *until* it finally investigated Strauss's misconduct in April of 2018") (emphasis added). Plaintiffs also do not allege any new cognizable injuries, but rather complain that Ohio State has failed to remedy the past abuse by Dr. Strauss. Opp. (Doc. #47) at 16-17; FAC (Doc. #33) at ¶¶ 55, 197, 209-213, 215, 269-271. This purported "passive inaction" and "failure to rectify [] prior discriminatory act[s]" does not support a continuing violations theory. *Printup*, 654 F. App'x at 789; *Pittman*, 612 F. App'x at 813.

While plaintiffs do not cite a single case applying the continuing violations doctrine to a Title IX claim, several cases have expressly rejected such tolling where the more recent events upon which plaintiffs seek to rely occurred when they were no longer students at the university. For example, in *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir. 2006), the Ninth Circuit held that the continuing violations doctrine could not "save" the plaintiff's sexual harassment and hostile environment Title IX claims against the university because the complained-of acts occurring within the limitations period happened when the plaintiff was not enrolled and present at the university. *Id*. at 1137. The *Stanley* court explained that the Supreme Court "requires more than non-responsiveness" by the university to support a Title IX claim: "it requires that the indifference result in harassment or render her vulnerable to harassment . . . ***during the limitations period***" and while the plaintiff is "***present***" at the university. *Id*. (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999)) (emphasis added). The court also stated:

14

> Moreover, [plaintiff's] argument conflates her desired remedy with violation of Title IX in a manner that effectively vitiates the statute of limitations. Under [plaintiff's] theory, as long as the Trustees do not provide her desired relief, they are continuing to be "deliberately indifferent" and subject to suit. At oral argument, [plaintiff] conceded that this would allow her to bring suit twenty years from now. Even leaving *Davis* aside, we will not adopt an approach that renders the statute of limitations a virtual nullity.

*Id*.

Other Title IX cases, including the *Baylor* cases relied upon by plaintiffs here, are consistent with *Stanley* in rejecting attempts to apply the continuing violations doctrine to events that occurred when plaintiffs were no longer students. *See Doe 1*, 240 F. Supp. 3d at 665 (continuing violations doctrine did not apply to Title IX claims where "each of these Plaintiffs left campus well before" the complained of events because "the furthest imaginable reach" of plaintiffs' claims "extended to when they each left Baylor"); *Doe 12 v. Baylor Univ.*, 336 F. Supp. 3d 763, 786 (W.D. Tex. 2018) (same).[4]

Plaintiffs also are wrong in their characterization of *Bowling*, 2017 WL 4512587, as "suggesting that a continuing violation theory is viable and survives dismissal." Opp. (Doc. #47) at 15. As the *Bowling* court noted, the only case within the Sixth Circuit to analyze the issue held that the continuing violations theory does not apply to Title IX claims. *Bowling*, 2017 WL 2894491, at *2 (citing *Dibbern v. Univ. of Mich.*, No. 12-15632, 2016 WL 2894491, at *19 (E.D.

---

[4]*See also Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 CIV. 704 (RPP), 2005 WL 1214281, at *18 (S.D.N.Y. May 20, 2005) (continuing violations doctrine did not apply to Title IX claims because plaintiff "was neither a student nor a suspended student" when the acts relevant to her continuing violations theory occurred); *cf. Doe v. Town of Bourne*, No. CIV.A.02-11363-DPW, 2004 WL 1212075, at *11 (D. Mass. May 28, 2004) ("The Title IX claim, based on the school's inadequate response to the rape and harassment of Nicole, cannot reasonably be based on any action after Nicole graduated"); *Johnson*, 2010 WL 152138, at *2 (Title IX claims alleging that "defendants failed to make an appropriate system of review for sexual abuse allegations and that defendants created or permitted an abusive school environment" were "inherently based on events occurring while [the plaintiff] was actually attending the [school]" and "had to have accrued at the time [the plaintiff] was a student at [the school]").

15

Mich. May 18, 2016) ("[T]he Sixth Circuit has never before applied the continuing violations doctrine to Title IX claims. This Court concludes that the continuing violations doctrine does not apply and, therefore, any Title IX claims asserted … that are based upon pre-December 21, 2009 incidents are time-barred.")). The *Bowling* court also found the continuing violations doctrine was inapplicable to the facts before it. *Bowling*, 2017 WL 2894491, at *2. Further, in *Bowling*, the court found that plaintiff's Title IX claims "accrued at the latest" on the day of the last sexual assault against the plaintiff. *Id.*

Here, as in the cases above, the continuing violations doctrine cannot apply to save plaintiffs' Title IX claims. The latest any plaintiff is alleged to have attended Ohio State was 1999. FAC (Doc. #33) at ¶ 67. Plaintiffs allege no new acts or injuries within the last two years before they brought suit, other than that Ohio State opened an investigation, which they acknowledge complies with Title IX. *See* Opp. (Doc #47) at 16. Instead, plaintiffs seek to create a theory of recovery pursuant to which Ohio State is "subject to suit" as long as it does "not provide [plaintiffs with their] desired relief." *Stanley*, 433 F.3d at 1137. Such a theory has been rejected elsewhere, and followed nowhere. *Id.* This Court should hold consistently and not be the first to "adopt an approach that renders the statute of limitations a virtual nullity" by allowing plaintiffs to bring suit even if the conduct complained of "happened . . . two hundred years ago." *Id.*; Opp. (Doc. #47) at 2.

