IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN (COLUMBUS) DIVISION

Brian Garrett,
Edward Gonzales,
Kent Kilgore,
Adam Plouse, and
John Does 1-35, individually and
on behalf of all others similarly situated,

   Plaintiffs,

vs.

The Ohio State University,

   Defendant.

Civil Case 2:18-cv-00692-MHW-EPD

**JURY TRIAL DEMANDED**

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO STAY DISCOVERY (Doc. 32)**

  Defendant seeks to stay all discovery, in direct contradiction of Rule 26 and the presumption that discovery begins immediately following the Rule 26 conference. After recently learning of their alma matter's role in covering up the abuse they suffered so many years ago at the hands of OSU's doctor, Plaintiffs are ready to begin this case. The world is watching, the U.S. Department of Education's Office of Civil Rights is asking questions, and The Ohio State University hopes to conceal its sins just a little while longer. But OSU ignores not only Rule 26, it ignores its burden to justify a stay. This bears repeating: the Plaintiffs have no burden; the burden falls entirely on Defendant to justify a departure from Rule 26.

In its stay motion, Defendant superficially argues the merits of its anticipated motion to dismiss, suggesting that engaging in discovery would waste time and resources because the claims will ultimately be dismissed, based on the applicable statute of limitations or sovereign immunity afforded to OSU.[1] But Defendant's arguments are premature and speculative, because its motion to stay discovery was filed weeks before Plaintiffs filed their First Amended Complaint ("FAC"). Regardless, although the *factual allegations* will include a recounting of decades-long sexual abuse by Dr. Strauss, the *claim* in the FAC filed Friday, October 26, 2018, is against OSU based on its continuing failure to comply with its obligations under Title IX, conduct which occurred and continues to occur within the applicable limitations period. Simply put, assuming the truth of the facts alleged in the FAC as this Court must, there are no legal defenses that would bar this action in its entirety at the motion to dismiss stage, which is the usual yardstick employed by this Court in determining whether good cause exists to impose a stay. *See Ohio Bell Tel. Co., Inc. v. Global NAPs Ohio, Inc.*, No. 2:06-cv-0549, 2008 WL 64125, at *2 (Mar. 4, 2008) ("If the jurisdictional issue were clear-cut, and the likelihood of a jurisdictional dismissal were high, the Court *might* be persuaded to grant a stay of discovery.") (emphasis added). And there are over 200 factual reasons set out in the FAC, that cut against a stay of discovery in this case.

**About this Case**

Plaintiffs bring this class action to hold Defendant accountable for its role in facilitating and covering-up the sexual abuse and harassment of OSU's students and student athletes, and creating a sexually hostile culture and campus atmosphere of indifference to sexual abuse. In the FAC, Plaintiffs assert violations of Title IX by OSU occurring within the two years preceding the

---

[1] Doc. 32 at 2.

filing of the Complaint. Neither immunity nor statute of limitations will provide a basis for Rule 12 dismissal, and discovery should be permitted to proceed.

**A stay of discovery is disfavored and requires Defendant to show good cause.**

The federal rules do not stay discovery during the pendency of a motion to dismiss. And although Rule 26(c) permits the Court, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," such a stay is generally disfavored. *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-CV-00377, 2018 WL 4501068, at *1 (S.D. Ohio Sept. 20, 2018) (Indeed, if a motion does not raise an issue "which would be substantially vitiated absent a stay" and there is no showing that the case will "certainly be dismissed" then "a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion."). A stay may be appropriate if resolution of a preliminary motion is likely to dispose of the entire action. *Shanks v. Honda of Am. Mfg.*, No. 2:08-CV-1059, 2009 WL 2132621, at *1 (S.D. Ohio July 10, 2009) (finding special circumstances such as absolute or qualified immunity or "if it appears that the complaint will almost certainly be dismissed" can justify a stay of discovery) (citations omitted).

In deciding whether to grant a stay, courts commonly consider the following factors: (1) the stage of litigation; (2) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (3) whether a stay simplifies the issues; and (4) whether the burden of litigation on the parties and on the court is reduced. *Blevins*, 2018 WL 4501068, at *1 (citation omitted). The movant bears the burden of showing both a need for delay and that "neither the other party nor the public will suffer harm from entry of the order." *Id.* (citing *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977)).

**Defendant fails to show good cause for imposing a stay or limitation on discovery, and analysis of the factors weigh against delay.**

Defendant fails to show good cause for imposing any stay or limitation on discovery. *OSU presents no evidence* satisfying, or even attempting to satisfy, any of the Rule 26(c) factors, and its merits-based arguments regarding statutes of limitation and immunity are misguided: it is it is a virtual certainty that the claims in the FAC will survive the anticipated 12(b)(6) motion, as they are based on conduct occurring within the two years preceding the FAC, and because they assert a Title IX claim, to which Defendant has no immunity defense. Contrary to Defendant's analyses, an objective application of the relevant factors to this matter weighs heavily in favor of proceeding with full discovery.

