**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN GARRETT, et al., | ) | Case No. 2:18-cv-00692 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. |
| | ) | Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S MOTION TO DISMISS**
**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant The Ohio State University hereby moves this Court to dismiss all claims asserted against it in plaintiffs' Consolidated Class Action Complaint (Doc. 157). The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:    /s/ Michael H. Carpenter
       Michael H. Carpenter (0015733) (Trial Attorney)
       Timothy R. Bricker (0061872)
       David J. Barthel (0079307)
       Stephen E. Dutton (0096064)
       CARPENTER LIPPS AND LELAND LLP
       280 Plaza, Suite 1300
       280 North High Street
       Columbus, OH 43215
       E-mail: carpenter@carpenterlipps.com
               bricker@carpenterlipps.com
               barthel@carpenterlipps.com
               dutton@carpenterlipps.com

       Special Counsel for Defendant
       The Ohio State University

## MEMORANDUM IN SUPPORT

I.      **INTRODUCTION.**

The 98 plaintiffs in the above-captioned action attended The Ohio State University ("OSU") between the "late 1970s" and 1999—21 to 42 years ago.  They are suing OSU individually and as putative class representatives related to the conduct of Dr. Richard Strauss, which occurred between 1978 and 1998—22 to 42 years ago.

OSU condemns Strauss' conduct and the university's failure at the time to prevent the abuse, and expresses its regret and sincere apologies to each person who endured Strauss' abuse, including the plaintiffs herein.  Despite the time-barred nature of plaintiffs' claims, OSU has attempted to do the right thing with all plaintiffs.  OSU already has settled 162 of the survivors' claims for $40.9 million.  On April 17, 2020, the Court directed the non-settling plaintiffs and OSU to engage in "parallel mediation and litigation efforts," and further ordered the non-settling plaintiffs to file amended complaints and OSU to respond.  Consistent with that order, mediation remains ongoing with all remaining plaintiffs, including the plaintiffs in this case.  But plaintiffs are filing complaints, or amended complaints, and pursuant to this Court's order, Ohio State is filing this, its legal response.  OSU hopes the remaining plaintiffs will agree to settle on the same basis as the 162 settled plaintiffs.

The instant motion to dismiss is *not* directed toward plaintiffs' claims of injury.  Rather, while respectful of plaintiffs and their claimed injuries, OSU maintains that plaintiffs' proffered legal causes of action are *legally* deficient on their face and should be dismissed.

First, without exception, every civil legal claim is subject to a statute of limitations, *i.e.*, a defined time period within which a civil claim must be brought or else be barred.  The Supreme Court of the United States has observed that statutes of limitations are "vital to the welfare of

1

society"; are "found and approved in all systems of enlightened jurisprudence"; and "promote repose by giving security and stability to human affairs." *Wood v. Carpenter*, 101 U.S. 135, 139 (1879). The Supreme Court has explained that a statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Based on these policies, courts across the country have consistently dismissed Title IX claims alleging sexual misconduct that occurred decades ago.

The statute of limitations for plaintiffs' Title IX claims (Claim for Relief) is two years. The sexual abuse alleged in plaintiffs' Consolidated Class Action Complaint ("Consolidated Complaint") occurred between two and four decades ago, between 1978 and 1998. Plaintiffs did not assert their claims against OSU until July 16, 2018 (*Garrett* initial complaint); July 17, 2018 (*John Doe 1* initial complaint); October 26, 2018 (*Garrett* FAC); November 27, 2019 (*Chrystal* initial complaint); March 31, 2020 (*John Does 85-88* initial complaint); or May 27, 2020 (*Garrett* Consolidated Complaint). The two-year limitations period expired long ago, and plaintiffs' Title IX claims should be dismissed.

In addition to the time-barred nature of all plaintiffs' Title IX claims, the Title IX claims of lead plaintiff and putative class representative Brian Garrett should be dismissed for the additional reasons that he lacks standing to assert Title IX claims against OSU because he was not an OSU student at the time of the alleged abuse and because OSU is not liable for conduct that occurred at Strauss' privately owned and managed, off-campus clinic. Further, plaintiffs'

request for an award of punitive damages also should be dismissed because punitive damages are not recoverable under Title IX.

In filing this motion to dismiss, OSU is not ignoring or being dismissive of plaintiffs' factual allegations and remains committed to the ongoing mediation. But statutes of limitations and standing are critical attributes of our system of laws. Here, plaintiffs' claims are legally barred.

## II.    PROCEDURAL HISTORY AND PLAINTIFFS' ALLEGATIONS.

On July 16, 2018, four plaintiffs in the above-captioned *Garrett* action filed their initial class action complaint against OSU. *See Garrett*, Complaint (Doc. 1). On July 17, 2018, one additional plaintiff filed his initial class action complaint against OSU. *See John Doe 1*, Complaint (Doc. 1). On October 26, 2018, 39 plaintiffs (including John Doe 1 and 34 new plaintiffs) filed a First Amended Class Action Complaint ("FAC") in the *Garrett* action. *See Garrett*, FAC (Doc. 33).[1] The Court directed the parties to mediate on January 17, 2019. *See id.*, Order (Doc. 50).

