# THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BRIAN GARRETT, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE OHIO STATE UNIVERSITY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:18-cv-00692 <br><br> Judge Michael H. Watson <br><br> Chief Magistrate Judge Elizabeth P. Deavers |
| STEVE SNYDER-HILL, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE OHIO STATE UNIVERSITY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:18-cv-00736 <br><br> Judge Michael H. Watson <br><br> Chief Magistrate Judge Elizabeth P. Deavers |

**MOTION OF PLAINTIFFS TO PERMIT LIMITED DISCOVERY DEPOSITIONS**

Pursuant to Fed. R. Civ. P. 26(c), the *Snyder-Hill* Plaintiffs and the *Garrett* Plaintiffs respectfully move this Court for an Order permitting limited discovery to conduct the depositions of Andy Geiger, Dr. Manuel Tzagournis, Doris Charles, and Russ Hellickson. We conferred with Defendant, which has stated it will oppose the motion. The reasons for granting this Motion are more fully set forth in the attached Memorandum in Support.

Respectfully submitted,

DATED: October 15, 2020          EMERY CELLI BRINCKERHOFF
                                  ABADY WARD & MAAZEL LLP


By: /s/ Ilann M. Maazel
Ilann M. Maazel (admitted *pro hac vice*)

Debra L. Greenberger (admitted *pro hac vice*)
Marissa R. Benavides (admitted *pro hac vice)*
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: mbenavides@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
Michael L. Dillard, Jr. (0083907)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestraillaw.com
E-Mail: mld@sestriallaw.com

Adele P. Kimmel (admitted *pro hac vice*)
Alexandra Z. Brodsky (admitted *pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

*Attorneys for Snyder-Hill Plaintiffs*
*Case No. 2:18-cv-00736*

*/s/ Simina Vourlis* by /s/ per email authorization (Oct. 15, 2020)
Simina Vourlis (0046689) (Trial Attorney)
The Law Office of Simina Vourlis
856 Pullman Way
Columbus, OH 43212
(614) 487-5900
(614) 487-5901 fax
svourlis@vourlislaw.com

Rex A. Sharp (admitted *pro hac vice*)
Ryan C. Hudson (admitted *pro hac vice*)
Larkin Walsh (admitted *pro hac vice*)
Sarah T. Bradshaw (admitted *pro hac vice*)
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

*Attorneys for Garrett Plaintiffs*
*Case No. 2:18-cv-00692*

3

**MEMORANDUM IN SUPPORT**

I.     **INTRODUCTION**

The Perkins Coie report (the "Report")[1] points to several witnesses who possess information relevant to the above-captioned cases. These witnesses are of advanced age. Delay in subpoenaing these witnesses for their depositions is likely to prejudice Plaintiffs as the witnesses may become unavailable or incapable of testifying to the facts that they possess. As a result, Plaintiffs move this Court for an Order permitting Plaintiffs to immediately subpoena and depose five witnesses identified in the Report to preserve their testimony. These witnesses are Andy Geiger (age 81); Dr. Manuel Tzagournis (age 85); Doris Charles (age 90); and Russ Hellickson (age 72) ("Preservation Witnesses"). Each is likely to have information concerning OSU's knowledge of and deliberate indifference to Strauss's abuse.

These depositions will preserve evidence and prevent the risk of permanently losing crucial testimony. Doing so will also serve the public interest by providing further public transparency about OSU's role in Strauss's abuse, a goal OSU has professed to share.

OSU should support this motion, consistent with its repeated public statements, espoused in its motion to this Court, that it wants a full investigation and wants the public to know the full story. For example, former OSU President Michael V. Drake repeatedly touted that OSU was dedicated to uncovering the truth. In late 2019, he stated: "The university remains dedicated to integrity, transparency and trust—values that guide our campus community each day. This commitment extends fully to the investigation of abuse committed by Strauss."[2] Perkins Coie

---

[1] Relevant excerpts of the Report cited herein are attached hereto as Exhibit A ("Report").

