**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN GARRETT, et al., | ) | Case No. 2:18-cv-00692 |
| Plaintiffs, | ) | Judge Michael H. Watson |
| v. | ) | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| Defendant. | ) | |
| SNYDER-HILL, et al., | ) | Case No. 2:18-cv-00736 |
| Plaintiffs, | ) | Judge Michael H. Watson |
| v. | ) | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| Defendant. | ) | |

**DEFENDANT THE OHIO STATE UNIVERSITY'S RESPONSE IN OPPOSITION
TO MOTION OF *GARRETT* AND *SNYDER-HILL* PLAINTIFFS
TO PERMIT LIMITED DISCOVERY DEPOSITIONS**

Defendant The Ohio State University ("Ohio State") respectfully provides the following response in opposition to the *Garrett* and *Snyder-Hill* plaintiffs' motion to permit additional discovery depositions (Doc. 173) at this time.

**I.    INTRODUCTION.**

As directed by this Court, Ohio State has been diligently working with Senior United States District Judge Michael R. Barrett, the Court-appointed mediator, to do the right thing for all survivors of Strauss' sexual abuse. So far, these efforts have been successful. First, on March 6, 2020, Ohio State reached a $40.9 million settlement with 162 survivors. Then, on October 12, 2020, Ohio State reached a $5.8 million settlement with an additional 23 survivors.

In total, Ohio State now has reached monetary settlements with 185 survivors for a total of $46.7 million. The 185 survivors were represented by counsel in ten law firms, all of whom have adhered to the Court's instructions to focus on the mediation.

Ohio State respectfully requests that the Court deny this current motion to permit additional discovery depositions (Doc. 173). Plaintiffs' motion does not assert the requested depositions are necessary for the mediation, and Judge Barrett has not declared a mediation impasse. Further, if mediation is not successful, Ohio State has pending motions to dismiss that will eliminate the need for these depositions. The Court should deny the requested discovery at this time, while the parties are engaged in mediation and Ohio State's motions to dismiss remain pending.

## II.     RELEVANT PROCEDURAL HISTORY.

On January 17, 2019, the Court directed the parties to mediate. *Snyder-Hill*, Order (Doc. 42). On March 15, 2019, the Court appointed Senior United States District Judge Michael R. Barrett to serve as the mediator. *See Garrett*, Order (Doc. 69).

On May 15, 2019, the Perkins Coie investigators submitted to Ohio State the 182-page Perkins Coie Report, which made specific findings regarding "whether 'the University' had knowledge of such allegations against Strauss during the relevant time period."[1] As plaintiffs' motion acknowledges, to uncover the truth, Ohio State "spent $6 million to hire Perkins Coie," which conducted "600 interviews of 520" people. Motion (Doc. 173) at 10. The Perkins Coie Report also recognized that, despite certain non-cooperative witnesses, "conflicting witness accounts and the attrition of witness recollection," "an exhaustive accounting of every allegation that we received concerning 'University knowledge' at all levels of personnel—would have

---

[1] Perkins Coie Report, Executive Summary at 1, available at
https://compliance.osu.edu/assets/site/pdf/Revised_report.pdf

reached the same factual conclusions that we reached here . . . ." *Id*. at 9. None of the persons plaintiffs now wish to depose were listed as "non-cooperative" witnesses.

Guided by its principles of transparency, Ohio State released to the public a partially redacted version of the Perkins Coie Report on May 17, 2019, and advocated for the public release of the full, unredacted Perkins Coie Report. *See Garrett*, Motion (Doc. 70). As stated in the Perkins Coie Report, Ohio State "made concerted efforts to accommodate us throughout the entirety of the Independent Investigation"; provided "complete access to University records, and to current University personnel"; "placed no restrictions on the Investigative Team"; "provided significant assistance to the Investigative Team as we undertook efforts to identify and locate former University personnel"; and "encouraged those former employees to cooperate" with the investigators.[2] In addition to the public release of the Perkins Coie Report, Ohio State also created a publicly accessible webpage containing updates regarding the investigation and over 17,500 pages of records relating to Strauss.[3] Concurrently with its public release of the Perkins Coie Report, Ohio State condemned Strauss' conduct; apologized to survivors for the university's failure at the time to stop the abuse; and expressed its appreciation to survivors for coming forward.[4]

On May 24, 2019, the Court denied Ohio State's motions to stay discovery "for the time being." *See Garrett*, Order (Doc. 90) at 2. The Order also clarified: "Nevertheless, the Court encourages the parties to focus their efforts on mediation, and any discovery pursued should be narrowly tailored for the purposes of mediation." *Id*.

