THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN GARRETT, et al., | ) | |
| | ) | Case No. 2:18-cv-00692 |
| Plaintiffs, | ) | |
| | ) | Judge Michael H. Watson |
| v. | ) | |
| | ) | Chief Magistrate Judge Elizabeth P. Deavers |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| STEVE SNYDER-HILL, et al., | ) | Case No. 2:18-cv-00736 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| NICHOLAS NUTTER, et al. | ) | Case No. 2:19-cv-02462 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ROCKY RATLIFF, | ) | Case No. 2:19-cv-04746 |
| | ) | |
| Plaintiffs, | ) | Judge Michael H. Watson |
| | ) | |
| v. | ) | Chief Magistrate Judge Elizabeth P. Deavers |
| | ) | |
| THE OHIO STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| JOHN DOES 151-166, ) <br> ) <br>         Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE OHIO STATE UNIVERSITY, ) <br> ) <br>         Defendant. ) <br> _____) | Case No. 2:20-cv-03817 <br><br> Judge Michael H. Watson <br><br> Chief Magistrate Judge Elizabeth P. Deavers |

**DEFENDANT THE OHIO STATE UNIVERSITY'S MOTION FOR ORDER REGARDING SETTLEMENT PROGRAM CONSULTING AGREEMENT**

In response to plaintiffs' counsel, Scott Smith's May 27, 2021 public records request to defendant The Ohio State University ("Ohio State"), and in furtherance of Ohio State's continued efforts to be transparent in regard to the Strauss Individual Settlement Program that was publicly initiated on May 7, 2021, in the above-captioned actions, *see* https://StraussIndividualSettlementProgram.com/, Ohio State respectfully requests that the Court enter an Order:

(1) Permitting Ohio State to submit to the Court for its *in camera* inspection a copy of the privileged Settlement Program Consulting Agreement ("Consulting Agreement") entered into on May 3, 2021, between Ohio State's outside counsel in the above-captioned actions, Carpenter Lipps & Leland LLP ("CLL"), and CLL's consultant for the Strauss Individual Settlement Program, Wolf Garretson LLC;

(2) Directing Ohio State to provide to Scott Smith (and to one representative from each plaintiffs' counsel in the other four above-captioned actions, upon the request of such counsel), under a "Highly Confidential—Attorneys' Eyes Only" designation, a copy of the privileged Consulting Agreement; and

(3) Finding that such limited disclosure of the privileged Consulting Agreement by Ohio State does not constitute a waiver of the attorney-client privilege or work product doctrine as to any other documents or communications related to the Consulting Agreement.

With this motion, Ohio State is providing a copy of the privileged Consulting Agreement in a sealed envelope to the Court for its *in camera* inspection, pursuant to and in compliance with

the procedures set out in Southern District of Ohio Local Rule 5.2.1(b) governing documents submitted for *in camera* inspection.

The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support. For the Court's convenience, a proposed order granting the motion is attached.

    Respectfully submitted,

    DAVID A. YOST
    ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
    Michael H. Carpenter (0015733) (Trial Attorney)
    Timothy R. Bricker (0061872)
    David J. Barthel (0079307)
    CARPENTER LIPPS AND LELAND LLP
    280 Plaza, Suite 1300
    280 North High Street
    Columbus, OH 43215
    E-mail: carpenter@carpenterlipps.com
          bricker@carpenterlipps.com
          barthel@carpenterlipps.com

    Special Counsel for Defendant The Ohio State University

**MEMORANDUM IN SUPPORT**

I. **BACKGROUND.**

Plaintiffs in the above-captioned five cases are former male students of The Ohio State University ("Ohio State") who are suing Ohio State relating to the conduct of former Ohio State physician Dr. Richard Strauss.

A. **The Court's Efforts Regarding Settlement.**

This Honorable Court has both encouraged and facilitated settlement. In this regard, the Court previously entered an order on May 24, 2019, to facilitate the mediation that was scheduled for June 15, 2019. The May 24, 2019 order directed Ohio State to provide to "one representative from each Plaintiffs' counsel an unredacted version of the Perkins Coie report ('Report'), and stated "[t]he Report shall be designated 'Highly Confidential—Attorneys' Eyes Only.'" *See Garrett*, Opinion and Order (Doc. 90) at 2.

