IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN (COLUMBUS) DIVISION

| | |
|---|---|
| Brian Garrett, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| vs. | Civil Case 2:18-cv-00692-MHW-EPD |
| The Ohio State University, | Judge Michael H. Watson |
| Defendant. | Chief Magistrate Judge Elizabeth P. Deavers |
| | **CONSOLIDATED CLASS ACTION** |
| Michael Alf, et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| vs. | Civil Case: 2:21-cv-02542-MHW-EPD[1] |
| The Ohio State University, | Judge Michael H. Watson |
| Defendant. | Chief Magistrate Judge Elizabeth P. Deavers |
| | **CLASS ACTION** |

**PLAINTIFFS' CONSOLIDATED MOTION FOR RECUSAL
AND TO TRANSFER VENUE WITHIN THE DISTRICT PER 28 U.S.C. § 1404(b)**

---

[1] The captioned cases are related to Cases No. 18-cv-736-MHW-EPD; 19-cv-2462-MHW-EPD, 19-cv-4746-MHW-EPD, 19-mc-38, 20-cv-3817-MHW-EPD, 21-cv-2120-MHW-EPD, 21-cv-2121-MHW-EPD, 21-cv-2527-MHW-EPD, 21-cv-2542-MHW-EPD, 21-cv-2562-MHW-EPD, 21-cv-3838-MHW-EPD, 21-cv-4254-MHW-EPD, and 21-cv-4340-MHW-EPD.

Judicial impartiality is one of the most fundamental elements of the justice system. Litigants must be able to depend upon judges and fact finders to be disinterested and unbiased when deciding matters related to a lawsuit. Impartiality is so critical that Congress prohibits even the appearance of impropriety as an objective requirement for the judiciary. 28 U.S.C. § 455(a).

For three years, contrary to Federal Rule 1, and despite notification that court-ordered mediation failed and material witnesses were becoming unavailable, this case has been stalled—literally, stayed. Now, with a newspaper report of a direct financial conflict, the prospect that a new judge will be appointed and resolve the Rule 12(b)(6) motions will mean further delay. Justice delayed is justice denied. All the while OSU, having enabled and then covered up the largest sex abuse scandal in the history of higher education, continues to pursue football championships and carry on like nothing has happened. Hundreds of victims remain in the litigation, still waiting for their case against OSU to be heard. While these litigants (and the press) have previously vilified the other side for causing delay, the role of the Court in administering the rules "to secure the just, speedy and inexpensive determination of every action" has become an object of scrutiny.

When the hundreds of plaintiffs filed these many cases against OSU, including the above captioned class actions, they did so believing that, although OSU had wronged them and covered up its failures, they would get a fair opportunity in the federal courts to hold OSU accountable. It is time to ensure that there is no question about the impartiality of the Court, and that this case will be heard by someone with no conflicts, direct or indirect, actual or apparent.

Clearly, the impropriety raised in the press here requires Judge Watson's recusal. But whether the conflict is real or apparent, the fact is that these plaintiffs, who were abused as teenage boys by the combined power of OSU and its team doctor, will never get justice in Columbus. As Judge Watson has noted on the record, "every member of this bench probably, ha[s] at one time

or another served as an adjunct professor of Ohio State." This has been essentially confirmed by other judges, who have consistently recused when The Ohio State University is involved. Plaintiffs respectfully request that, in addition to granting their request to recuse, this Court, in the interest of justice, transfer this and all related cases to a location in this district where both parties will receive the impartial consideration to which they are entitled. The victims deserve a level playing field for the first time in their lives.

## RELEVANT FACTUAL BACKGROUND

### A. Procedural History of the Case

1. The above cases are putative class actions brought under Title IX by former male students of The Ohio State University ("OSU") who were sexually assaulted, battered, molested, and/or harassed by long-time OSU assistant professor and practicing physician Dr. Richard Strauss.