**V.  LEAD PLAINTIFF BRIAN GARRETT FAILS TO STATE A TITLE IX CLAIM AGAINST OHIO STATE.**

As explained in Ohio State's Motion to Dismiss, in addition to the statute of limitations, lead plaintiff Brian Garrett's Title IX claim fails as a matter of law because Ohio State cannot be liable for alleged abuse that occurred at Dr. Strauss's privately owned and managed, off-campus clinic. *See* Motion to Dismiss (Doc. #38) at 13. Plaintiffs vaguely accuse Ohio State of "cherry-

16

pick[ing]" from the Sixth Circuit's decision in *Pahssen v. Merrill Cmt. Sch. Distr.*, 668 F.3d 356 (6th Cir. 2012). *See* Opp. (Doc. #47) at 18. *Pahssen*'s dismissal of Title IX claims arising from conduct that occurred off school grounds was based on Supreme Court precedent—cited thousands of times—holding that a school's liability is limited to "circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id*. at 366 (quoting *Davis*, 526 U.S. at 645).

Plaintiffs also do not attempt to distinguish the Eighth Circuit's decision in *Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch.*, 122 F.3d 654 (8th Cir. 1997), but merely summarize in a footnote *Lam*'s similar facts and holdings. Opp. (Doc. #47) at 18 n.82. As in *Lam*, here, Ohio State is not liable under Title IX for Dr. Strauss' "off-campus" conduct at his "independent," "private" practice "that was not affiliated with" Ohio State. *Lam*, 122 F.3d at 655-656.

In their Opposition, plaintiffs also state that Mr. Garrett was not a student at the time of the alleged abuse. *See* Opp. (Doc. #47) at 18 (stating Mr. Garett was "in between his undergraduate and graduate school programs" at the time of the abuse). Mr. Garrett does not have standing to assert Title IX claims arising from abuse that occurred when he was not a student at Ohio State. *See Phillips v. Anderson Cty. Bd. of Educ.*, 259 F. App'x 842, 843 (6th Cir. 2008); *Loewen v. Grand Rapids Med. Educ. Partners*, No. 1:10-CV-1284, 2012 WL 1190145, at *12 (W.D. Mich. Apr. 9, 2012); *Klopferstein v. Taylor Univ.*, No. 3:16CV2193, 2018 WL 3067766, at *2 (N.D. Ohio June 21, 2018); *Harris v. Shelby Cty. Sch.*, No. 17-2309-SHL-DKV, 2017 WL 3403813, at *5–6 (W.D. Tenn. May 12, 2017), report and recommendation adopted sub nom., *Harris on behalf of I.H. v. Shelby Cty. Sch.*, No. 17-CV-2309-SHL-DKV, 2017 WL 3401305 (W.D. Tenn. Aug. 8, 2017); *Doe v. Brown Univ.*, 270 F. Supp. 3d 556 (D.R.I. 2017), *aff'd*, 896 F.3d 127 (1st Cir. 2018); *K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965 (E.D. Mo. Aug. 11,

2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017); *Mary Doe v. Lance*, No. 3:95-CV-736RM, 1996 WL 663159, at *3 (N.D. Ind. Oct. 30, 1996) ("Courts have agreed that non-students may not assert individual claims under Title IX.").

## VI. PLAINTIFFS DO NOT DISPUTE THAT PUNITIVE DAMAGES ARE NOT RECOVERABLE UNDER TITLE IX.

Plaintiffs do not challenge that punitive damages are not recoverable under Title IX. Their request for punitive damages should be dismissed with prejudice for this additional reason. *See* Motion to Dismiss (Doc. #38) at 14.

## VII. CONCLUSION.

Plaintiffs' Title IX claims are based on acts alleged to have been committed at least twenty (20) years ago, by someone who stopped working at Ohio State twenty (20) years ago and who died thirteen (13) years ago, and which primarily occurred at a facility demolished thirteen (13) years ago. Plaintiffs admit they made these allegations, and their Opposition cannot change the applicable law governing the accrual of their Title IX claims. As such, plaintiffs' Title IX claims are barred by the applicable two-year statute of limitations. For this reason, plaintiffs' FAC should be dismissed with prejudice in its entirety.

                    MICHAEL DeWINE
                    ATTORNEY GENERAL OF OHIO

By:    /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        Stephen E. Dutton (0096064)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                bricker@carpenterlipps.com
                barthel@carpenterlipps.com
                dutton@carpenterlipps.com

        Special Counsel for Defendant The Ohio State University

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on January 8, 2019. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University