*First,* the stage of the litigation militates pressing forward. While we are early in the litigation, OSU's conduct underlying the FAC has been dragging on for over forty years. Indeed, since it received its first complaint of Dr. Strauss's conduct in 1978, it persisted in ignoring, rebuffing, and discouraging complaints; it refused and continues to refuse to take action to address the sexually hostile environment on its campus, and has kept its head in the sand in violation of its legal obligations and to the detriment of hundreds of its students. These alumni deserve, at the very least, discovery to understand what OSU knew, when OSU knew it, and why OSU persisted in failing – until 2018 – to make any reasonable efforts to investigate or address student reports of abuse.

*Second*, the prejudice that Plaintiffs would suffer from a stay of discovery is real and there is no prejudice to Defendant. Witnesses are routinely quitting their employment at OSU. In line with that, documents will be lost and memories will fade. Tracking former employees who might leave the University or even the state will compound all these issues. Indeed, between the filing of

4

the initial complaint and today, the Sexual Civility and Empowerment unit ("SCE") was closed and employees were let go.[2] Witness availability and the preservation of evidence are real concerns in this case. Although Defendant downplays the potential prejudice to Plaintiffs by noting the passage of years since their initial abuse, it is precisely this extended period of cover-up, obstruction, and delay in taking action that militates in favor of expeditious collection of evidence, and against further delay. Indeed, Plaintiffs' claims could not be more 'of the moment.' The Plaintiff class is being harmed with the passage of each day that the institution protecting their perpetrator is not held accountable. "A district court has the inherent power to stay proceedings based on its authority to manage its docket efficiently." *Ferrell* v. *Wyeth-Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (citations omitted). Here, a stay of discovery will further delay and draw out this case on the Court's docket. Such delay is unjustified.

*Further*, Defendant fails to demonstrate the burden it would suffer by proceeding with discovery. *See DSM Desotech, Inc.* v. *Momentive Specialty Chemicals, Inc*., No. 2:15-CV-70, 2015 WL 7450893, at *11 (S.D. Ohio Nov. 24, 2015). While discovery is inherently a burden on defendants in civil litigation, OSU has the financial resources to deal with this discovery, and a team of highly accomplished attorneys to manage it. Case in point, OSU has reportedly already spent $1,500,000.00 in legal fees related to the Strauss matter.[3] Defendant can point to no special

---

[2] Zach Varda and Michael Lee, *Ohio State shuts down its Sexual Civility and Empowerment unit*, The Lantern, June 19, 2018, https://www.thelantern.com/2018/06/ohio-state-shutting-down-sexual-civility-and-empowerment-unit/. (last visited August 29, 2018)

[3] . Edward Sutelan, *Ohio State's legal fees over Strauss case nearly $1.5 million,* The Lantern, October 5, 2018, https://www.thelantern.com/2018/10/ohio-states-legal-fees-over-strauss-case-nearly-1-5-million/ (last visited October 25, 2018)

or legal prejudice (aside from the usual burden of being in a lawsuit) that flows from having to respond to requests for production of documents--including insurance policies—and producing key witnesses to provide deposition testimony while its motion to dismiss is pending. This is especially true given the unlikelihood that the anticipated motion to dismiss will have a meaningful impact on the claim that goes forward, and the nature of the discovery is common to all claims asserted.

*Third*, the mere existence of Defendant's anticipated motion to dismiss will not simplify any issues in this litigation. It is merely a delaying tactic that will adversely impact Plaintiffs' access to evidence. This fact weighs against Defendant's motion. In contrast to Defendant's argument, the plaintiffs and their counsel have worked diligently to simplify and streamline this litigation in order to position the case to move forward with discovery. Counsel for the class in this case (No. 18-692) have agreed to jointly prosecute one action with Counsel for the second-filed class action (No. 18-712). The FAC filed on October 26 reflects a joint complaint, and the mooted action (No. 18-712) will be dismissed. The John Doe for whom counsel intended to withdraw is no longer a John Doe in the action. He has obtained other counsel, and is simply a member of the class defined in the FAC. None of the "fundamental issues" identified by Defendants remain outstanding, and this case is now simplified and poised to proceed with discovery despite the pendency of Defendant's forthcoming Motion to Dismiss.