On November 27, 2019, 50 plaintiffs who are represented by the same counsel as the *Garrett* plaintiffs filed their initial class action complaint as the *Chrystal* matter. *See Chrystal*, Complaint (Doc. 1). On December 20, 2019, the Court consolidated the *Chrystal* and *Garrett* actions during the pendency of mediation. *See id.*, Order (Doc. 19).

In order to facilitate mediation efforts, OSU filed a motion to extend its deadline to respond to the *Chrystal* complaint during the pendency of mediation on January 29, 2020. *See id.*, Motion to Extend (Doc 25). In response, and despite the ongoing mediation, counsel for plaintiffs in the *Garrett* and *Chrystal* actions placed on file with the Court what they labeled a

---

[1] Plaintiff John Doe 1 voluntarily dismissed his separate lawsuit on October 30, 2018. *See John Doe 1*, Case No. 2:18-cv-00712, Notice of Dismissal (Doc. 24). He and his counsel are now prosecuting his claims in the *Garrett* matter.

"Notice of Mediation Termination and Request for Scheduling" on February 24, 2020  *See id*. (Doc. 28).  Plaintiffs' notice asked the Court to "allow litigation to resume" based on the purported grounds that "OSU has not participated in the mediation process in good faith," and "OSU will not take Plaintiffs' claims seriously until OSU's statute of limitations defense is defeated in a motion to dismiss." *Id*.

Less than two weeks later, on March 6, 2020, OSU and 162 plaintiffs in the majority of the pending cases announced a $40.9 million settlement following months of extensive negotiations through the mediation process.  *See DiSabato*, Unopposed Motion to Establish 468B Qualified Settlement Fund (Doc. 41) at ¶¶ 1, 3.  None of the plaintiffs in the settling cases opted out of the settlement. *Id*. at ¶ 4.

On March 31, 2020, four plaintiffs who are represented by the same counsel as the *Garrett* and *Chrystal* plaintiffs filed their initial class action complaint as the *John Does 85-88* matter.  *See John Does 85-88*, Complaint (Doc. 1).

On April 17, 2020, the Court ordered all non-settling plaintiffs to "proceed simultaneously with litigation and continued mediation."  *Garrett*, Order (Doc. 151), at ¶ 3. Specifically, the Court ordered, "[f]or administrative efficiency, each group of attorneys who represents multiple non-settling cases to choose one of the case numbers in which to file an Amended Complaint that incorporates all of the non-settling Plaintiffs whom that group of attorneys represents." *Id*. at ¶ 3(b).

Pursuant to the Court's April 17, 2020 order, the plaintiffs in the *Garrett*, *Chrystal*, and *John Does 85-88* cases filed their Consolidated Complaint in the above-captioned *Garrett* case on May 27, 2020.  *Garrett*, Consolidated Complaint (Doc. 157).  Five of the 98 plaintiffs asserting claims in the Consolidated Complaint are new plaintiffs who did not previously assert

claims against OSU.[2]

As alleged in the Consolidated Complaint, all plaintiffs are former OSU students and/or student-athletes who attended OSU between the "late 1970s" and 1999. *See id*. at ¶¶ 35-132. All plaintiffs allege that former OSU physician, Dr. Richard Strauss, sexually assaulted, abused, battered, molested, and/or harassed them, and/or that they experienced a sexually hostile environment at Larkins Hall between 1978 and 1998—when Strauss was employed at OSU. *Id*. at ¶¶ 16, 20, 195, 434, 492, 621. Each plaintiff asserts only one Title IX claim against OSU. *Id*. at ¶¶ 632-667 (Claim for Relief).

Strauss worked at OSU from 1978 to 1998, and died in 2005. *Id*. at ¶¶ 138, 142, 159, 195, 401. Larkins Hall was demolished in 2005. *Id*. at ¶ 159. Thus, plaintiffs' claims are based on acts alleged to have been committed 22 to 42 years ago, by someone who ceased being employed at OSU 22 years ago, and who died 15 years ago.

## III.     FED. R. CIV. P. 12(b)(6) STANDARD.

A complaint is subject to dismissal under Rule 12(b)(6) if, on its face, the allegations, taken as true, show the plaintiff is not entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If the allegations . . . show that relief is barred by the applicable statute of limitation[s], the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 215 (2007). Dismissal under Fed. R. 12(b)(6) is proper "if it is apparent from the face of the Complaint" that the statute of limitations has run. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992). *See also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (affirming dismissal based on statute of limitations bar where "the allegations in the complaint affirmatively show that the claim is time-barred"); *Owner Operator Indep. Drivers*

---

[2] Although the Consolidated Complaint repeatedly states that claims are being asserted on behalf of 99 plaintiffs, *see* Consolidated Complaint at ¶¶ 2, 10, 16, the Consolidated Complaint actually identifies 98 plaintiffs. The five new suing plaintiffs are: Joel Davis, John Doe 89, John Doe 90, John Doe 91, and John Doe 92.

*Ass'n, Inc. v. Comerica Bank*, 540 F. Supp. 2d 925, 929 (S.D. Ohio 2008) ("[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense."); *Arandell Corp. v. Am. Elec. Power Co*., No. 2:09-CV-231, 2010 WL 3667004, at *4, *8 (S.D. Ohio Sept. 15, 2010) (Watson, J.) (dismissing based on statute of limitations) (citing *Hoover*, 958 F.2d at 744).