[2] *A Message from President Drake: Strauss Investigation Update*, The Ohio State University, Office of the President (Oct. 1, 2019), https://news.osu.edu/strauss-investigation-ohio-state-convenes-task-force-releases-previously-redacted-portions-of-independent-report/; *see also* Dkt. 52 (seeking Order permitting the public release of those portions of the Report based on information from files obtained from the State Medical Board of Ohio). Unless

4

did not interview some of these Preservation Witnesses. Nor did Perkins Coie have the benefit of the information Plaintiffs have learned from subsequent witnesses and other Strauss survivors. And the interviews conducted by Perkins Coie, though informative, are not sworn. This Court has the power to require the witnesses to provide formal testimony, and OSU should join Plaintiffs in asking the Court to exercise that power to promptly uncover the whole truth.

In its April 17, 2020 Order, the Court made clear that non-settling parties, such as Plaintiffs, should proceed on a dual track of litigation and mediation. Dkt. 151. Since then, OSU filed a motion to dismiss, which all Plaintiffs have opposed. Dkts. 128, 133, 135. OSU has not sought to stay discovery in light of its motion, and the Court denied its prior stay motion. Dkt. 70. Nonetheless, in recognition of the Court's role in supervising discovery in this matter during the pendency of the motions to dismiss and to avoid unnecessary disputes after serving a non-party subpoena, Plaintiffs formally move for permission to depose these Preservation Witnesses.

## II.     FACTS AND PROCEDURAL HISTORY

### A.  The Court Permits Discovery Relevant and Tailored for Purposes of Mediation.

The *Garrett* action was filed on July 16, 2018, and the *Snyder-Hill* action was filed on July 26, 2018. Defendant moved to dismiss both actions as untimely. Dkt. 34. Plaintiffs opposed the motions, explaining that Plaintiffs' Title IX claims were timely filed under both the federal discovery rule and Ohio's equitable tolling doctrine. Dkt. 40.

On October 12, 2018, Defendants sought a stay of discovery pending the resolution of the motion to dismiss. Dkt. 25. Plaintiffs opposed that motion because OSU had not shown good cause to stay discovery, the motion to dismiss is not "virtually certain" to succeed, and the limited discovery proposed by the Plaintiffs at that point—before the issuance of the Perkins

---

otherwise noted, all docket references are to the filings in *Snyder-Hill et. al. v. OSU*, 18-00736.

Coie Report—was not unduly burdensome. *See Boddie v. PNC Bank, NA*, No. 2:12-cv-158, 2012 WL 4088683, at *2 (S.D. Ohio Sept. 17, 2012) (citation omitted). Plaintiffs further argued that societal interests strongly favor proceeding with at least some discovery as the case raises matters of statewide and national concern. Dkt. 26.

On March 15, 2019, the Court ordered the parties to mediation before Senior United States District Judge Michael R. Barrett.

On May 24, 2019, the Court denied OSU's motions to stay discovery and ordered, at that time, that "any discovery pursued should be narrowly tailored for the purposes of mediation. The Court will hold a preliminary pretrial conference to establish case deadlines after the parties have exhausted their efforts at mediation." Dkt. 70.

On July 26, 2019, while mediation efforts proceeded, Plaintiffs filed a Motion for Clarification of the Court's May 24, 2019 Order Permitting Discovery. Dkt. 81. The Motion sought to take a limited number of depositions of individuals who had not cooperated and/or been interviewed by Perkins Coie. OSU opposed the Motion and sought a status conference. Dkt. 83. The Court issued an Order permitting the limited discovery sought by Plaintiffs. Dkt. 90.

Those six depositions provided significant additional information relevant to OSU's indifference to Strauss's abuse of hundreds of young men. Plaintiffs amended their complaints accordingly. OSU sought to conceal that deposition testimony from the public. Dkt. 154. The Court denied OSU's request. Dkt. 156.