On May 31, 2019, the *Snyder-Hill* and *Garrett* plaintiffs served 10 interrogatories and 18

---

[2] Perkins Coie Report at 8, available at https://compliance.osu.edu/assets/site/pdf/Revised_report.pdf
[3] *See* May 17, 2019 Ohio State news releases, campus-wide email, and email to alumni and former student-athletes, available at https://compliance.osu.edu/strauss-investigation.html.
[4] *See, e.g.*, https://news.osu.edu/independent-investigation-finds-ohio-state-doctor-richard-strauss-abused-students-from-1979-to-1998.

3

document requests upon Ohio State, most of which were not "narrowly tailored for the purposes of mediation." To facilitate the mediation, Ohio State provided informal responses to the discovery requests on June 13, 2019, prior to the beginning of the mediation, and formal responses on July 1, 2019. As part of its responses to these discovery requests, Ohio State also produced an additional 4,186 pages of insurance-related documents to plaintiffs on June 13, 2019. To date, Ohio State has not sought any affirmative discovery from plaintiffs so that the parties can focus their efforts on mediation.

On July 26, 2019, the *Garrett* and *Snyder-Hill* plaintiffs filed a motion requesting to depose current and former Ohio State employee physicians who purportedly refused to cooperate with the Perkins Coie investigation. The *Garrett* and *Snyder-Hill* plaintiffs asserted they needed to do so to "aid the mediation effort" because "the mediation is grounded on the incomplete Report." *Snyder-Hill*, Motion (Doc. 81) at 2.

On August 23, 2019, the Court granted the *Garrett* and *Snyder-Hill* plaintiffs' request to take the depositions of the non-cooperative Perkins Coie witnesses, finding that: "the limited discovery requested by Plaintiffs is relevant and tailored for the purposes of mediation." *Garrett*, Order (Doc. 108) at 2. However, the Court stated: "The Court is adamant, however, about avoiding a slippery slope that leads to full discovery during mediation." *Garrett*, Order (Doc. 108) at 2.

Pursuant to the Court's August 23, 2019 order, counsel for the *Garrett* and *Snyder-Hill* plaintiffs deposed Dr. John Lombardo, Dr. Ted Grace, Dr. Trent Sickles, Dr. William Malarkey, Dr. Roger Smith, and Dr. Forrest Smith on November 12, 2019, November 20, 2019, November 21, 2019, November 22, 2019, February 12, 2020, and February 13, 2020, respectively.

On February 24, 2020, despite the ongoing mediation, counsel for the *Garrett* and

*Snyder-Hill* plaintiffs placed on file with the Court what they labeled a "Notice of Mediation Termination and Request for Scheduling." *Snyder-Hill*, Notice (Doc. 133). The notice asked the Court to "allow litigation to resume" based on the purported grounds that "OSU has not participated in the mediation process in good faith," and "OSU will not take Plaintiffs' claims seriously until OSU's statute of limitations defense is defeated in a motion to dismiss." *Id*.

Less than two weeks later, on March 6, 2020, Ohio State and 162 plaintiffs in the majority of the pending cases announced a $40.9 million settlement (approximately $252,000 per-survivor average) following months of extensive negotiations through the Court mediation process. *See DiSabato*, Unopposed Motion to Establish 468B Qualified Settlement Fund (Doc. 41) at ¶¶ 1, 3. None of the plaintiffs in the settling cases opted out of the settlement. *Id*. at ¶ 4.

On April 17, 2020, the Court "partially lift[ed]" the "mediation stay" to allow "parallel mediation and litigation efforts" based on the mediator's recommendation. *See Snyder-Hill*, Order (Doc. 120), at 1. Specifically, the Court ordered, "[f]or administrative efficiency, each group of attorneys who represents multiple non-settling cases to choose one of the case numbers in which to file an Amended Complaint that incorporates all of the non-settling Plaintiffs whom that group of attorneys represents" and further ordered Ohio State to respond to the amended complaints. *Id*. at ¶¶ 3(b) & 5. The April 17, 2020 order also stated: "Nothing in this Order should be construed as an indication by the Court that mediation efforts should cease. The Court fully expects the parties to continue their mediation efforts under the direction of Judge Barrett." *Id*. at ¶ 6.

Pursuant to the Court's April 17, 2020 order, the *Garrett* and *Snyder-Hill* plaintiffs filed their respective consolidated amended complaints on May 27, 2020, and the *Nutter*, and *Ratliff* plaintiffs filed their consolidated amended complaints on June 9, 2020. *Garrett*, Consol. Am.