At the status conference held the same day, the Court stated its "judicial purpose" in ordering the disclosure of the unredacted Perkins Coie Report was to facilitate settlement. *Garrett*, Transcript of Status Conference (Doc. 91) at 6:17-25, 14:4-5, 14-15. Ohio State complied with both the May 24, 2019 and June 15, 2019 orders.

B. **The Strauss Individual Settlement Program And The Consulting Agreement.**

On May 3, 2021, as part of its continued efforts to bring closure and resolution to Strauss survivors, Ohio State announced that it was offering a "new public settlement program" through which eligible plaintiffs and their counsel in the five above-captioned actions who had not resolved their claims against Ohio State by May 1, 2021, could do so on an individual basis (the "Program"). *See* Notice of Intent to Establish Strauss Individual Settlement Program ("Notice of Intent"), *Garrett* (Doc. 176), *Snyder-Hill* (Doc. 150), *Nutter* (Doc. 43), *Ratliff* (Doc. 29), and *John Does 151-166* (Doc. 24).

Ohio State's outside counsel, Carpenter Lipps & Leland LLP ("CLL"), retained Matt Garretson, the Special Master in the March 6, 2020 and October 12, 2020 settlements, as a consultant regarding the design of the Program and to independently administer the Program. *See* Notice of Intent, *id.*, at ¶ 9; https://StraussIndividualSettlementProgram.com/. On May 3, 2021, in connection with Mr. Garretson's services related to the Program, Mr. Garretson's firm, Wolf Garretson LLC, and CLL entered into a Settlement Program Consulting Agreement ("Consulting Agreement") pursuant to which CLL retained Mr. Garretson and his firm as a consultant. Because the Consulting Agreement is protected by the attorney-client privilege and the work product doctrine, Ohio State is providing a copy of the Consulting Agreement to the Court for its *in camera* inspection with this motion, pursuant to S.D. Ohio Civ. R. 5.2.1(b).

On May 7, 2021, Ohio State publicly announced the details of, and initiated, the Program. Since May 7, 2021, all non-privileged documents, communications, and forms for the Program have been publicly available at https://StraussIndividualSettlementProgram.com/. Mr. Garretson's link is provided in the Program for purposes of plaintiffs' counsel contacting him directly. The deadline for eligible plaintiffs in the five above-captioned actions to participate in the Program through their counsel is September 4, 2021, at midnight Eastern Standard Time.

    **C.**    **The May 27, 2021 Public Records Request To Ohio State.**

On May 27, 2021, notwithstanding the public website for the Program and the link to Mr. Garretson provided in the Program, one of the counsel for plaintiffs in the *Snyder-Hill* case, Scott Smith, served a public records request upon Ohio State, with a copy to Ohio State's outside counsel, CLL. *See* attached Exhibit A. Mr. Smith's public records request asked for the following:

1- All contracts or agreements with Matt Garretson and/or Wolf Garretson concerning the administration of the Strauss Individual Settlement Program;

2- All documents or communications concerning the criteria, factors, or allocation formula Matt Garretson (including Mr. Garretson himself, the firm of Wolf

>   Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) will use to determine the Individual Settlement Amounts for those that participate in the Strauss Individual Settlement Program, including but not limited to allocating award amounts within the tier range and the Extraordinary Injury Fund award;
>
> 3- All documents authored by, or shared with, Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) concerning the Tier Caps (e.g., the calculation of the Tier Caps or the potential impact of the Tier Caps on reducing the tier range) for the Strauss Individual Settlement Program;
>
> 4- All documents authored by, or shared with, Matt Garretson (including Mr. Garretson himself, the firm of Wolf Garretson, and any agent or employee of Mr. Garretson and/or Wolf Garretson) concerning the Extraordinary Injury Fund Total Cap (e.g., the calculation of the Extraordinary Injury Fund Total Cap or the potential impact of the Extraordinary Injury Fund Total Cap on reducing the Extraordinary Injury Fund Individual Range Cap) for the Strauss Individual Settlement Program; and
>
> 5- All settlement agreements OSU has entered into concerning allegations related to Dr. Richard Strauss after the master settlement agreement(s) entered into on or about March 6, 2020.