2. Plaintiffs allege—and later OSU-funded Perkins Coie Report confirmed—that OSU's pre-assault failures heightened their risk of being abused, and that OSU's policies and practices enabled, contributed to, and resulted in students in fact suffering sexual discrimination, harassment, and assault by Dr. Strauss from 1978 to 1998. Appropriate persons at OSU had actual knowledge of the sexual discrimination, harassment, and assault by Strauss, yet OSU was deliberately indifferent to these known acts, and ignored and concealed knowledge and reports of abuse until they recently became public in the spring of 2018.

3. A year-long independent investigation by law firm Perkins Coie concluded, in a report published in May 2019, that Strauss sexually abused at least 177 male students and athletes over his twenty-year tenure,[2] and that OSU athletic directors, assistant athletic directors, coaches,

---

[2] Given the 300-some individual plaintiffs and class representatives remaining in the pending

3

trainers, administrators, physicians, and health officials knew about sex abuse reports made by students against Strauss and took no action to stop him but instead whitewashed his legacy for another twenty years.[3]

4. Plaintiffs filed their original Complaint on July 16, 2018 (Doc. 1), which continues to toll the Statute of Limitations for all putative members of class.[4]

5. Plaintiffs filed an Amended Complaint on October 26, 2018. (Doc. 33).

6. On November 9, 2018, Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint under Rule 12(b)(6), arguing the entire case should be barred by the statute of limitations. (Doc. 38).

7. Discovery was stayed at OSU's request. (Doc. 46).

8. On January 17, 2019, the Court held a hearing at which assigned Judge Michael H. Watson disclosed for the first time that he was an adjunct professor at defendant OSU's law school and was currently teaching. *See* Doc. 52, attached as **Exhibit 1** ("Jan. 2019 Hrg. Tr.")).

9. The Court advised that:

---

actions, "at least" was quite an understatement.

[3] *See* Funk, Markus and Caryn Trombino, Perkins Coie LLP, *Report of the Independent Investigation, Sexual Abuse Committed by Dr. Richard Strauss at The Ohio State University*, May 15, 2019, (hereinafter "Perkins Coie Report").

[4] Under *American Pipe*, the operative date of the filing of the Title IX claims for each and every member of the class (named and unnamed) is July 16, 2018, the date of the original class action complaint. The filing tolls the statute of limitations until class certification is denied. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974) (footnote omitted) ("[T]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."); *see also Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 346–47 (1983) (extending doctrine, holding "all members of the putative class [may] file individual actions in the event that class certification is denied, provided ... that those actions are instituted within the time that remains on the limitations period."); *accord In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 478 (6th Cir. 2013).

4

>   if any party "want[ed] to take shots, you can take shots. I'm thinking that my intention is to stay on the case and, nonetheless, I'm letting you know in case you want to raise something.
>   The Court does not intend to rule anytime soon on the motions to stay discovery or the motions to dismiss. The Court intends that we will mediate these cases and that we will do so beginning within the next 30 days.
>
> (Jan. 2019 Hrg. Tr. at 3:25 – 4:7).

10. The Court further advised that "every member of this bench probably, have at one time or another served as an adjunct professor of Ohio State." Jan. 2019 Hrg. Tr. at 3:22-24.

11. In an order following the hearing, the Court directed the parties to participate in mediation, and held "in abeyance" a ruling on Defendant's Motion to Dismiss. (Doc. 50).

12. During this time, many related actions were filed against OSU arising from its role in the sexual abuse of its students, and the cases were consolidated. (Doc. 132.) Some of the later-filed cases were resolved in mediation and were settled. Others, including the above-captioned, first filed *Garrett* case, were not. The plaintiffs in these cases repeatedly requested that the Court reinstate a case schedule and permit parallel mediation and litigation efforts, including permitting limited discovery and ruling on the motion to dismiss. (*See, e.g.*, Docs. 81, 138, 141, 152.)