*Fourth*, the discovery process is governed by the federal and local rules, and the parties, in accord with these rules, must make every effort to resolve disputes without involving the Court. Allowing discovery to proceed, at best, weighs neutral as to this factor. In any event, Defendant has made no showing that the requested stay would burden the Court's ability to manage its docket

or otherwise enhance efficient use of judicial resources. To the contrary, permitting discovery to proceed in this case while a 12(b)(6) motion is pending will increase efficiency, as the case will be positioned to move forward when the dispositive motion is finally decided.

Last but not least, the Court can also consider the interests of non-parties and the public weighing for or against a stay. *Blevins*, 2018 WL 4501068, at *1 (citation omitted) (citing *Ohio Envtl. Council*, 565 F.2d at 396). In addition to the acute interest that the many individual Plaintiffs have, the class of victims and the greater community are watching and anxiously awaiting the resolution of this case. Beyond that, the media, including the *New York Times*, *Washington Post*, *USA Today* and others, have demonstrated their interest in this case through their deep and persistent coverage of Ohio State University and the scandals plaguing it.[4] The public's interest can also be measured by the action that the United States Department of Education's Office of Civil Rights has taken to open a directed investigation into OSU's Title IX compliance.[5] In short, this is a high-profile case with a great deal of non-party and public interest—all of which favors pushing through discovery and advancing the prosecution of this

---

[4] Elise Viebeck and Shawn Boburg, *Ohio State has more than 100 firsthand accounts of sexual misconduct by former athletic doctor,* July 20, 2018, https://www.washingtonpost.com/news/powerpost/wp/2018/07/20/ohio-state-has-more-than-100-firsthand-accounts-of-sexual-misconduct-by-former-athletic-doctor/?utm_term=.64c14f01c3b8 (last visited October 25,, 2018); Eliza Collins, *Ex-OSU coach defends Jordan in abuse scandal but says team doctor made athletes 'uncomfortable'*, USA TODAY (July 10, 2018), https://www.usatoday.com/story/news/politics/2018/07/10/trump-conservatives-sticking-jordan-over-abuse-allegations-but-others/769402002/. (last visited July 16, 2018); Catie Edmondson and Marc Tracy, '*It Can Happen Even to Guys': Ohio State Wrestlers Detail Abuse, Saying #UsToo,* Aug. 2, 2018, https://www.nytimes.com/2018/08/02/us/politics/ohio-state-wrestlers-abuse-me-too.html (last visited October 25, 2018)

[5] Dakin Andone, *Ohio State University faces federal investigation into alleged sexual misconduct by school doctor,* August 17, 2018, https://www.cnn.com/2018/08/17/us/ohio-state-university-federal-investigation/index.html (last visited October 25, 2018)

case notwithstanding Defendant's perfunctory and speculative motion to dismiss on waivable technicalities.

**The Motion should be denied and the parties should proceed with full discovery.**

It is the ultimate irony that OSU, on the one hand, publicly announces the university is "deeply concerned" for anyone affected by Strauss' actions[6] and "remain steadfastly committed to uncovering the truth."[7] but on the other hand, angle to dismiss their own alumni's claims on limitations grounds and, in the meantime, prevent these former students and student-athletes from discovering what really happened to result in this gross institutional failure. OSU should not be permitted to talk about accepting responsibility publicly, even to OCR inquiries, and take an opposite approach in this Court where it really matters.

There is good reason for this Court's general policy discouraging the stay of discovery pending 12(b)(6) motions absent good cause. Defendant offers no good cause to merit an exception here. For all the reasons set forth above, the motion to stay filed in this case (Doc. 32), should be denied, and the parties should be permitted to proceed with discovery in accord with the federal and local rules notwithstanding any forthcoming motion.

Respectfully submitted this 1st day of November 2018.

>  */s/ Simina Vourlis*
> Simina Vourlis
> The Law Office of Simina Vourlis
> 856 Pullman Way
> Columbus, OH 43212
> (614) 487-5900
> (614) 487-5901 fax
> svourlis@vourlislaw.com

---

[6] Edward Sutelan, *Strauss accusers create website urging Ohio legislature to hold OSU accountable,* The Columbus Dispatch, September 28, 2018, https://www.dispatch.com/news/20180928/strauss-accusers-create-website-urging-ohio-legislature-to-hold-osu-accountable (last visited October 28, 2018).

[7] Andone, *supra* note 5.

Rex A. Sharp
Ryan C. Hudson
Larkin E. Walsh
Sarah T. Bradshaw
REX A. SHARP, P.A.
5301 West 75th Street
Prairie Village, KS  66208
913-901-0505
913-901-0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing document was filed and served, via the Court's CM/ECF system on Nov. 1, 2018, on all counsel of record.


By: */s/ Simina Vourlis*_____
    Attorney for Plaintiffs