## IV.  PLAINTIFFS' TITLE IX CLAIMS ARE BARRED BY THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.

Plaintiffs attempt to state claims pursuant only to Title IX.  *See* Consolidated Complaint at ¶¶ 632-667.  Title IX does not provide a statute of limitations.  *See Lillard v. Shelby Cty. Bd. of Educ*., 76 F.3d 716, 728-729 (6th Cir. 1996) ("Neither Title VI nor Title IX provide a limitation period expressly pertaining to judicial proceedings, a failure occasioned, no doubt, by the fact that, for both statutes, private causes of action were implied by the courts").  When a federal statute, such as Title IX, does not provide a statute of limitations, courts "borrow[] . . . the state law of limitations governing an analogous cause of action."  *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483–84 (1980). Accordingly, courts apply "state personal injury limitation periods to Title IX" claims.  *Lillard*, 76 F.3d at 729; *accord King-White v. Humble Ind. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) (collecting cases). In Ohio, the statute of limitations for personal injury is two (2) years.  *See* OHIO REV. CODE § 2305.10(A).  Thus, the statute of limitations applicable to plaintiffs' Title IX claims is two years.  *See Lillard*, 76 F.3d at 729; *Giffin v. Case W. Reserve Univ*., No. 98-3267, 1999 WL 238669 at *1-2 (6th Cir. Apr. 13, 1999).

Even though Title IX borrows Ohio's personal injury statute of limitations, federal law determines when a Title IX claim accrues.  *King-White.*, 803 F.3d at 762; *Stanley v. Trustees of*

6

*California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F.Supp.2d 662, 668 (E.D. Ky. 2009). The "standard rule" is that accrual occurs—and the limitations period begins to run—"when the plaintiff has a complete and present cause of action, that is when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

The United States Supreme Court recently warned that courts should not apply the discovery rule to delay the accrual of a claim brought pursuant to a federal statute unless the statute specifically mandates it. *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (rejecting an "expansive approach to the discovery rule" because courts should not "enlarge[]" federal statutes). The *Rotkiske* Court explained that courts should not "read in" the discovery rule to federal statutes because "Congress has shown that it knows how to adopt" the discovery rule if it chooses to do so, as evidenced by Congress's "enact[ment] [of] statutes that expressly include [] language . . . setting limitations periods to run from the date on which the violation occurs *or the date of discovery of such violation*." *Rotkiske*, *Id.* at 361 (citing numerous statutes). As discussed above, Title IX is a judicially implied right of action which itself does not set forth a statute of limitations, let alone, expressly incorporate the discovery rule. Thus, applying the discovery rule to Title IX claims requires a judicial implication (application of the discovery rule) upon another judicial implication (a private right of action). Pursuant to *Rotkiske*'s mandate, judges should avoid this. The discovery rule, therefore, does not apply to delay the accrual of plaintiffs' Title IX claims.

Courts, including the Sixth Circuit, the Southern District of Ohio, and other district courts within the Sixth Circuit, have consistently held that a Title IX claim based on allegations of sexual assault, abuse, or harassment accrues at the time of the assault, abuse, or harassment itself.

*See*, *e.g.*, *Gilley v. Dunaway*, 572 F. App'x 303, 308 (6th Cir. 2014) (Title IX claim accrued at time student was sexually abused by her high school coach); *Giffin*, 1999 WL 238669 at *1 (Title IX claim accrued at time of sexual harassment); *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 991 (S.D. Ohio 2018) (Title IX claim accrued at the time of the sexual harassment); *Bowling v. Holt Pub. Sch.*, No. 1:16-CV-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) (Title IX claim accrued on the date of the last sexual assault); *Anderson*, 616 F.Supp.2d at 668 (Title IX claim "accrued at the time of the alleged abusive acts" by school employees).[3]

Plaintiffs collectively allege that Strauss sexually assaulted, abused, battered, molested, and/or harassed them, and/or that they experienced a sexually hostile environment at Larkins Hall between 1978 and 1998. Consolidated Complaint at ¶¶ 16, 25, 149 at the heading, 492, 621. Specifically, plaintiffs allege the "men named herein and the class of OSU's male students they represent were:"

> "a. Repeatedly rectally raped."
> "b. Drugged and sodomized."
> "c. Fellated."
> "d. Digitally penetrated with ungloved fingers into their anuses."
> "e. Fondled during required physicals."
> "f. Repeatedly subjected to Strauss grinding his erect penis into them."

---

[3] *See also King-White*, 803 F.3d at 762 (Title IX claim accrued when teacher abused student); *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 440-441 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014), *cert. denied*, 575 U.S. 935 (2015) (Title IX claim accrued at time of sexual abuse); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th Cir. 2014) (comparing a Title IX claim based on sexual abuse to a battery, which "is complete upon physical contact, even though there is no observable damage at the point of contact," and holding plaintiff's Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach); *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000) (Title IX claim accrued at time of abuse); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, No. CIV-09-533-L, 2010 WL 152138, at *3 (W.D. Okla. Jan. 14, 2010) (plaintiff "impliedly concede[d]" that Title IX claim "had to have accrued" when the plaintiff was a student at the school because the alleged sexual abuse by the school employee only "occurred while she was a student at the school"); *Padula v. Morris*, No. 205-CV-00411-MCE-EFB, 2008 WL 1970331, at *4 (E.D. Cal. May 2, 2008) (Title IX claim "accrued on the last date Plaintiffs[] suffered an incident of sexual harassment"); *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997) (Title IX claim "accrued when [the student] knew or had reason to know of her injury—October 29, 1997[,]" the date her professor allegedly "sexually harassed her by touching her against her will on various parts of her body and indicating that he wanted to be with her privately"); *Clifford v. Regents of Univ. of California*, No. 2:11-CV-02935-JAM, 2012 WL 1565702, at *6 (E.D. Cal. Apr. 30, 2012), *aff'd*, 584 F. App'x 431 (9th Cir. 2014) (Title IX claim accrued when alleged sexual assault from hazing occurred).