On April 17, 2020, after receiving a report from the Mediator, the Court issued an Order directing the non-settling Plaintiffs, including all Plaintiffs herein, to proceed simultaneously on a dual track focusing on litigation and mediation. Dkt. 151.

6

On July 7, 2020, OSU moved to dismiss the above-captioned cases, and Plaintiffs opposed those motions on August 4, 2020. Dkts. 162, 169. OSU has not sought a stay of discovery.

**B. A Number of Witnesses of Advanced Age Possess Crucial Information.**

The Perkins Coie Report identified people who "might have information relevant to determining the 'University's knowledge' of Strauss sexual abuse of student-patients." Report at 16. As detailed in Plaintiffs' Complaints, Plaintiffs are aware of a number of witnesses with knowledge of Strauss's abuse and OSU's deliberate indifference. Plaintiffs identified four witnesses of advanced age who occupied key positions at OSU during the time Strauss was committing his atrocious acts. These four witnesses are likely to have information crucial to Plaintiffs' cases, information which, if lost, would prejudice the Plaintiffs. The four witnesses are:

- Andy Geiger, OSU's Athletic Director, 1994-2005 (age 81). *See* Report at 88. According to the Report, Mr. Geiger said he was notified of at least two student complaints about sexual assaults by Strauss during medical examinations. *See id*. at pp. 88-89, 91. *See also* Dkt. 123 (Second Amended Complaint ("SAC")) ¶¶ 172, 2566. Mr. Geiger also acknowledged that an unidentified coach, identified as "Coach A" in the Report, repeatedly raised concerns about the predatory environment at Larkins Hall, including, acts of voyeurism, public sex activity, and issues with communal showers. *See* Report at 167-68. Mr. Geiger confirmed that he considered several possible responses, from allowing Coach A's team to practice at another facility to instituting certain procedures to protect the safety and privacy of the student athletes. *See id*. Mr. Geiger conceded to Perkins Coie that he took no such actions. *See id*. Finally, Mr. Geiger was the Athletic Director at OSU when Strauss's employment at OSU ended, and as such, likely has knowledge about Strauss's termination/non-renewal.

- Dr. Manuel Tzagournis, OSU's Vice President of Health Sciences and Academic Affairs, 1979-1999 (age 85). *See* Report at 151. According to the Report, Strauss met with Ronald St. Pierre (OSU's Vice Dean and Secretary for the College of Medicine and Associate Vice President of Health Sciences and Academic Affairs) to discuss the disciplinary hearing against Strauss. *See id*. Mr. St. Pierre told Strauss that he would discuss the matter with Mr. Tzagournis, and that they (and OSU) would have no problem with Strauss still engaging in part-time private medical practice and retaining his tenure at OSU. *See id*.

7

- Doris Charles, OSU's Student Health Director, 1981-1990 (age 90).  *See* Report at 115.  According to the Report, in 1982, after OSU's Student Health Center's Sports Medicine Clinic, Dr. David Henderson, drafted a derogatory report about the quality of medical care provided to OSU student-athletes, Ms. Charles substantially revised the report, largely eliminating Dr. Henderson's criticisms, including his statement that Strauss "works for no one, answers to no one, and is accountable to no one." *See id*. at 116.  Additionally, according to the Report, a member of OSU's Student Health nursing staff, identified as "Nurse A," reported that she escalated concerns about Strauss's lack of adherence to scheduling and recordkeeping protocols with student-patients to Ms. Charles, but Ms. Charles dismissed the concerns and took no action.  *See id*. at 120; SAC ¶ 184.