Compl. (Doc. 157); *Snyder-Hill*, SAC (Doc. 123); *Nutter*, Am. Compl. (Doc. 33); *Ratliff*, Am. Compl. (Doc. 18).  On June 30, 2020, Ohio State filed its motions to dismiss the *Nutter* and *Ratliff* amended complaints based on the two-year statute of limitations bar; Eleventh Amendment sovereign immunity as a bar to plaintiffs' Section 1983 claims; and failure to state a claim for unlawful retaliation under Title IX.  *See Nutter*, MTD (Doc. 36); *Ratliff*, MTD (Doc. 21). On July 7, 2020, Ohio State filed its motions to dismiss the *Garrett* and *Snyder-Hill* consolidated amended complaints based on the two-year statute of limitations bar and that five plaintiffs lacked standing to state Title IX claims against Ohio State because they were not Ohio State students or employees at the time of the abuse. *See Garrett*, MTD (Doc. 162); *Snyder-Hill,* MTD (Doc. 128).  The *Garrett* and *Snyder-Hill* plaintiffs filed their respective opposition briefs to Ohio State's motions to dismiss on August 4, 2020, and the *Nutter* and *Ratliff* plaintiffs filed their respective opposition briefs on August 17, 2020.  *See Garrett*, Opp. (Doc. 169); *Snyder-Hill*, Opp. (Doc. 133); *Nutter*, Opp. (Doc. 40); *Ratliff*, Opp. (Doc. 26).  All four opposition briefs scolded Ohio State and the 162 survivors for reaching the settlement on March 6, 2020.  Ohio State filed its reply briefs in support of its respective motions to dismiss on August 18, 2020, in the *Garrett* and *Snyder-Hill* cases, and on August 31, 2020, in the *Nutter* and *Ratliff* cases. *See Garrett*, OSU Reply (Doc. 170); *Snyder-Hill*, OSU Reply (Doc. 135); *Nutter*, OSU Reply (Doc. 42); *Ratliff*, OSU Reply (Doc. 28).

On October 13, 2020, Ohio State and an additional 23 plaintiffs in five cases announced a $5.8 million settlement (at the same approximately $252,000 per-survivor average as the March 6, 2020 settlement).  To date, the university has now settled with 185 survivors, represented by 10 different law firms, in a total of 17 cases, for a total settlement of $46.7 million.

In response to the October 13, 2020 settlement, counsel for the *Garrett* and *Snyder-Hill*

plaintiffs sent letters to the NCAA and the Big Ten; held a press conference; and gave media interviews. These counsel accused Ohio State of engaging in "delay tactics and broken promises" and "evading accountability" by settling "low," and requested that both organizations investigate and sanction Ohio State, and establish a fund for their clients.[5] *See* Exhibit A.

On October 15, 2020, two days after the second wave of settlements was announced, the *Garrett* and *Snyder-Hill* plaintiffs also filed the instant motion requesting leave to take the depositions of Andy Geiger, Dr. Manuel Tzagournis, Doris Charles, and Russ Hellickson on the grounds that the witnesses are of advanced age and may become unavailable or incapable of testifying. *Garrett*, Motion (Doc. 173). The motion omits the following emailed response from Ohio State's attorney to plaintiffs' counsels' inquiry regarding Ohio State's position on the request to take the depositions: "You should reflect that Ohio State will not be consenting to the depositions as we believe our efforts should be focused on the continuing mediation, and our time is better spent working towards a resolution." *See* October 14, 2020 email from Michael H. Carpenter to Stephen Estey, et al. (attached as Exhibit B).

Since the start of the mediation, Ohio State has continued to participate in good faith in the mediation process with all survivors, including the *Garrett* and *Snyder-Hill* plaintiffs, and remains committed to a resolution with the remaining plaintiffs, including a monetary resolution.

## III. DISCUSSION.

### A. The Requested Additional Depositions Are Not Necessary For Mediation.

The Court repeatedly has directed the parties to focus their efforts on mediation;

---

[5] https://osumetoo.com/osu-ncaa-big-ten-investigation/;
https://www.youtube.com/watch?v=PlXfqv9enlk&fbclid=IwAR1HmAOUYWUv58lTus-BR-N8EGye8BprZVw6dEx_XFdjY_M1WQm12LcAZf0;
https://www.facebook.com/watch/live/?v=376065796861438&ref=watch_permalink;
https://www.youtube.com/watch?v=VWQd8yvV2i4&feature=youtu.be&fbclid=IwAR267yNMAFRSsm1GXS3Y8_luBs9f0848wycrEp7BFGB7PGtcx-I63Vfapxc

7

instructed that any discovery pursued should be narrowly tailored for the purposes of mediation; and discouraged the filing of motions unnecessary to the furtherance of mediation unless and until Judge Barrett informs the Court that mediation has reached impasse.