*Id.* (footnote omitted).

Ohio State does not have any non-privileged records responsive to parts #1, #2, #3, and #4 of the above public records request, other than the information that has been publicly accessible since May 7, 2021, at www.StraussIndividualSettlementProgram.com. The publicly accessible documents on the website contain all the material information for the Program. On June 11, 2021, Ohio State provided to Mr. Smith the Master Settlement Agreement and Release entered into on October 12, 2020, as responsive to part #5 of the public records request.

**D.    Ohio State's Current Request To The Court Regarding The Consulting Agreement.**

The Consulting Agreement is responsive to part #1 of the public records request seeking "[a]ll contracts or agreements with Matt Garretson and/or Wolf Garretson concerning the administration of the Strauss Individual Settlement Program." The Consulting Agreement,

3

however, contains communications and information protected by the attorney-client privilege and the work product doctrine, and Ohio State has denied the public records request for the Consulting Agreement on that basis.

Nevertheless, in furtherance of Ohio State's continued efforts to be transparent and with the hope of facilitating settlement, Ohio State desires to provide the Consulting Agreement to Mr. Smith (and to one representative from each plaintiffs' counsel in the other four above-captioned actions, upon the request of such counsel). While Ohio State does not believe a limited disclosure of the privileged Consulting Agreement would constitute a waiver of the attorney-client privilege or work product doctrine as to any other documents or communications related to the Consulting Agreement, out of an abundance of caution, Ohio State respectfully requests that the Court enter an order:

(1) Permitting Ohio State to submit to the Court for its *in camera* inspection a copy of the privileged Consulting Agreement;

(2) Directing Ohio State to provide to Scott Smith (and to one representative from each plaintiffs' counsel in the other four above-captioned actions, upon the request of such counsel), under a "Highly Confidential—Attorneys' Eyes Only" designation, a copy of the privileged Consulting Agreement; and

(3) Finding that such limited disclosure of the privileged Consulting Agreement by Ohio State does not constitute a waiver of the attorney-client privilege or work product doctrine as to any other documents or communications related to the Consulting Agreement.

II. **DISCUSSION.**

    A. **The Court May Enter The Requested Order.**

Rule 1 of the Federal Rules of Civil Procedure provides that such rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In furtherance of those goals, "[d]istrict courts unquestionably have substantial inherent power to manage their

4

dockets." *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir. 1993) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 629–30 (1962)); *see also In re Univ. of Michigan*, 936 F.3d 460, 463 (6th Cir. 2019) ("Congress has given district courts great control over their dockets.").

In regard to settlement specifically, "the Federal Rules of Civil Procedure provide . . . the valuable tool of encouraging parties to settle when appropriate." *In re Univ. of Michigan*, 936 F.3d at 463 (citing Fed. R. Civ. P. 16). "The utilization of procedures designed to facilitate settlement whenever possible is expressly encouraged by Rule 16 [of the Federal Rules of Civil Procedure], for a case that settles obviously consumes much less of the court's scarce resources than a case that proceeds to a full trial on the merits." *In re NLO, Inc.*, 5 F.3d at 157.

Rule 83 of the Federal Rules of Civil Procedure additionally authorizes a federal district court to "adopt and amend rules governing its practice." Fed. R. Civ. P. 83(a)(1). Such local rules "have the force of law." *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010); *Hayes v. Comm'r of Soc. Sec.*, 895 F.3d 449, 453 (6th Cir. 2018).