13. On April 17, 2020, after a year of fruitless mediation, the Court entered an order partially lifting the stay and directing that an amended consolidated complaint be filed as to the non-settling cases. (Doc. 151.)

14. On May 27, 2020, Plaintiffs in the above-captioned *Garrett* case filed a consolidated amended complaint, asserting the same Title IX claim. (Doc. 157).

15. On July 7, 2020, Defendant OSU again filed its Motion to Dismiss based on the statute of limitations (Doc. 162); Plaintiffs responded (Doc. 169) and OSU replied (Doc. 170).

16. Plaintiffs continued to seek discovery, on the basis that deponents with material knowledge were becoming infirm or dying, but only limited discovery has been permitted, and

5

confidentiality restrictions have been imposed throughout the pendency of the mediation. Doc. 173.

17. Despite the failure of mediation, and within days of the Mediator finally informing this Court of the same, OSU filed on the Court's public docket on May 3, 2021, an unprecedented "notice of intent" to establish an "individual settlement program." (Doc. 176.)

18. OSU did not and has not communicated with any counsel for the 245+ represented survivors about individualized offers of settlement.

19. This Court held a status conference on May 13, 2021. *See* Doc. 179, attached as **Exhibit 2** ("May 2021 Hrg. Tr.").

20. At this hearing, the Court said:

   a. There was no need for oral argument on the pending motion to dismiss. *Id*. at 4:4-5.

   b. "The Court will be issuing its ruling on the pending motions to dismiss no later than the end of September of 2021." *Id*. at 3:21-22.

   c. OSU's settlement program, which was set to close the first week of September, is "important[t]" and a "good thing." *Id*. at 3:16-17;

   d. Finally, the Court stated, "I encourage settlement early and often, folks." Id. at 4:10.

21. The window for participating in OSU's Individual Settlement Program closed on September 4, 2021.[5]

---

[5] Under the terms of the settlement program, individual plaintiffs submitting to settlement were required to submit irrevocable releases of their claims against OSU, without knowing the amount of their settlement, if any. See https://straussindividualsettlementprogram.com/wp-content/uploads/2021/05/protocol-strauss-individual-settlement-program.pdf.

6

**Court's disclosure of information about Judge Watson's wife's on-going business relationship with Defendant OSU.**

22. On September 9, 2021, this Court scheduled and held a few hours later a telephone conference with all parties. *See* Doc. 191, restricted transcript ("Sept. 2021 Hrg. Tr.").

23. In that conference, the Court notified the parties about a reporter's inquiry that caused the Court (Watson, J.) to provide previously-undisclosed information concerning Judge Watson's wife's business.

24. Specifically, the Court disclosed that Judge Watson's wife owns a business that manufactures and sells flags, including The Ohio State University ("OSU") flags; the Court disclosed that her business has a licensing agreement with Defendant and pays OSU a 12 percent royalty on each authorized OSU-trademarked product that the business sells.

25. The Court noted that "neither my wife nor I have a financial interest in the Ohio State University as defined by the [Judicial Code of Conduct]" and that recusal from cases involving OSU are therefore not mandated, but "the fact that a member of the public has inquired about it leads me to believe that the appearance of impropriety may be implicated."

26. Since then, *NBC News* and *The Columbus Dispatch* have reported that, separate from the licensing agreement, OSU made certain financial payments to Judge Watson's wife's business, information that (if true) has not yet been disclosed by the Court or by Defendant OSU.[6]

27. The *Columbus Dispatch* reported a statement from OSU spokesman Ben Johnson that in 2021, OSU paid Judge Watson's wife's business less than $16,000. It also reported that

---

[6] https://www.nbcnews.com/news/us-news/judge-presiding-over-ohio-state-sex-abuse-scandal-lawsuits-flagged-n1278935, attached as **Exhibit 3** ("NBC article"); https://www.dispatch.com/story/news/2021/09/13/federal-judge-gives-plaintiffs-option-recuse-him-strauss-cases/8316905002/ Attached as **Exhibit 4** ("*Dispatch* article").