"g. Manually masturbated by Strauss, including students who were physically incapacitated."

"h. Repeatedly psychologically tormented by Strauss showering with them, gawking at them, commenting on their penis size and physical appearance and masturbating in their presence."

*Id*. at ¶ 16; *see also id*. at ¶ 34 (alleging "[e]very plaintiff herein was sodomized or molested or penetrated or assaulted or groped or subjected to voyeurism or lewd comments by" Strauss).

Each plaintiff's specific and detailed allegations of abuse are set forth in the chart attached hereto as Appendix A. Plaintiffs specifically allege survivors made "widespread and repeated" complaints about Strauss' conduct and/or the sexually hostile environment at Larkins Hall. *See*, *e.g.*, John Doe 68, *id*. at ¶¶ 331-334; *id*. at ¶¶ 20 (alleging "many complaints of Dr. Strauss's misconduct and harassment"); ¶ 432 (alleging "widespread and repeated complaints of Dr. Strauss's conduct"); ¶ 504 (alleging "complaints of disturbing sexual assault by Dr. Strauss mounted over the years"); ¶ 576 (alleging an "onslaught of complaints lodged by students about Strauss"); ¶ 645 (alleging "the complaints of sexual abuse at Ohio State involving Dr. Strauss were not left unreported at the level of athletes"); ¶ 650 (alleging "complaints and concerns conveyed by athletes" about Strauss).

According to the Consolidated Complaint, the abuse each plaintiff suffered was "prolonged, repeated, disturbing, inappropriate, and criminal." *Id*. at ¶ 3. Plaintiffs' experiences with Strauss and/or at Larkins Hall were so "gruesome and horrifying" and "profoundly upsetting" that they "effectively den[ied] them access to educational opportunities at OSU"; "traumatized" plaintiffs; "altered" and "forever changed" the "entire trajectory" of their lives; and "still haunt[s] and torment[s] these men today, thirty years later." *Id*. at ¶¶ 497-498, 503, 529-530, 541, 544, 659. "Plaintiffs have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress,

embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, were prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, have sustained and continue to sustain loss of earning and loss of earning capacity, and have incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling." *Id*. at ¶ 665. "Many of them suffered humiliation, depression, dropped out of school, received failing grades or quit their sports team and relinquished their athletic scholarships to escape Strauss[.]" *Id*. at ¶ 543. "Indeed some victims continue to be afraid to see doctors to this day[.]" *Id*. at ¶ 503.

Based on the well-established and consistent law discussed above, plaintiffs' Title IX claims accrued between 1978 (at the earliest) and 1998 (at the latest), when the first and last encounters with Strauss by a plaintiff are alleged to have occurred. *See id*. at ¶¶ 16, 434, 492, 621. Plaintiffs did not, however, file suit until July 16, 2018 (*Garrett* initial complaint); July 17, 2018 (*John Doe 1* initial complaint); October 26, 2018 (*Garrett* FAC); November 27, 2019 (*Chrystal* initial complaint); March 31, 2020 (*John Does 85-88* initial complaint); or May 27, 2020 (*Garrett* Consolidated Complaint). Thus, plaintiffs' Title IX claims were filed approximately 20 to 40 years after the applicable two-year statute of limitations had expired.

Plaintiffs virtually admit their claims are time-barred. Specifically, plaintiffs acknowledge in their Consolidated Complaint that proposed House Bill 249 is a "bill which proposed removing the statute of limitations for Strauss victims to pursue their civil claims against OSU." Consolidated Complaint at ¶ 546. Plaintiffs characterize House Bill 249 as legislation necessary to "give[] these victims their long-awaited day in court" and to "specifically lift the unfair statute of limitations[.]" *Id*. at ¶ 548. Plaintiffs' support for House Bill 249 is admittedly because plaintiffs' Title IX claims are not timely. As a matter of law, plaintiffs' Title

IX claims are time-barred and should be dismissed with prejudice.

## V. THE DISCOVERY RULE DOES NOT APPLY TO DELAY THE ACCRUAL OF PLAINTIFFS' TITLE IX CLAIMS.

Plaintiffs allege "many" plaintiffs did not discover that Strauss sexually abused them until after OSU announced its investigation in 2018. Consolidated Complaint at ¶ 444.