- Russ Hellickson, OSU's Wrestling Coach, 1986-2006 (age 72).  Though not identified in the Report, Mr. Hellickson was the head coach for the OSU men's wrestling team, a team whose athletes were among those most affected by Strauss's misconduct.  Multiple OSU coaches talked to Perkins Coie about their interactions with Strauss and knowledge of his conduct as it related to their teams.  *See* Report at 111-13.  Mr. Hellickson described the toxic culture at OSU as a "cesspool of deviancy" and recalled, "[c]oaching my athletes in Larkins Hall was one of the most difficult things I ever did." SAC ¶ 215.  He claimed to have dragged voyeurs out of Larkins Hall and pled to OSU to move his athletes to another building.  *Id*. ¶ 216.  Multiple survivors have named Mr. Hellickson as someone aware of student discomfort with Strauss.  *Id*. ¶¶ 1260, 1410, 1817.  Survivors have claimed that Mr. Hellickson was present while athletes discussed Strauss' abuse.  *Id*. ¶ 1423.  At least one survivor has alleged that he spoke to Mr. Hellickson directly about the issue.  *Id*. ¶¶ 1436, 1817, 1951, 2566.  There are also allegations that Mr. Hellickson contacted some of his former players to ask them to recant stories.[3]

The Perkins Coie Report does not reveal the identity of many witnesses.  Undoubtedly there will be more Preservation Witnesses with highly relevant information whose testimony needs to be preserved.  But these four provide a reasonable start to uncovering the full story of Strauss's misconduct and OSU's involvement in permitting that misconduct.

## III. ARGUMENT

There is a strong presumption under the Federal Rules of Civil Procedure that discovery will proceed during the pendency of a motion to dismiss.  Absent a "virtual certainty" that OSU

---

[3] *See* William Saletan, *Crossing Jordan*, Slate (Aug. 2, 2018, 2:33 pm), https://slate.com/news-and-politics/2018/08/rep-jim-jordan-is-trying-to-silence-the-former-students-who-have-accused-him-of-knowing-about-sexual-abuse.html.

will prevail on its motion to dismiss, discovery should not be stayed. *See Boddie*, No. 2:12-cv-158, 2012 WL 4088683, at *2 (citation omitted); *Osman v. Mission Essential Pers., LLC*, No. 2:11-cv-577, 2012 WL 1831706, at *2 (S.D. Ohio May 18, 2012).

The Court's denial of Defendant's stay motion on May 24, 2019 conformed with these principles. Dkt. 70. Though mediation and motions to dismiss are currently pending, Plaintiffs do not seek full discovery at this point. But recognizing the Court's directive that litigation continue simultaneously with mediation, Dkt. 151, Plaintiffs must proceed with the Preservation Witness depositions or risk losing crucial testimony as witnesses become unavailable to testify. Deposing four of the Preservation Witnesses will support the resolution of this action, preserve testimony from witnesses who might otherwise become unavailable, and impose little burden.

### A. Courts Routinely Refuse to Delay Depositions Where There Is a Risk the Deponent Will Become Unavailable

The Perkins Coie Report identified numerous OSU witnesses with information Perkins Coie considered highly probative to OSU's knowledge of and response to Strauss' serial abuse. But their testimony is not under oath, as Perkins Coie did not have the power to compel anyone's testimony.

Plaintiffs seek to depose the Preservation Witnesses to ensure that no further witnesses will join those who have already passed away (*sixty* people, by the Report's count) or lose their ability to give meaningful testimony. The events at issue began in the late 1970s. Those who were middle-aged then are now elderly. Even during the pendency of this case, important witnesses have died, including Jim Jones, OSU's Athletic Director in the 1980s and 1990s, who died on April 22, 2020 at age 83. *See* SAC ¶¶ 172, 2566. And David Williams II, OSU's Vice President of Student Affairs, died in February 2019. Mr. Williams, in conjunction with OSU's

general counsel, convened a disciplinary hearing against Strauss in June 1996.  *See* SAC ¶¶ 6, 227, 2566.