The Court's April 27, 2020 order did not alter these prior, consistent directives regarding discovery.  In fact, it reinforced them.  Based on Judge Barrett's recommendation, the April 27, 2020 order only "partially lift[ed]" the "mediation stay" for the expressly stated "goal" of "administrative efficiency" in "reduc[ing] the amount of non-settling cases to, at most, one by each group of attorneys" by directing the non-settling plaintiffs who are represented by the same groups of attorneys to file amended, consolidated complaints in a single action and directing Ohio State to respond to the complaints.  Importantly, the April 17, 2020 order re-emphasized that "[n]othing in this Order should be construed as an indication by the Court that mediation efforts should cease.  The Court fully expects the parties to continue their mediation efforts under the direction of Judge Barrett."

Unlike their prior motion requesting leave to take the depositions of "non-cooperative" Perkins Coie witnesses, the *Garrett* and *Snyder-Hill* plaintiffs' current motion requesting leave to take additional depositions does ***not*** assert that the witnesses they seek to depose failed to cooperate with Perkins Coie or that the requested depositions are necessary for mediation.

If plaintiffs' motion is granted, it would open the door to additional requests by plaintiffs for full-scale discovery.  As plaintiffs' own motion states: "Undoubtedly there will be more Preservation Witnesses with highly relevant information whose testimony needs to be preserved" and additionally notes that the current depositions requested are merely a "reasonable start." *Garrett*, Motion (Doc. 173) at 8.  Because the discovery requested by plaintiffs is not necessary for the mediation, it exceeds the Court's prior orders permitting only narrowly tailored discovery

8

for purposes of the mediation. The motion should be denied.

### B. The Requested Discovery Is Inappropriate While Ohio State's Motions to Dismiss Remain Pending.

The Sixth Circuit consistently has found that "[l]imitations on pretrial discovery are appropriate where claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (district court did not abuse its discretion in staying discovery where dispositive motion involved legal determinations) (citation and quotation marks omitted); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 644 (6th Cir. 2005) (affirming district court's sua sponte stay of discovery because "it was not unreasonable for the district court to conclude that the case could be disposed of on the face of the complaint and that discovery would not affect the outcome").

Courts within the Sixth Circuit consistently recognize that a pending motion to dismiss based on lack of standing, a statute of limitations bar, or sovereign immunity involves "narrow," "fundamental," "clear-cut," and "straightforward legal issue[s]" warranting stays and limitations on discovery. *Marshall v. Mausser*, No. 1:13-CV-847, 2014 WL 4774377, at *3 (S.D. Ohio Sept. 24, 2014); *Lenker v. Nat'l Serv. Indus., Inc.*, No. 2:04-CV-0523, 2006 WL 642560, at *3 (S.D. Ohio Mar. 9, 2006); *Osman v. Mission Essential Pers.*, LLC, No. 2:11-CV-577, 2012 WL 1831706, at *2 (S.D. Ohio May 18, 2012); *Nabi Biopharmaceuticals v. Roxane Labs., Inc.*, No. 2:05-CV-0889, 2006 WL 3007430, at *2 (S.D. Ohio Oct. 20, 2006); *Miami Valley Fair Hous. Ctr., Inc. v. Preferred Real Estate Investments, LLC*, No. 2:15-CV-2737, 2017 WL 914735, at *9 (S.D. Ohio Mar. 8, 2017); *see also Falzone v. Licastro*, N.D.Ohio No. 1:10-CV-2918, 2011 WL 13242876, *1 ("Accordingly, the Court GRANTS Defendant Sweet's motion to stay discovery pending resolution of his motion to dismiss," which argued, among other things, that plaintiff's

civil rights claims were time-barred).

Plaintiffs' motion does not assert that the requested depositions are necessary to the statute of limitations, standing, or sovereign immunity defenses asserted in Ohio State's motions to dismiss. In fact, the *Snyder-Hill* plaintiffs themselves took the position in their jointly-filed Rule 26(f) Report that all discovery should occur after "the Court's entry [] ruling on Defendant's Motion to Dismiss." *See* Rule 26(f) Report (Doc. 20), at ¶¶ 2, 7(a), 7(c). The simple truth is that plaintiffs' asserted reason for requesting additional depositions—that "the events at issue began in the late 1970s," sixty witnesses have died, and those witnesses who are still alive are "now elderly" and "may become unavailable or incapable of testifying to the facts that they possess," Motion (Doc. 173) at 4, 9—further underscores the fundamental purpose behind statutes of limitations. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974) (explaining that the statute of limitations is "designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."). Plaintiffs' discovery request should be denied while mediation proceedings are ongoing and Ohio State's motions to dismiss are pending.

### IV. CONCLUSION.

The Court directed the parties to mediate. That mediation has been successful for 185 survivors. Ohio State still hopes mediation will succeed and the remaining plaintiffs will agree to settle. For the foregoing reasons, the Court should deny the *Garrett* and *Snyder-Hill* plaintiffs' motion to permit discovery depositions (Doc. 173).

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com

Special Counsel for Defendant
The Ohio State University

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on November 5, 2020. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for
Defendant The Ohio State University