Both the Southern District of Ohio and this Honorable Court have recognized that settlements serve a critical role in the judicial process and have promulgated rules, supplemental rules, and standing orders that are expressly designed to facilitate the settlement of cases. *See* Southern District of Ohio Local Rule 16.3 (authorizing the Court to assign cases to an alternative dispute resolution ("ADR") process and to consult with counsel regarding ADR efforts); Southern District of Ohio Supplemental Procedures for Alternative Dispute Resolution, Section 1.0 (stating ADR procedures are "designed to achieve the early, cost-effective, and fair resolution of civil cases" and authorizing the presiding district or magistrate judge to "evaluate the case" for ADR processes "throughout the pendency of the civil action"); Standing Orders of The Honorable Michael H. Watson, Section II, at 7-8 (providing that "the Court may schedule a settlement conference at any time in order to facilitate settlement," and "counsel may request the Court

schedule a settlement conference at any time.").

### B. The Consulting Agreement Is Protected By The Attorney-Client Privilege.

Ohio Revised Code § 149.43(A)(1)(v) excepts from disclosure records protected by the attorney-client privilege. *See State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 24. "The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of those records." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 27 (citing *State ex rel. Besser v. Ohio State Univ*. 87 Ohio St.3d 535, 542, 721 N.E.2d 1044, 1050 (Ohio 2000)).

Ohio State's outside counsel, CLL, retained Wolf Garretson LLC as a consultant relating to the resolution of legal claims in the Strauss litigation through the Program. The attorney-client privilege extends to consultants like Wolf Garretson LLC who assist other attorneys. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); *Cooey v. Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (recognizing that the attorney-client privilege "must include all the persons who act as the attorney's agents"); *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27 ( "[t]he attorney-client privilege does not require the communication to contain purely legal analysis or advice to be privileged," but "if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged") (citations, internal quotation marks and brackets omitted).

Specifically relevant here, the attorney-client privilege extends to contracts or agreements retaining consultants such as Wolf Garretson LLC. *See Graff v. Haverhill N. Coke Co.*, No. 1:09-

CV-670, 2012 WL 5495514, *10 (S.D. Ohio Nov. 13, 2012) (outside counsel's letter retaining third-party consultant to provide legal advice was protected by attorney-client privilege where the letter included "the motive of the client in seeking representation [and] the specific nature of the services" to be provided); *State ex rel. ESPN v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 38 ("[T]here is no requirement in public-records mandamus cases that public offices or officials must 'conclusively establish' the privilege by producing agreements retaining agents or joint-defense agreements with attorneys representing other clients"). Accordingly, the Consulting Agreement is protected by the attorney-client privilege.

### C. The Consulting Agreement Is Protected By The Work Product Doctrine.

In addition to the attorney-client privilege, the Consulting Agreement is protected by the attorney work product doctrine. The work product doctrine provides a separate, and in many respects "broader" protection from disclosure than the attorney-client privilege. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)). The work product doctrine not only protects "materials obtained or prepared in anticipation of litigation, but also the attorney's mental impressions, including thought processes, opinions, conclusions, and legal theories." *Konecranes Glob. Corp. v. Mode Tech (Beijing) Co.*, No. CV 2:19-MC-41, 2020 WL 3265538, at *3 (S.D. Ohio June 17, 2020) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)); *see also In re Election of Nov. 6 1990 for Off. of Atty. Gen. of Ohio*, 57 Ohio St. 3d 614, 615, 567 N.E.2d 243, 244 (1991) (notes prepared by agents of attorney at attorney's direction were protected by work product doctrine). Accordingly, the Consulting Agreement also constitutes attorney work product.

### D. Ohio State Seeks A Court Order Out Of An Abundance Of Caution To Preserve Privilege And Work Product Protections.

While Ohio State's disclosure of the privileged Consulting Agreement would waive such

7

protections as to the Consulting Agreement itself, such limited disclosure would not constitute a waiver of such protections as to any other documents or communications related to the Consulting Agreement.

The Sixth Circuit and Southern District of Ohio have stated that, in determining the scope of waiver, "the District Court must be guided by fairness concerns" as set out in Federal Rule of Evidence 502. *See In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d 251, 256 (6th Cir. 1996); *Itskin v. Gibson*, No. 2:10-CV-00689, 2011 WL 5326165, at *5 (S.D. Ohio Nov. 7, 2011), *objections overruled*, No. 2:10-CV-689, 2012 WL 787400 (S.D. Ohio Mar. 9, 2012) ("[W]hen waiver does occur, the Federal Rules of Evidence provide guidance as to whether waiver of certain disclosed materials constitutes waiver of undisclosed materials involving the same subject matter") (citing Fed. R. Evid. 502).