Judge Watson is paid $13,500 for teaching a course at OSU's law school, typically each spring.[7] Plaintiffs do not know what, if any, payments Defendant made to the Court's family business in prior years during which this action, and others, have been pending.

28. The reported payments of $16,000 from OSU to Judge's Watson's wife's business in 2021, plus the $13,500 reported payment to Judge Watson himself for service as an adjunct professor total $29,500, over 13% of a federal district court judge's salary for that same year.[8]

**B. Other Active Judges in the Eastern Division at Columbus.**

29. In addition to Judge Watson, the active Article III judges of the Southern District of Ohio serving in the Eastern Division at Columbus currently include: Hon. Algenon L. Marbley; Hon. Edmund A. Sargus, Jr.; and Hon. Sarah D. Morrison.[9]

30. Publicly available sources confirm the connections that members of the bench in the Southern District of Ohio, Columbus Division, have with defendant OSU.

31. Chief Judge Marbley has been employed as an adjunct professor at OSU's Moritz College of Law since 1998, and served on its Board of Trustees from 2005 - 2015.[10]

32. Judge Sargus is employed as an adjunct professor at OSU's Moritz College of Law since 2005, teaching Trial Advocacy in the fall and Evidence in Trials in the spring.[11]

33. Judge Morrison, confirmed to the bench in June 2019, received her undergraduate degree from OSU.

---

[7] **Ex. 4**, *Dispatch* article.
[8] See https://www.uscourts.gov/judges-judgeships/judicial-compensation, noting district judge salary in 2021 is $218,600.)
[9] https://www.ohsd.uscourts.gov/content/columbus
[10] https://www.ohsd.uscourts.gov/biomarbley
[11] https://www.ohsd.uscourts.gov/BioSargus

34. Judges Marbley and Sargus have publicly announced that they regularly recuse from cases in which OSU is a party.[12]

35. In contrast, of the three active Article III judges in the Western Division at Cincinnati, at least two have no apparent connections to the Ohio State University that might implicate their impartiality.[13]

36. OSU's pending Motion to Dismiss the Consolidated Complaint (Doc. 162) does not dispute the sufficiency of the allegations establishing its liability under federal Title IX.

37. The median length of time from filing a civil case to disposition of the case (i.e., termination, whether by trial or other method) in the Southern District of Ohio, averaged over the last four years, is 17.8 months.[14]

38. The above-captioned civil case has been pending 38 months and has not proceeded to discovery or past Rule 12(b)(6) motions practice.

## ARGUMENT AND AUTHORITY REGARDING RECUSAL

**A. Recusal or Disqualification Is Required Where a Judge or Spouse Has a Financial Interest in a Party and Circumstances Raise Reasonable Questions as to Impartiality.**

In 28 U.S.C. § 455(a), Congress established a clear standard governing disqualification of federal judges[15]: "[a]ny justice, judge, or magistrate judge of the United States shall disqualify

---

[12] Judge Yet to Explain Sudden Departure From Case, *Columbus Dispatch*, Jan. 7, 2012 (available at https://www.dispatch.com/article/20120107/news/301079855), attached as **Exhibit 5** ("2012 *Dispatch* Article").

[13] Judge Cole served as a professor at OSU's Moritz College of Law. Additionally, the Western Division at Cincinnati; Senior Judge Michael Barrett is disqualified due to his service as appointed Mediator in this case.

[14] *See* U.S. District Courts—Federal Court Management Statistics–Profiles—During the 12-Month Periods Ending March 31, 2016 Through 2021 https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf (see p. 43).