As discussed above, the discovery rule does not apply pursuant to the United States Supreme Court's holding in *Rotkiske*. Even where plaintiffs have attempted to apply the discovery rule to Title IX claims, courts have consistently rejected it. The Supreme Court "ha[s] been at pains to explain that" the limitations period begins to run upon "discovery of the *injury*, not discovery of the other elements of a claim." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *see also Anderson*, 616 F. Supp. 2d at 668 (stating in a Title IX action, that "[i]n applying a discovery accrual rule ... discovery of the injury, not discovery of the other elements of the claim, is what starts the clock. Otherwise stated, a plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful") (quoting *Rotella*, 528 U.S. at 555 and *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001)); *Twersky v. Yeshiva Univ*., 993 F. Supp. 2d 429, 440 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) ("'[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock,'" and this is true "regardless of how complex or difficult to discover the elements of the cause of action may be") (quoting *Rotella*, 528 U.S. at 555-556).

Moreover, under the discovery rule, the limitations period begins when a person "has *reason* to know of his injury"—even if he does not have actual or complete knowledge of his injury until later. *Anderson*, 616 F. Supp. 2d at 668 (quoting *Roberson*, 399 F.3d at 794). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Anderson*, 616 F. Supp. 2d at 668 (quoting *Roberson*, 399 F.3d at 794);

*Bowling*, 2017 WL 4512587, at *1 (citing *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001)).

Importantly, accrual "is an objective inquiry[.]" *Helm v. Eells*, 642 F. App'x 558, 561 (6th Cir. 2016). That is, courts do not ask whether the particular plaintiff in fact *knew* about his injury, but rather, whether the "event" at issue—here, the complained of conduct by Strauss— "should have alerted the typical lay person to protect his or her rights." *Id*. "Any fact that should excite his suspicion is the same as actual knowledge of his entire claim. Indeed, 'the means of knowledge are the same thing in effect as knowledge itself.'" *Dayco Corp. v. Goodyear Tire & Rubber Co*., 523 F.2d 389, 394 (6th Cir. 1975) (quoting *Wood*, 101 U.S. at 143). "[T]he plaintiff bears the burden of 'plead[ing] circumstances which would indicate why the [cause of action] was not discovered earlier[.]'" *Owner Operator Indep. Drivers Ass'n,* 540 F. Supp. 2d at 929 (quoting *Auslender v. Energy Mgmt. Corp*., 832 F.2d 354, 356 (6th Cir. 1987)).

Here, as previously discussed, plaintiffs' allegations regarding proposed House Bill 249 is an admission that their Title IX claims are barred by the two-year statute of limitations. Moreover, because plaintiffs allege the abuse they experienced share "stark similarities" and that their claims are "based on the same legal theories and arise from the same factual pattern," *id*. at ¶¶ 469, 623, under the required objective standard applicable to the discovery rule, ***all*** plaintiffs should have been alerted to protect their rights. *Helm*, 642 F. App'x at 561.

Further, plaintiffs' assertion that they did not recognize Strauss' conduct constituted sexual abuse, assault, or harassment is implausible given the specificity of each plaintiff's allegations regarding the abuse and harm each suffered, as set forth above and in Appendix A. *See Doe v. Pasadena Hosp. Assn., Ltd*., 2020 WL 1529313, *5 (C.D. Cal. Mar. 31, 2020) ("[T]he Court need not blindly accept Plaintiff's allegation that she only became aware of" sexual abuse by her gynecologist when a newspaper published a report about the physician's misconduct

12

"because the factual allegations directly contradict such an assertion."). Related to this, as discussed previously, plaintiffs specifically allege they complained about Strauss' conduct and/or the sexually hostile environment at Larkins Hall or acknowledge the "widespread and repeated" complaints by students. *See*, *e.g.*, John Doe 68, *id.* at ¶¶ 331-334; *id.* at ¶¶ 20 (alleging "many complaints of Dr. Strauss's misconduct and harassment"); ¶ 432 (alleging "widespread and repeated complaints of Dr. Strauss's conduct"); ¶ 504 (alleging "complaints of disturbing sexual assault by Dr. Strauss mounted over the years"); ¶ 576 (alleging an "onslaught of complaints lodged by students about Strauss"); ¶ 645 (alleging "the complaints of sexual abuse at Ohio State involving Dr. Strauss were not left unreported at the level of athletes"); ¶ 650 (alleging "complaints and concerns conveyed by athletes" about Strauss).

At the very least, the alleged conduct would have caused each plaintiff to be ***suspicious*** of a ***possible injury*** at the time the sexual assault, abuse, or harassment occurred, thereby triggering the accrual of his Title IX claims. *Helm*, 642 F. App'x at 561; *Dayco Corp.*, 523 F.2d at 394. In addition to the detailed and specific allegations of abuse set forth in Appendix A, plaintiffs admit that "many of Dr. Strauss's victims, including Plaintiffs in this case, felt that his exams were medically inappropriate and deeply uncomfortable[.]" Consolidated Complaint at ¶ 444. Plaintiffs also allege that Strauss' conduct was unlike prior experiences survivors had with other doctors. *See*, *e.g.*, Consolidated Complaint at ¶ 173 ("These were the longest exams he had ever experienced, and always included a 'hernia check.'").