Courts repeatedly permit depositions of those who are elderly or facing health complications.  *See In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988168, at *5 (N.D. Ohio Nov. 7, 2002) (denying discovery stay due to concerns about "witnesses becoming unavailable" because "several of the potential witnesses are elderly"); *Emsat Advanced Geo-Location Tech., LLC v. Cellco P'ship*, No. 4:08-CV-816, 2009 WL 10690283, at *2 (N.D. Ohio May 22, 2009) ("a stay may prejudice Plaintiffs' ability to offer testimony from certain witnesses given the age and health of those witnesses").

OSU hid Strauss' serial abuse for some *four decades*.  Any further delay risks prejudicing the Plaintiffs' case even further.  In addition, as OSU previously agreed, the public has a strong interest in learning how and to what extent this major public university facilitated an employee's serial sexual abuse of university students for two decades.  Deposing the Preservation Witnesses is essential to a fuller understanding of OSU's culpability.

## B.  The Depositions Plaintiffs Seek are Not Unduly Burdensome

From the Report, Plaintiffs have currently identified just **four** OSU Preservation Witnesses whose testimony is material and necessary at this stage in the case.  Four depositions are not unduly burdensome in the context of one of the largest sex abuse scandals in U.S. history.  OSU spent $6 million to hire Perkins Coie to investigate this matter.  Perkins Coie conducted 600 interviews of 520 people—none under oath.  Report at 18.  Questioning four more witnesses is not unduly burdensome and will serve to preserve key testimony.

## IV.  CONCLUSION

Deposing four former OSU employees who are of advanced age will preserve key

testimony that otherwise risks being lost. Plaintiffs respectfully request that the Court permit these depositions to proceed immediately.

                                                          Respectfully submitted,

DATED:  October 15, 2020               EMERY CELLI BRINCKERHOFF
                                                          ABADY WARD & MAAZEL LLP

By: /s/ Ilann M. Maazel
Ilann M. Maazel (admitted *pro hac vice*)
Debra L. Greenberger (admitted *pro hac vice*)
Marissa R. Benavides (admitted *pro hac vice)*
600 Fifth Avenue
New York, New York 10020
Phone: (212) 763-5000
Fax: (212) 763-5001
E-Mail: imaazel@ecbawm.com
E-Mail: dgreenberger@ecbawm.com
E-Mail: mbenavides@ecbawm.com

SCOTT ELLIOTT SMITH, LPA
Scott E. Smith (0003749)
Michael L. Dillard, Jr. (0083907)
5003 Horizons Drive, Suite 100
Columbus, Ohio 43220
Phone: (614) 846-1700
Fax: (614) 486-4987
E-Mail: ses@sestraillaw.com
E-Mail: mld@sestriallaw.com

Adele P. Kimmel (admitted *pro hac vice*)
Alexandra Z. Brodsky (admitted *pro hac vice*)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite 630
Washington, DC 20036
Phone: (202) 797-8600
Fax: (202) 232-7203
E-mail: akimmel@publicjustice.net

*Attorneys for Snyder-Hill Plaintiffs*
*Case No. 2:18-cv-00736*

<u>*/s/ Simina Vourlis* by /s/ per email authorization (Oct. 15, 2020)</u>
Simina Vourlis (0046689) (Trial Attorney)
The Law Office of Simina Vourlis
856 Pullman Way
Columbus, OH 43212
(614) 487-5900
(614) 487-5901 fax
svourlis@vourlislaw.com

Rex A. Sharp (admitted *pro hac vice*)
Ryan C. Hudson (admitted *pro hac vice*)
Larkin Walsh (admitted *pro hac vice*)
Sarah T. Bradshaw (admitted *pro hac vice*)
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

*Attorneys for Garrett Plaintiffs*
*Case No. 2:18-cv-00692*

**CERTIFICATE OF SERVICE**

A copy of this document was served by the Court's ECF System on all counsel of record on October 15, 2020, pursuant to Fed. R. Civ. P. 5(b)(2)(E).

/s/ Ilann M. Maazel
Ilann M. Maazel