"The advisory committee's note [to Federal Rule of Evidence 502] states that 'a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary.'" *Irth Sols., LLC v. Windstream Commc'ns LLC*, No. 2:16-CV-219, 2017 WL 3276021, at *15 (S.D. Ohio Aug. 2, 2017), *objections overruled*, No. 2:16-CV-219, 2018 WL 575911 (S.D. Ohio Jan. 26, 2018) (finding no subject matter waiver where "Defendant did not put protected information into this litigation in a selective, misleading, and unfair manner."). In other words, "a party should not be able to use such communications as both sword and a shield, selectively disclosing only favorable portions of the communications on that subject and concealing the remainder." *Waters v. Drake*, No. 2:14-CV-1704, 2016 WL 8118193, at *3 (S.D. Ohio Feb. 4, 2016); *see also In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d at 256 (citing *In re Dayco Corp. Derivative Securities Litigation*, 99 F.R.D. 616, 619 (S.D. Ohio 1983) ("Generally, waiver of a privilege occurs when actions by the

holder would make it *unfair* to insist that the privilege still exists.") (emphasis added); *In re Von Bulow*, 828 F.2d 94, 102 (2nd Cir.1987) ("Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication—one not subsequently used by the client in a judicial proceeding to his adversary's prejudice—does not waive the privilege as to the undisclosed portions of the communications.")); *Waters*, 2016 WL 8118193, at *3 (finding "no merit in the argument that the public disclosure of the [] Report . . . somehow acted as a waiver of privilege with respect to communications about that report as it was being drafted; agreeing that "[i]t is generally held that the public disclosure of a document—even a voluntary one—does not waive the attorney-client privilege as to the subject matter of the document itself, but, at most, to any privileged communications which are revealed in the public document.").

Here, Ohio State does not seek to selectively disclose the privileged Consulting Agreement in order to gain an unfair advantage over, or to disadvantage or prejudice, the Strauss survivors in the litigation or otherwise. To the contrary, Ohio State is exploring options for the disclosure of the Consulting Agreement because Mr. Smith has expressly requested the Consulting Agreement pursuant to a public records request to Ohio State. Although Ohio State cannot produce the Consulting Agreement as a public record because it is protected by the attorney-client privilege and the work product doctrine, Ohio State is attempting to accommodate Mr. Smith in a way that both achieves transparency and preserves privilege and work product protections.

Accordingly, while Ohio State's limited disclosure of the privileged Consulting Agreement would not constitute a waiver of the attorney-client or the work product doctrine as to any other documents or communications related to the Consulting Agreement, out of an abundance of caution, Ohio State requests that the Court enter an order consistent with its May 24, 2019 and June 15, 2019 orders regarding disclosure of the Perkins Coie Report. *See Garrett*, Opinion and Order, Docs. 90 and 132.

9

**III.     CONCLUSION.**

For the foregoing reasons, Ohio State respectfully requests entry of an order:

(1)     Permitting Ohio State to submit to the Court for its *in camera* inspection a copy of the privileged Consulting Agreement;

(2)     Directing Ohio State to provide to Scott Smith (and to one representative from each plaintiffs' counsel in the other four above-captioned actions, upon the request of such counsel), under a "Highly Confidential—Attorneys' Eyes Only" designation, a copy of the privileged Consulting Agreement; and

(3)     Finding that such limited disclosure of the privileged Consulting Agreement by Ohio State does not constitute a waiver of the attorney-client privilege or work product doctrine as to any other documents or communications related to the Consulting Agreement.

 

Respectfully submitted,

DAVID A. YOST
ATTORNEY GENERAL OF OHIO

By:     /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
   bricker@carpenterlipps.com
   barthel@carpenterlipps.com

Special Counsel for Defendant The Ohio State University

10

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on June 24, 2021. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Trial Attorney for defendant The Ohio State University