[15] These standards are echoed in the Code of Judicial Conduct for United States Judges published by the United States Courts Administrative Office, available at https://www.uscourts.gov/judges-

himself in any proceeding in which his impartiality might reasonably be questioned." *See also* Code of Jud. Conduct Canon 3(C)(1). The parties may consent to waive such disqualification if it "is preceded by a full disclosure on the record of the basis for the disqualification." 28 U.S.C. § 455(e); *see also* Code of Jud. Conduct Canon 3(D). Even assuming there has been full disclosure here, which is subject to reasonable doubt, at least one party does not consent.

Disqualification is also required – and cannot be waived by consent of the parties, *see* § 455(e) – in circumstances listed in § 455(b), including where the judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in … a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4); *see also* Code of Jud. Conduct Canon 3(C)(1)(c). This provision is absolute, requiring a judge to take recusal action without regard to any appearance of impropriety if there is such "financial interest." *Hall v. City of Williamsburg*, 768 F. App'x 366, 371 (6th Cir. 2019) (citing 28 U.S.C. § 455(b)(4)). A judge has an obligation to "inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household." 28 U.S.C. § 455(c); *see also* Code of Jud. Conduct Canon 3(C)(2). Financial interest means "a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4); *see also* Code of Jud. Conduct Canon 3(C)(3)(c).

Section 455 is a "self-executing provision for the disqualification of federal judges." *Roberts v. Bailar*, 625 F.2d 125, 128 (6th Cir. 1980) (holding that judge should have recused himself after making a comment about personally knowing defendant). The standard for subsection (a) is objective, asking what a reasonable person knowing all the relevant facts would think about

---

judgeships/code-conduct-united-states-judges#d.

10

the impartiality of the judge. *Roberts*, 625 F.2d at 129. The standard for subsection (b) is express. Even when the question is close, "[i]f there is a reasonable factual basis for doubting the judge's impartiality, [then] the judge should disqualify himself and let another judge preside over the case." *Id*. at 129. The Code of Conduct for United States Judges holds that a judge should not hear and decide a matter if they are disqualified. Code of Jud. Conduct Canon 3(A)(2).

### B. Recusal is Required And The Case Must be Reassigned to an Objectively Neutral Judge.

Early on in this litigation, Judge Watson disclosed that he has a current and ongoing relationship with the defendant, OSU, as an adjunct professor at its law school.[16] At the time the

---

[16] "It is permissible for judges to teach in law schools. However, the judge should not participate in any case in which the school or its employees are parties." *Guide to Judiciary Policies and Procedures*, 1999 Ed., Vol. II, Chap. V, §4.1(b), at p. V-57. The Guide to Judiciary Policy, Vol. 2, Ch. 3, Compendium of Selected Opinions, provides the following guidance for Judges teaching at law schools:

> § 3.4-3 Law School Teaching
> (a) A judge who teaches at a law school should recuse from all cases involving that educational institution as party. The judge should recuse (or remit) from cases involving the university, as well as those involving the law school, where the judge's impartiality might reasonably be questioned in view of the size and cohesiveness of the university, the degree of independence of the law school, the nature of the case, and related factors....

*Guide to Judiciary Policies and Procedures*, 1999 Ed., Vol. II, Chap. V, §3.4-3(a), at p. V-39. While some judges have taken the view that employment as an adjunct professor does not automatically require recusal, judges who sit on the Court of Appeals for the Sixth Circuit have recused themselves from cases involving the colleges and universities at which they have taught. *See Crosby v. University of Kentucky*, 863 F.3d 545 (6th Cir. 2017) (Judge Rogers recused himself from consideration of appeal against University of Kentucky College of Public Health and he was a law professor at University of Kentucky College of Law); *Erlinder v. William Mitchell College of Law*, 0:14-CV-01477, Docket No. 3 (D. Minn. May 12, 2014) (disqualifying all U.S. District Judges and Magistrate Judges of the District of Minnesota because of ties to the defendant school of law). *See contra Szeinbach v. Ohio State University*, 2015 WL 12991136 (S.D. Ohio July 8, 2015) (holding that employment with OSU as adjunct professor did not require recusal because the School of Law was not involved in the lawsuit and the Magistrate Judge was only deciding the issue of attorney's fees and relying upon lack of precedent on specific issue of recusal when judge teaches at for a party). And within the Eastern Division at Columbus, Judges Marbley and Sargus routinely recuse themselves from lawsuits involving OSU in the past due to their connections with OSU and the Moritz College of Law. See **Ex. 5** "2012 *Dispatch* Article".