This Court can reasonably infer that most plaintiffs' suspicion of a possible injury would have only increased in the intervening years, when they presumably obtained medical treatment that did not involve a physician engaging in the type of conduct toward them that Strauss did. *See Doe v. Univ. of S. Cal.*, 2019 WL 4228371, at *3 (C.D. Cal. Apr. 18, 2019) ("Plaintiff's

argument that she could not have discovered Dr. Tyndall's examination constituted sexual misconduct until 2018 is implausible, since Plaintiff undoubtedly had further gynecological examinations by other medical professionals after Dr. Tyndall over the 27 years since and would have had a basis to conclude that Dr. Tyndall's conduct fell outside of medically acceptable standards."). In fact, plaintiffs specifically allege that some survivors received physical exams or information post-Strauss that confirmed their suspicions of possible injury or abuse:

> ¶¶ 167-169. "Dr. Strauss gave the athlete a physical again the next year. It lasted about 20 minutes, 15 minutes of which involved Dr. Strauss closely inspecting his genitalia. The athlete remembers being concerned at the time, but alarms were raised the next year when another doctor gave the athlete a physical. It lasted only five minutes. The athlete recalls thinking at the time, 'No hernia test, didn't get naked. Is that it?' 'Then I was like, "Holy moly," the athlete said. 'I was always afraid. [Strauss] was the leading doctor on steroid use in the world, and I was always like, he could always say that medically there's some reason that he needs to spend 15 minutes on my penis,' the athlete said. 'He could have said that, and he's dead now, but that's what always scared me. But now I'm like, that's crazy. Especially when that other doctor came in in five minutes and checked me out."

> ¶¶ 196-197. "In 1978—Dr. Strauss's first year at Ohio State—Dr. Strauss fondled a former wrestling team captain during an exam. The wrestler left the exam and went to the Ohio State student health center where he complained about Dr. Strauss's fondling to another doctor. The doctor told the wrestler that the exam he described was 'not normal.'"

Additionally, some plaintiffs are medical professionals themselves. *See*, e.g., Brian Garrett, *id*. at ¶ 372 (alleging Mr. Garrett holds bachelor's and master's degrees in nursing); Dr. Mark Chrystal, *id*. at ¶ 44.

Courts have consistently rejected efforts by plaintiffs to delay the accrual of their Title IX claims based on the discovery rule. *See*, *e.g*., *Gilley*, 572 F. App'x at 308 ("Even if this Court accepted as true that [plaintiff] was completely unaware both that she was being sexually abused and that the Board knew of that sexual abuse," plaintiff was "aware of facts that should have aroused her suspicion of the claims against the defendants at the time of her injuries" and did not

"exercise[] reasonable care and diligence to discover whether she had a viable legal claim" in waiting almost seven years after she turned 18 years old to sue); *Anderson*, 616 F.Supp.2d at 671 ("Plaintiffs were sufficiently aware of facts that should have aroused their suspicion of the claims against Defendants at the time of their injuries . . . There is no indication that Plaintiffs exercised any diligence, ordinary or otherwise, to uncover the source of their injuries prior to the expiration of the statute of limitations for their claims, and the Board is entitled to be free of such stale claims") (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).[4]

Courts also have refused to find a delayed accrual of Title IX claims where, as here, plaintiffs were aware of: the acts complained of, the abuser's identity, and that the abuser was an employee of the school. *See, e.g.*, *Anderson*, 616 F. Supp. 2d at 668, 671 (Title IX claims "accrued at the time of the alleged abusive acts" because plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board," and these "facts should have aroused their suspicion of the claims against Defendants at the time of their injuries"); *King-White*, 803 F.3d at 762 (Title IX claim accrued at time of abuse where student "was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher"); *Twersky*, 579 F. App'x at 9-10 (Title IX claim accrued at time of abuse because plaintiffs' "unquestionabl[e] aware[ness] of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [the high school] . . . was

---

[4] *See also Twersky*, 993 F. Supp. 2d at 443-439 (Title IX claim accrued at the time high school students were abused, not two decades later when a newspaper article reported school administrator's admission that he and other administrators had been aware of the risk of sexual abuse when it was occurring); *King-White*, 803 F.3d at 762 (Title IX claim accrued when plaintiff was abused by teacher, not when plaintiff learned nearly two years later during the teacher's criminal case that school officials allegedly had ratified and acted with deliberate indifference to the abuse); *Varnell*, 2013 WL 12146483, at *6-*7 & n.4, *report and recommendation adopted*, No. 12-CV-905 JCH/GBW, 2013 WL 12149185 (D.N.M. June 24, 2013), *aff'd*, 756 F.3d 1208 (10th Cir. 2014) (Title IX claim accrued no later than the last date the plaintiff was sexually abused by her coach, not when the plaintiff "recently" learned of the superintendent's alleged concealment of the abuse, where plaintiff "was repulsed by the sexual conduct *when it was occurring*" and the school district could not now be liable because its "failure to prevent the abuse could only occur while the abuse was ongoing").

sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers"); *A.W. v. Humble Indep. Sch. Dist*., 25 F. Supp. 3d 973, 991 (S.D. Tex. 2014), *aff'd sub nom. King-White v. Humble Indep. Sch. Dist*., 803 F.3d 754 (5th Cir. 2015) ("Since by her eighteenth birthday A.W. knew that she had been injured by Feenstra and that Feenstra was employed by HISD, the discovery rule is not applicable because for limitations purposes, there was nothing left for A.W. to discover"); *Wilmink v. Kanawha Cty. Bd. of Educ*., 214 F. App'x 294, 296 (4th Cir. 2007) (plaintiff was required to bring her Title IX claim within "two years after she turned eighteen" where it was "beyond dispute that plaintiff knew she had been injured in 1984" and "knew the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty"—"her principal and her school board"—"by the time she reached majority").