11

Court made this disclosure, it also noted that every other member of the bench had a similar relationship with OSU. Without awaiting response from the parties, the Court announced its intent to stay on the case and see that this case be mediated, beginning immediately.

Even at that time, Judge Watson expressed his interest in ensuring that this case was handled in a manner that avoided anything improper, embarrassing, undignified or unprofessional:

> In preparing for this case, the Court has been watching what's going on in Michigan as well. One might say that there is -- there have been some fairly embarrassing revelations, I think, ... I think there was a resignation involved. I want to avoid that. I want to avoid all of that.
>
> This case needs to be handled in a manner that is worthy of a great institution and these victims need to be dealt with as the Chairman of the Board of Trustees has indicated that he is committed to doing. [Referring to Chairman Gasser's commitment to plaintiffs at the Board of Trustees' meeting that, rest assured, OSU was not dismissing them, and that OSU was committed to doing the right thing].

Jan. 2019 Hrg. Tr. at 5:6 – 16, 4:20-24.

The fact that the latest on-going financial interest was only disclosed after a media inquiry and public revelation is particularly concerning. And additional details reported in the press – regarding a separate contract or contracts for purchase of services or products resulting in direct financial benefit to the judge's spouse – have not disclosed by either the Court or by OSU or otherwise confirmed. These public reports create and compound objectively reasonable doubts.

In the nearly three years since the Court's first disclosure of a conflict and its order that the parties mediate, OSU literally did seek to dismiss Plaintiffs' claims, on the basis of a waivable affirmative defense of statute of limitations. And despite multiple motions and reports that mediation was not successful, mediation was at an impasse, requesting that the Court reinstate a case schedule, permit discovery, and rule on the pending motions, Judge Watson, contrary to Rule 1, delayed rulings and has effectively held the Plaintiffs' claims hostage. During these years, individual plaintiffs and material witnesses have died or become incapacitated. Now, within days

12

before issuing a promised and long-awaited ruling on OSU's motion to dismiss, the Court discloses another conflict, one that, if reports are true, has resulted in the assigned Judge receiving a financial benefit from the Defendant during the years that this litigation has been pending.

As the Court has acknowledged, the press, public, and – more importantly – the plaintiff-victims, now have questions about whether justice has been or can be administered fairly and impartially before the assigned Judge. While many questions remain regarding the details, the timing and the nature of this late-disclosed business venture between OSU and Judge Watson's wife, and the direct financial interest reported in the *Columbus Dispatch* raise reasonable doubts regarding this Court's ability to oversee this case in an impartial manner and trigger automatic disqualification. 28 U.S.C. § 455. Indeed, under the express language of (b)(4), the Court's and his wife's "financial interest" in a "party to the proceeding" is automatically and non-waivably disqualifying.[17] The size of the financial conflict is irrelevant to this analysis. 28 U.S.C. § 455(d)(4).