Courts have likewise refused to apply the discovery rule to similar claims involving sexual abuse. *See*, *e.g*., *Doe v. Pasadena Hosp. Ass'n, Ltd*., 2020 WL 1529313, at *5 (finding plaintiff had "reason to suspect . . . wrongdoing, causation, and harm" at the time abusive gynecological examinations occurred"); *Doe v. USC*, 2019 WL 4228371, at *4 ("The fact that Plaintiff only learned [in 2018] that she was not the only female patient abused by Dr. Tyndall [during a gynecological exam] does not affect Plaintiff's knowledge of the abuse she received back in 1991"); *Doe v. Kipp DC Supporting Corp*., 373 F. Supp. 3d 1, at *8 (D.D.C. 2019) (holding that the discovery rule did not delay accrual of a claim where a survivor of sexual abuse "recall[ed] that abuse but d[id] not appreciate its wrongfulness" at the time).

Virtually all of the above cases in which courts have considered (and rejected) the discovery rule as a basis to delay the accrual of Title IX claims pre-date the Supreme Court's decision in *Rotkiske* which, as discussed above, holds that the discovery rule does not apply to

federal statutes (like Title IX) that do not expressly incorporate the discovery rule.  *Rotkiske*, 140 S. Ct. at 360–61.  Even applying the discovery rule to plaintiffs' Title IX claims, however, the same result is required as in the numerous cases cited above. Taken as true, the allegations in plaintiffs' Consolidated Complaint demonstrate their claims accrued between 1978 (at the earliest) and 1998 (at the latest), when the first and last encounters with Strauss by a plaintiff are alleged to have occurred.  *See id*. at ¶¶ 16, 434, 492, 621.  Thus, the two-year statute of limitations for the last plaintiff to bring his Title IX claims expired in 2000, at the latest. Plaintiffs did not file suit until July 16, 2018 (*Garrett* initial complaint); July 17, 2018 (*John Doe 1* initial complaint); October 26, 2018 (*Garrett* FAC); November 27, 2019 (*Chrystal* initial complaint); March 31, 2020 (*John Does 85-88* initial complaint); or May 27, 2020 (*Garrett* Consolidated Complaint).  Plaintiffs' Title IX claims (Claim for Relief) were filed approximately two to four decades after the applicable statute of limitations had expired and should be dismissed.

## VI.    LEAD PLAINTIFF AND PUTATIVE CLASS REPRESENTATIVE BRIAN GARRETT LACKS STANDING AND FAILS TO STATE A TITLE IX CLAM AGAINST OSU.

As discussed above, and as plaintiffs themselves have virtually admitted, the Title IX claims of all plaintiffs are barred as a matter of law by the expiration of the statute of limitations. In addition to the statute of limitations, the Title IX claim of lead plaintiff and putative class representative Brian Garrett fails for two additional independent reasons:  (1) Mr. Garrett lacks standing to assert a Title IX claim against OSU because he was neither an OSU student nor OSU employee at the time of the alleged abuse; and (2) Mr. Garrett fails to state a Title IX claim against OSU because OSU is not liable for the alleged abuse which occurred at Dr. Strauss' privately owned and managed, off-campus clinic.

17

Plaintiffs allege Strauss abused Mr. Garrett in "the fall of 1996" at Strauss' "off-campus" health clinic ("Men's Clinic of America") "two miles from campus."  Consolidated Complaint at ¶¶ 354, 377, 468 n.52. At the time of the alleged abuse in the fall of 1996, Mr. Garrett had already graduated from OSU in the spring of 1996 with a degree in nursing and was not an OSU student.  *See id*. at ¶ 375; *see also Garrett*, Pls' Opp. to Motion to Dismiss (Doc. 47) at 18 (stating Mr. Garett was "in between his undergraduate and graduate school programs" at the time of the abuse). Plaintiffs also allege Strauss set up the off-campus clinic after OSU terminated his employment as an OSU physician; that Strauss' clinic "was not under OSU's supervision"; and that the clinic was ran by "only one doctor—Richard Strauss." Consolidated Complaint at ¶¶ 350-351, 355-356, 367; *see also Garrett*, FAC (Doc. 33) at ¶ 25 (alleging "Dr. Strauss ran the clinic through a corporation he formed in 1996, Richard H. Strauss, M.D., Inc.").

In regard to standing, Title IX provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

"Though cast in broad terms, § 1681 nevertheless addresses itself only to sex discrimination against the participants in and the beneficiaries of federally assisted education programs. Section 1681 must therefore be read to protect from sex discrimination only those persons for whom the federally assisted education programs are established[.]"  *Romeo Cmty. Sch. v. U.S. Dep't of Health, Ed., & Welfare*, 438 F. Supp. 1021, 1031 (E.D. Mich. 1977), *aff'd*, 600 F.2d 581 (6th Cir. 1979).  Accordingly, only students or employees of the institution they are suing have standing to sue under Title IX.  *See Davis v. Monroe Cty. Bd. Of Educ*., 526 U.S. 629, 650–51 (1999) (students); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 717 (1979) (students); *N.*

18

*Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 530 (1982) (school employees).