---

[17] It is worth noting that the words "or any other interest that could be substantially affected by the outcome of the proceeding" could be read to modify a disqualifying "financial interest." If this were the case, a financial interest in "a party to the proceeding" would only be disqualifying if the interest was such that it could be "substantially affected by the outcome of the proceeding." However, Plaintiffs' research reveals that the only circuit court to have addressed this issue has rejected it, as acknowledged in *In re Cement & Concrete Antitrust Litig.*, 515 F. Supp. 1076, 1078 (D. Ariz. 1981) (granting recusal motion), *mandamus denied*, 688 F.2d 1297 (9th Cir. 1982), *aff'd*, 459 U.S. 1190 (1983):

> The statute differentiates between two kinds of interests. If the judge has a direct ownership, legal or equitable, then disqualification is required regardless of the size of the interest, unless one of the specified exceptions applies. On the other hand, an interest not entailing direct ownership falls under "other interest," and requires disqualification only if the litigation could substantially affect it. 515 F. Supp. at 1078 (citing *In re New Mexico Natural Gas Antitrust Litig.*, 620 F.2d 794, 796 (10th Cir. 1980), Opinion of the Advisory Committee on Codes of Conduct of the Judicial Conference of the United States, May 7, 1981 at 3).

As this Court said, "ethical considerations are [of] the utmost importance … to the parties and to the public, as well as the federal judiciary as a whole." Sept. 2021 Hrg. Tr. at 8:23-25. The mere existence of a reasonable basis to doubt the court's impartiality mandates recusal under 28 U.S.C. § 455(a), as does the financial conflict under 28 U.S.C. § 455(b)(4). Therefore, Plaintiffs respectfully request that this Honorable Court grant their Consolidated Motion to Recuse.

## ARGUMENT AND AUTHORITY REGARDING INTRADISTRICT TRANSFER

### A. Civil Rules Permit Transfer Within a Judicial District Where Interests of Justice Are Served.

28 U.S.C. § 1404(b) governs the transfer of civil cases within a judicial district. Under 28 U.S.C. § 1404(b), "[u]pon motion ... any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from one division in which pending to any other division in the same district." Such transfers are subject to the same analysis as under § 1404(a) governing transfer of civil cases to different judicial districts but are "judged by a less rigorous standard." *Verhovec v. City of Trotwood*, No. 2:14-CV-0274, 2014 WL 5426398, at *1–2 (S.D. Ohio Oct. 22, 2014) (quoting *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 215 (S.D. Ohio 1989)).

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all the parties have consented."

While a party seeking transfer under § 1404(a) bears the burden of showing that the relevant factors weigh "strongly in favor of" transfer, a party seeking transfer within a district bears a "less rigorous" burden. "A district court deciding a § 1404(a) motion 'has broad discretion to grant or deny' the requested transfer." *Id., Tech–Sonic, Inc. v. Sonics & Materials, Inc.*, 2012 WL

14

4343103, at *2 (S.D. Ohio Sept. 21, 2012), quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

In the Southern District of Ohio, S.D. Ohio Local Rule 82.1 governs the venue of actions, and as a general rule, assigns cases to the division serving the county within which a corporate defendant resides, i.e., where its principal place of business is located or where it has the most significant contacts. 82.1(c), (d). The Eastern Division at Columbus serves Franklin County, in which OSU's main campus is located. See S.D. Civ. R. 82.1(b). Upon its first filing in July 2018, the above-captioned *Garrett* case and later related cases including the above-captioned *Alf* case, were properly filed in the Eastern Division, Columbus. Further, these cases and others, because administratively related, have all been assigned to Judge Watson.

However, in light of the appearance of impropriety raised by recent revelations as well as the cumulative nature of the conflicts, which are shared across the board by the active judges within the Eastern Division, Plaintiffs respectfully request that, pursuant to § 1404(b) and in the interests of justice, the above-captioned cases be transferred to the Western Division at Cincinnati, rather than being reassigned within this division.

### B. Transfer Is Well Within this Court's Discretion, Is Justified by the Interests of Justice in Avoiding Appearance of Impropriety, Serves both Private and Public Interests, and will not Unduly Inconvenience or Prejudice any Party.