"There are no cases that have been decided to date that extend Title IX protections to campus visitors." Hannah Brenner, *A Title IX Conundrum: Are Campus Visitors Protected from Sexual Assault?*, 104 Iowa L. Rev. 93, 135 (2018) (collecting cases). Non-students and non-employees lack Title IX standing because they have not been "excluded from participation in," "denied the benefits of," or "subjected to discrimination under any education program or activity." 20 U.S.C. § 1681(a).[5] *See Arocho v. Ohio Univ.*, No. 2:19-CV-4766, 2020 WL 3469223, at *4 (S.D. Ohio June 25, 2020) (Watson, J.) (granting motion to dismiss Title IX claims brought by high school student who was assaulted by university employee while participating in university's "career day"). Mr. Garrett was not an OSU student at the time of the abuse in the fall of 1996, and therefore lacks standing to sue OSU under Title IX.

Additionally, Mr. Garrett fails to state a Title IX claim against OSU because Title IX liability is limited to "circumstances wherein the [school] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Pahssen v. Merrill Cmt. Sch. Distr.*, 668 F.3d 356, 366 (6th Cir. 2012) (quoting *Davis v. Monroe County Board of*

---

[5] *See*, *e.g.*, *Phillips v. Anderson Cty. Bd. of Educ.*, 259 F. App'x 842, 843 n.1 (6th Cir. 2008) (parents of students lacked standing to assert Title IX claims); *Doe v. Univ. of Kentucky*, 357 F. Supp. 3d 620, 633–34 (E.D. Ky. 2019) (plaintiff who lived in a dorm on campus, paid various fees and costs associated with living on campus, and used the university's libraries and computer labs lacked standing to assert Title IX claims against the university because she not a university student or enrolled in a university education program or activity); *Arora v. Daniels*, No. 3:17-CV-134, 2018 WL 1597705, at *8 (W.D.N.C. Apr. 2, 2018) ("potential student" who was harassed "[b]efore she sought admission" at the college lacked Title IX standing); *Doe v. Brown Univ.*, 270 F. Supp. 3d 556, 561-563 (D.R.I. 2017) (student enrolled at Providence College who was assaulted at Brown University could not bring Title IX claim against Brown University because she was not a student at Brown), *aff'd*, 896 F.3d 127 (1st Cir. 2018); *K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165 CAS, 2016 WL 4243965, at *4-6 (E.D. Mo. Aug. 11, 2016) (high school student who visited college as a potential soccer recruit and was assaulted could not bring a Title IX claim against the college because she was not within the scope of persons Congress intended Title IX to protect), *aff'd*, 865 F.3d 1054 (8th Cir. 2017); *Yan Yan v. Pennsylvania State Univ.*, No. 4:14-CV-01373, 2015 WL 3953205, at *13 (M.D. Pa. June 29, 2015) (former student lacked standing to assert Title IX discrimination and retaliation claims for conduct that occurred when she was no longer a student), *aff'd*, 623 F. App'x 581 (3d Cir. 2015); *Glaser v. Upright Citizens Brigade LLC*, No. 18-CV-971 (JPO), 2020 WL 1529309, at *4-5 (S.D.N.Y. Mar. 31, 2020) (same); *Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Nos. 11-CV-785, 12-CV-7132, 2016 WL 6471013, at *7 (D.N.J. Oct. 31, 2016) (no Title IX standing for parent who was sexually harassed by principal during meetings at her child's school).

*Education*, 526 U.S. 629, 645 (1999)). Applying similar law, the Eighth Circuit in *Lam v. Curators of the Univ. of Missouri at Kansas City Dental Sch.*, 122 F.3d 654 (8th Cir. 1997) held a dental school was not liable under Title IX for its instructor's sexual assault of a dental student at the instructor's "off-campus," "independent," "private dental practice that was not affiliated with the school" because the "private dental practice did not constitute a program or activity of the University" under Title IX. *Id.* at 655-656.

## VII.  PLAINTIFFS CANNOT RECOVER PUNITIVE DAMAGES.

Plaintiffs seek an award of punitive damages against Ohio State. *See* Consolidated Complaint at ¶ 666 & Prayer for Relief at (d). Punitive damages are not recoverable under Title IX as a matter of law. *See Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 WL 31951264, at *16 (S.D. Ohio Nov. 15, 2002) (citing *Barnes v. Gorman*, 536 U.S. 181, 188-189 (2002)); *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) ("punitive damages are not available for private actions brought to enforce Title IX"). Therefore, plaintiffs' request for punitive damages also should be dismissed with prejudice.

## VIII.  CONCLUSION.

For the reasons stated above, unless otherwise settled through the ongoing mediation, plaintiffs' Consolidated Class Action Complaint (Doc. 157) should be dismissed with prejudice.

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
   Michael H. Carpenter (0015733) (Trial Attorney)
   Timothy R. Bricker (0061872)
   David J. Barthel (0079307)
   Stephen E. Dutton (0096064)
   CARPENTER LIPPS AND LELAND LLP
   280 Plaza, Suite 1300
   280 North High Street
   Columbus, OH 43215
   E-mail: carpenter@carpenterlipps.com
      bricker@carpenterlipps.com
      barthel@carpenterlipps.com
      dutton@carpenterlipps.com

   Special Counsel for Defendant
   The Ohio State University

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on July 7, 2020. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University

22