In determining whether to permit transfer, the Court should consider the three factors enumerated in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and any other facts relevant to determine whether, on balance, the litigation "would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *See Verhovec*, 2014 WL 5426398, at *1–2 (quoting 15 Wright, Miller & Cooper, *Federal Practice*

*& Procedure: Jurisdiction and Related Matters*, (2d Ed.1986), § 3847; *see also Slate Rock Const. Co. Ltd. v. Admiral Ins. Co*., 2011 WL 3841691, *6 (S.D. Ohio Aug. 30, 2011).

Plaintiffs respectfully request that, rather than be reassigned within this division, this case be transferred to the Western Division at Cincinnati, a court location within this district that, while less than two hours from Defendant OSU, houses no OSU campus and where the impartiality of the Court is not subject to reasonable doubt.

As demonstrated by the facts herein, the judges in the Eastern Division at Columbus all have a connection to OSU. Both parties and the public are entitled to and deserve to have the claims heard in a neutral forum. The Eastern Division is not that forum. Plaintiffs have suffered a long time in silence due to Strauss's abuse. But when they first learned that OSU played a role in their abuse – that OSU could have, but did not, prevent it, and that OSU ignored, dismissed, and concealed decades of reports of abuse – they filed this action in an effort to hold OSU accountable for its violations of federal law. They filed this action to finally be heard, win or lose. For justice to be administered. But for nearly three years, these Plaintiff-victims have not been heard. Justice has not been forthcoming. They've been subject to confidentiality restrictions due to the court-ordered mediation; they've been denied discovery; they've been denied a ruling on a threshold legal issue. Now they learn that the judge overseeing their case, in addition to being a contract employee of the defendant, is married to a licensee of the Defendant and whose business, according to the media, receives financial support from the Defendant. They also know that the other judges in the Eastern Division have similar and other ties to the Defendant.

To ensure impartial consideration – and to preserve the appearance of the same – this case should be moved to Cincinnati, the farthest division from Columbus. The judges and jurors there are objectively less likely to lean in favor of OSU in football, in allegiance, and in this lawsuit.

Indeed, the lobbying power of OSU can be felt state-wide, and ironically, instead of being prosecuted by the Ohio Attorney General, OSU is being defended by that office. There is no place in Ohio that Defendant cannot easily defend its case. Indeed, its main campus is less than two hours from Cincinnati. Witnesses, parties and counsel are spread across the country. In the interest of justice, to preserve the integrity of the judiciary in the perspective of the public and the parties, Plaintiffs respectfully request intradistrict transfer pursuant to 28 U.S.C. § 1404(b).

Respectfully Submitted,

/s/ *Simina Vourlis*
Simina Vourlis
The Law Office of Simina Vourlis
856 Pullman Way
Columbus, OH 43212
(614) 487-5900
(614) 487-5901 fax
svourlis@vourlislaw.com

Rex A. Sharp
Larkin Walsh
Sarah T. Bradshaw
SHARP LAW, LLP
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rsharp@midwest-law.com
lwalsh@midwest-law.com
sbradshaw@midwest-law.com

Robert Allard
CORSIGLIA, MCMAHON AND ALLARD, LLP
96 North Third Street, Suite 620
San Jose, CA 95112
(408) 289-1417
(408) 289-8127 fax
rallard@cmalaw.net

Stephen Estey
ESTEY & BOMBERGER LLP


2869 India Street
San Diego, CA 92103
619-295-0035
619-295-0172 fax
steve@estey-bomberger.com

Daniel R. Karon (#0069304)
KARON LLC
700 W. St. Clair Ave., Suite 200
Cleveland, OH 44113
Tel.: 216.622.1851
dkaron@karonllc.com

Joseph Sauder
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, PA 19312
(610) 200-0580
(610) 421-1326
jgs@sstriallawyers.com

*COUNSEL FOR PLAINTIFFS*

**CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing document was filed and served, via the Court's CM/ECF system on September 15, 2021, on all counsel of record.

By:   */s/ Simina Vourlis*_____
      Attorney for Plaintiffs