UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Brian Garrett, *et al.*,

      Plaintiffs,                            Case No. 2:18-cv-692

      v.                                Judge Michael H. Watson

The Ohio State University,           Magistrate Judge Deavers

      Defendant.

## OPINION AND ORDER

Plaintiffs sue The Ohio State University ("Ohio State") under Title IX, 20 U.S.C. § 1681, alleging Ohio State was deliberately indifferent to the sexual abuse Plaintiffs suffered at the hands of Doctor Richard Strauss ("Strauss"). Consol. Compl., ECF No. 157.  Ohio State moves to dismiss Plaintiffs' claim under Federal Rule of Civil Procedure 12(b)(6) as barred by the applicable statute of limitations.  Mot. Dismiss, ECF No. 162.

## I.    INTRODUCTION

It is beyond dispute that Plaintiffs, as well as hundreds of other former students, suffered unspeakable sexual abuse by Strauss.  It is also true that many Plaintiffs and other students complained of Strauss's abuse over the years and yet medical doctors, athletic directors, head and assistant coaches, athletic trainers, and program directors failed to protect these victims from Strauss's predation.  For decades, many at Ohio State tasked with protecting and training

students and young athletes instead turned a blind eye to Strauss's exploitation. From 1979 to 2018, Ohio State utterly failed these victims.

Plaintiffs beseech this Court to hold Ohio State accountable, but today, the legal system also fails Plaintiffs. Plaintiffs' pain and suffering is neither questioned nor overlooked by this Court; indeed, their claims cry out for a remedy. As explained below, Plaintiffs' Title IX claims are barred by the existing statute of limitations. If there is a viable path forward for Plaintiffs on their claim against Ohio State, it starts with the legislature rather than the judiciary.

## II.   FACTS[1]

Plaintiffs are all former Ohio State students and student-athletes. Compl. ¶ 33, ECF No. 157. Ohio State is and was at all relevant times a state-owned and -operated public university that received federal financial assistance. *Id.* ¶ 134.

All of Plaintiffs' causes of action arise from Strauss's sexual abuse that they endured while at Ohio State.[2] *Id.*, *passim.*

---

[1] The Court accepts Plaintiffs' factual allegations in their Complaint as true for purposes of Ohio State's motion to dismiss.

[2] The specific allegations of the types of sexual abuse that Strauss perpetrated on Plaintiffs and other student-athletes have been extensively detailed in this and related cases, as well as in the media. The detailed allegations are, unfortunately, irrelevant to the legal issues in this order. For that reason, and out of respect for Plaintiffs' privacy, the Court will not further discuss the allegations in this Opinion and Order.

## III. STANDARD OF REVIEW

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). While the court must "construe the [pleading] in the light most favorable to the [non-moving party]," *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002), the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

### A. Background of Title IX

Title IX of the Education Amendments of 1972 is a federal statute designed to prevent sexual discrimination and harassment in educational institutions receiving federal funding. It provides: "[n]o person in the United States shall, on

the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Although the text of the statute does not mention a private right of action, Title IX implies a private right of action, *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979), which "encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to a teacher's sexual harassment of a student." *Jackson v. Birmingham Bd. of Edu.*, 544 U.S. 167, 173 (2005) (citing *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 72–73 (1992) and *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998)).

To prove a deliberate indifference[3] claim under Title IX, the plaintiff must "plead, and ultimately prove, that the school had actual knowledge of actionable

---

[3] Plaintiffs also arguably allege a separate theory of Title IX liability based on Ohio State's creation and perpetuation of a sexually hostile environment.  The Sixth Circuit has stated that "[h]ostile environment [Title IX] claims are distinct from deliberate indifference [Title IX] claims."  *Doe v. Univ. of Ky.*, 959 F.3d 246, 251 n.3 (6th Cir. 2020).  "A Title IX hostile-environment claim is analogous to a Title VII hostile-environment claim," and, to state such a claim, a plaintiff "must allege that his educational experience was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of [his] educational environment."  *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (internal quotations marks and citations omitted).  Here, the statute of limitations analysis for Plaintiffs' deliberate indifference claim applies with equal force to any separately asserted hostile-environment theory of liability because Plaintiffs were certainly aware by the time they graduated that their educational experiences were permeated by a sexually hostile environment.  Indeed, any claim would fail on the merits were Plaintiffs unaware.  *Doe v. Univ. of Dayton*, 766 F. App'x 275, 283 (6th Cir. 2019) ("We hesitate to deem an environment hostile to a plaintiff when there is no evidence that plaintiff was aware of what occurred." (internal quotation marks and citation omitted)).  Accordingly, the Court does not undertake a separate statute of limitations analysis with respect to Plaintiffs' Title IX claim to the extent it is based on a sexually hostile environment theory.

sexual harassment and that the school's deliberate indifference to it resulted in further actionable sexual harassment against the student-victim, which caused the Title IX injuries."[4] *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 618 (6th Cir. 2019). In other words, the plaintiff must establish "two separate components, comprising separate-but-related torts by separate-and-*un*related tortfeasors: (1) 'actionable harassment' by [someone associated with the school]; and (2) a deliberate-indifference intentional tort by the school." *Id.* at 619–20; *see also Davis v. Monroe Cty. Bd. of Edu.*, 526 U.S. 629, 633 (1999); *Foster v. Bd. of Regents of Univ. of Mich.*, 982 F.3d 960, 965 (6th Cir. 2020).

The actionable sexual harassment must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Foster*, 982 F.3d at 965 (quoting *Davis*, 526 U.S. at 633).

To prove the deliberate indifference tort, the plaintiff must show four elements: "(1) knowledge, (2) an act, (3) injury, and (4) causation." *Kollaritsch*, 944 F.3d at 621. First, the plaintiff must show that the school had "actual knowledge of an incident of actionable sexual harassment that prompted or should have prompted a response." *Id.* Second, the plaintiff must show that the

---

[4] *Kollaritsch* involved student-on-student sexual harassment. 944 F.3d at 618. The standard set forth in that case applies to Title IX cases involving teacher-on-student sexual harassment as well, however, because the standards for each type of deliberate indifferent claim are the same. *See Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 367 (6th Cir. 2005) ("It is clear from a reading of *Gebser* and *Davis*, that the Court is discussing only one standard for 'deliberate indifference' in Title IX pupil harassment cases and not . . . one standard for student-on-student harassment and a less stringent standard for teacher-on-student harassment.").

school's response was "'clearly unreasonable in light of the known circumstances,' thus demonstrating the school's deliberate indifference to the foreseeable possibility of *further* actionable harassment of the victim." *Id.* (quoting *Davis*, 526 U.S. at 648). Third and fourth, the school's unreasonable response must cause the specific injury of "deprivation of access to the educational opportunities or benefits provided by the school . . . . Emotional harm standing alone is not a redressable Title IX injury." *Id.* The causation and injury elements are met if the "injury is attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response." *Id.* at 622 (citing *Davis*, 526 U.S. at 644).

Before reaching the merits of any Title IX claim, however, the Court must determine whether the claim is barred by the statute of limitations.

### B. Title IX Statute of Limitations

As a threshold matter, the Court clarifies that statute-of-limitations defenses may be properly raised in a Rule 12(b)(6) motion. *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002); *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012) ("Dismissal under Fed. R. Civ. P. 12(b)(6) based on a statute-of-limitations bar is appropriate when the complaint shows conclusively on its face that the action is indeed time-barred.").

"Title IX does not contain its own statute of limitations." *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996). Title IX actions, therefore, borrow the state statute of limitations for personal injuries. *Id.* at 729. Ohio

Revised Code § 2305.10 provides for a two-year statute of limitations for personal injury claims. Ohio Rev. Code § 2305.10. Accordingly, Title IX claims in Ohio have a two-year statute of limitations. *See Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 996 (S.D. Ohio 2018).

Although state law controls the duration of the statute of limitations, federal law governs when the claim accrues. *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). "The 'standard rule' is that a cause of action accrues 'when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 384 (6th Cir. 2014) (citation omitted).

In order to determine the accrual date for a Title IX claim, the Court needs to determine when a plaintiff has a complete and present cause of action under Title IX. The Sixth Circuit has not considered what triggers the statute of limitations in Title IX cases, but it has considered the issue in cases brought under 42 U.S.C. § 1983, which, like Title IX, borrows Ohio's personal-injury statute of limitations (for § 1983 claims brought in Ohio). *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989). In the § 1983 context, the Sixth Circuit has adopted the discovery rule, which considers a plaintiff to have a complete and present cause of action "when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *E.g.*, *D'Ambrosio*, 747 F.3d at 384 (quoting *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007)); *Sevier v. Turner*, 742 F.2d 272, 273 (6th Cir. 1984). In applying the discovery

rule, the Sixth Circuit is "guided by the principle that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Cooey*, 479 F.3d at 416 (internal quotation marks and citation omitted). Plaintiffs contend the discovery rule governs the accrual date in Title IX cases as well, but Ohio State disagrees.

There is good reason to think the Sixth Circuit might not adopt the discovery accrual rule in Title IX cases. Recently, in *Rotkiski v. Klemm*, 140 S. Ct. 355, 360 (2019), the United States Supreme Court decided whether the statute of limitations in the Fair Debt Collection Practices Act ("FDCPA") was triggered by a discovery rule. Unlike Title IX, the FDCPA contains an explicit statute of limitations; thus, the Supreme Court engaged in statutory interpretation when determining if the FDCPA's statute of limitations was subject to a discovery rule. *Id.* Despite that factual difference, the Supreme Court's analysis in *Rotkiski* is helpful because it assumed that the "standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action" and that Congress legislates against that standard rule. *Id.* (quoting *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418–19 (2005)). The Supreme Court rejected the appellant's request to read into the FDCPA statute of limitations a general discovery rule, calling such an expansive approach to the discovery rule a "bad wine of recent vintage," *id.* (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J.,

concurring)), and refused to engage in "[a]textual judicial supplementation." *Id.* at 361.

Ohio State argues that *Rotkiski* should be read expansively as holding that the discovery rule *never* applies unless the language of the at-issue statute explicitly mandates it. Mot. 7, ECF No. 162. Because Title IX does not contain any statute of limitations, let alone one that explicitly provides for a discovery rule, Ohio State argues *Rotkiski* demands the Court find Plaintiffs' claim accrued on the date that all of the elements of a Title IX claim came into existence as opposed to the date Plaintiffs knew or should have known of their injuries. *Id.*

The Sixth Circuit has since recognized the tension between the Supreme Court's language in *Rotkiski* and the Sixth Circuit's prior caselaw applying a default discovery rule to the accrual of § 1983 claims. *See Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1162 (6th Cir. 2021) (contrasting the occurrence rule with the discovery rule and observing that "[a]ny presumption favoring that discovery rule, the [Supreme] Court recently clarified, represents a bad wine of recent vintage" (internal quotation marks and citations omitted)); *see also Everly v. Everly*, 958 F.3d 442, 460 (6th Cir. 2020) (Murphy, J., concurring) (maintaining that "[h]istorically, courts used the occurrence rule").

The Sixth Circuit has not yet overturned *Sevier* and other cases holding that the discovery rule is the default rule in the § 1983 context, however. *See Dibrell*, 984 F. 3d at 1162 ("Do our cases imbibing this 'bad wine' warrant reconsideration in light of the Supreme Court's recent teachings? We need not

resolve this tension now because [the plaintiff's] claims would be untimely either way."). It is thus unclear whether the Sixth Circuit would continue to apply the discovery accrual rule in § 1983 cases or would adopt the discovery accrual rule in Title IX cases. *Cf. Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 438–39 (S.D.N.Y. 2014) (recognizing the plaintiffs' request to apply a discovery rule to a Title IX claim "ignore[s] the continuing significance of the 'standard rule' that claims accrue upon existence of a complete and present cause of action" and that the discovery rule "remains—despite certain departures—an exception" to the standard rule but declining to decide whether the occurrence or discovery rule applied); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1210, 1215–17 (10th Cir. 2014) ("Plaintiff's federal claims accrued when she could file suit and obtain relief, which was no later than when the abuse stopped, not when she allegedly learned the full extent of the resultant emotional injury."); *Forrester v. Clarencevill Sch. Dist.*, No. 20-12727, 2021 WL 1812700, at *4 (E.D. Mich. May 6, 2021) ("The Supreme Court has repeatedly refused to interpose the 'discovery rule' to accrual standards for federal claims."). This Court need not definitively decide the issue either, though, as Plaintiffs' claim is untimely under both rules. Indeed, the accrual date is the same under either rule.

### 1. Plaintiffs' Claims are Barred under the Occurrence Rule

Under the occurrence rule, each Plaintiff's claim against Ohio State accrued, at the latest, when all of the elements of his Title IX claim were established. In other words, each Plaintiff's Title IX claim accrued the moment

that Plaintiff suffered the Title IX injury—i.e., was deprived of "access to the educational opportunities or benefits provided by" Ohio State because of post-actual-knowledge harassment by Strauss (which harassment would not have happened but for the clear unreasonableness of Ohio State's response). *Kollaritsch*, 944 F.3d at 621–22; *cf. Twersky*, 993 F. Supp. 2d at 439 (finding Title IX claim accrued under the occurrence rule "when, despite their knowledge of the abuse at the school, the school administrators failed to take corrective actions. In each instance, this occurred before the plaintiffs left the school, which in all cases was more than twenty years before this lawsuit was filed." (citation omitted)); *Forrester*, 2021 WL 1812700, at *4 ("As a matter of law, at the time of the abuse, Plaintiffs had 'a complete and present cause of action,' in that 'the wrongful act or omission [had] result[ed] in damages' and 'the plaintiff[s] [had] been] harmed.'" (citations omitted)).

For the majority of Plaintiffs, the latest date on which their Title IX injury could have occurred is the date of their graduation or the date they dropped out of Ohio State, for that is the latest moment they were deprived of access to educational opportunities or benefits provided by Ohio State as a result of Ohio State's deliberate indifference. *See* Compl. ¶ 439, ECF No. 157 ("OSU's actions and inactions had the systemic effect of depriving Plaintiffs . . . of the educational benefits afforded to them through their enrollment in the University."). Plaintiffs in

this case graduated, at the latest, in the late 1990s.[5]  *Id.* ¶¶ 35–132.  Even

assuming the latest Plaintiff graduated in 1999, his claim would need to have

been filed within two years of graduation—by sometime in 2001.  Plaintiffs did not

file their Complaint in this case until July 16, 2018.  ECF No. 1.  Consequently,

under the occurrence rule, Plaintiffs' Complaint was untimely by at least eighteen

years.

### 2. Plaintiffs' Claims are Barred under the Discovery Rule

As the Supreme Court has recognized, when the discovery rule applies,

"discovery of the injury, not discovery of the other elements of the claim, is what

starts the clock."  *Rotella v. Wood*, 528 U.S. 549, 555 (2000); *Amini v. Oberlin

College*, 259 F.3d 493, 500 (6th Cir. 2001) (In other words, "[a] plaintiff's action

accrues when he discovers that he has been injured, not when he determines

that the injury was unlawful." (internal quotation marks and citation omitted)).

In Title IX cases, many courts find, for purposes of applying the discovery

rule, that the injury is the sexual harassment or abuse such that the claim

accrues the moment a plaintiff knows or has reason to know of the sexual

harassment or abuse.  *See, e.g.*, *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9–10

(2nd Cir. 2014) (assuming without deciding that the discovery accrual rule

---

[5] The Court recognizes that lead Plaintiff Brian Garrett's claims arise out of abuse at Strauss's off-campus clinic, rather than abuse on Ohio State's campus.  Compl. ¶¶ 369–398, ECF No. 1.  Even assuming Mr. Garrett could state a valid Title IX claim for the abuse he endured at Strauss's off-campus clinic, Mr. Garrett was molested in 1996 and graduated from Ohio State in 1998.  *Id.*  So, under the occurrence rule, Mr. Garrett would have had to file his action by 2000 at the latest.

applies and stating, "[w]hen plaintiffs left [Defendant University], more than 20 years before filing this suit . . . , they were unquestionably aware of (1) their injuries, (2) their abusers' identities, and (3) their abusers' prior and continued employment at [Defendant University]. This information was sufficient to put them on at least inquiry notice as to the school's awareness of and indifference to the abusive conduct by its teachers." (citations omitted)); *Varnell*, 756 F.3d at 1216–17 (finding that a plaintiff's Title IX claim accrued even under the discovery rule when the plaintiff knew she was sexually assaulted); *Doe v. Univ. of Cal.*, No. 2:18-cv-7530-SVW-GJS, 2019 WL 4229750, at *4 (C.D. Cal. July 9, 2019) ("Even if Plaintiff generally did not learn until recently about USC's alleged deliberate indifference spanning over approximately thirty years, Plaintiff's understanding of her injury at the time of her examination by Dr. Tyndall means that the statute of limitations period began to run immediately following the examination."); *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 996 (S.D. Ohio 2018) (finding the injury in a Title IX deliberate indifference case was the sexual harassment by the faculty member, which started the statute of limitations clock); *Bowling v. Hold Pub. Sch.*, No. 1:16-cv-1322, 2017 WL 4512587, at *2 (W.D. Mich. May 26, 2017) ("[Plaintiff's] claims are based on the sexual assaults by T.B., the last of which occurred on May 18, 2012. Thus, her claims accrued, at the latest, on May 18, 2012—even if [plaintiff's] claim is based on Defendants' actions or inactions in failing to protect her from T.B. because [plaintiff] knew of Defendant's inaction."); *Anderson v. Bd. of Educ. of Fayette Cty.*, 616 F. Supp.

2d 662, 668 (E.D. Ky. 2009) (finding plaintiffs "were no doubt aware of the underlying injuries of which they complain, the abuse at the hands of employees of the Board, at the time it was allegedly inflicted. This is to say that Plaintiffs' causes of action accrued at the time of the alleged abusive acts."); *Johnson v. Gary E. Miller Canadian Cty. Children's Juvenile Justice Ctr.*, No. Civ-09-533-L, 2010 WL 152138, at *2 (W.D. Okla. Jan. 14, 2010) (finding the Title IX claims "are time barred since they accrued prior to [plaintiff's] last date of attendance" at the defendant school); *Padula v. Morris*, No. 2:05-cv-411-MCE-EFB, 2008 WL 1970331, at *4 (E.D. Cal. May 2, 2008) (finding the statute of limitations on plaintiff's Title IX claim "accrued on the last date Plaintiffs' suffered an incident of sexual harassment relevant to their causes of action." (citation omitted)); *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Indiana 1997) ("[Plaintiff's] Title IX claim accrued when she knew or had reason to know of her injury—October 29, 1997," the date of the alleged sexual harassment); *Clifford v. Regents of Univ. of Cal.*, No. 2:11-cv-2935, 2012 WL 1565702, at *6 (E.D. Cal. April 30, 2012) (finding Title IX claim accrued on the date of each alleged incident of harassment or the date the university became aware of the same); *cf. Gilley v. Dunaway*, 572 F. App'x 303, 306 (6th Cir. 2014) ("[Plaintiff's] relationship with [the coach-abuser] should have aroused her suspicion that she was being sexually abused.").

Other courts find the injury occurs at the time the plaintiff is deprived of educational opportunities or benefits by the defendant school. *Samuelson v.*

*Oregon State Univ.*, 725 F. App'x 598, 599 (9th Cir. June 6, 2018) ("Here, [plaintiff's] injury occurred, and she was fully aware of the injury and its consequences, when she dropped out of school in 2000. This event started the two-year clock."); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015) (assuming without deciding, for purposes of the discovery rule, that the injury was the school's deliberate indifference rather than the sexual abuse itself).

As explained above, Plaintiffs were abused from the 1970s–1990s. Compl. ¶¶ 35–132, ECF No. 157. So, even if the Court applied the discovery rule and found the claims accrued when Plaintiffs knew or should have known of their abuse, the claims accrued on the latest date of abuse for each Plaintiff, which occurred well before two years prior to the filing of the Complaint. Similarly, if the Court applied the discovery rule and considered the injury to be Plaintiffs' deprivation of the educational opportunities or benefits of Ohio State, Plaintiffs knew or should have known of those injuries by the time they graduated or dropped out of Ohio State.[6] Either way, Plaintiffs' Title IX claims are barred by the statute of limitations, even under the discovery rule.

---

[6] The accrual date under this analysis matches the accrual date under the Occurrence Rule because Plaintiffs were undoubtedly aware of the deprivation of educational opportunities or benefits by the time they graduated or withdrew from Ohio State.

### 3. Plaintiffs' Arguments are Unavailing

Plaintiffs offer two reasons why their claims are not barred by the statute of limitations: (1) claims do not accrue under the discovery rule until a plaintiff knows or should know about both the injury and cause of the injury; and (2) the statute of limitations is tolled due to Ohio State's fraudulent concealment.

### a. Claims Accrue Under the Discovery Rule When a Plaintiff Knows or has Reason to Know of His Injury

First, Plaintiffs argue that knowledge of injury is alone insufficient to trigger accrual under the discovery rule and that, instead, a claim does not accrue under the discovery rule until a plaintiff knows or should know of both his injury and its cause. Resp. 9, ECF No. 169 (quoting *Fonseca v. Consol. Rail. Corp.*, 246 F.3d 585, 590 (6th Cir. 2001)). According to Plaintiffs, the "cause" here is Ohio State's deliberate indifference, so their claims did not accrue until they knew or should have known of their injuries and that those injuries were caused by Ohio State's deliberate indifference. Resp. 9, ECF No. 169 ("[T]he relevant inquiry here concerns when the Plaintiffs could have first known that they were injured by OSU, and that OSU played an actionable role in causing their abuse."); *id.* at 1 ("Plaintiffs did not know and ***could not have known*** of OSU's role in causing their abuse until April 2018, at the earliest, when allegations of an OSU cover-up surfaced in the press and OSU retained law firm Perkins Coie to unearth the truth."); *id.* at 2 ("Plaintiffs' Title IX claims accrued within the last two years, as Plaintiffs only recently discovered—or even could have discovered—OSU's role

in causing their injuries."); *id.* at 4 ("[U]ntil the May 2019 PC Report (or the April 2018 announcement of an investigation, at the earliest), none of the Plaintiffs in this case could have known of OSU's role in the abuse they had suffered.").

As the Sixth Circuit recently explained, however, in Title IX cases, "'causation' means the '[a]ct' caused the '[i]njury,' such that the injury is attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response." *Kollaritsch*, 944 F.3d at 622. The Sixth Circuit explains that, "[i]mportantly, *Davis* does not link the deliberate indifference directly to the injury (i.e., it does *not* speak of subjecting students to *injury*)[.]" *Id.* In other words, Plaintiffs' Title IX injury (deprivation of educational opportunities or benefits provided by Ohio State) was attributable to Strauss's abuse, and Plaintiffs knew both of the injury and its cause (the abuse), which was sufficient to put them at least on inquiry notice to determine whether the injury would have occurred but for Ohio State's deliberate indifference. *See King-White*, 803 F.3d at 762–63 ("Even if we assume that the relevant injury was the conduct of HISD and the School Officials rather than the sexual abuse itself, [p]laintiffs had sufficient awareness of that conduct prior to the spring of 2011 for their claims to accrue. . . . A.W. was sadly quite aware of the abuse she suffered, and she was also aware that her abuser was her teacher. . . . [A] reasonable person who knew that her daughter was living with a teacher, and who had already lodged complaints with administrators that had gone unheeded, would have investigated further."); *Twersky*, 579 F.

App'x at 10 ("[P]laintiffs maintain that they could not have discovered defendants'
deliberate indifference to sexual abuse before defendant Lamm's admissions in a
December 2012 interview . . . . This conclusion is belied by the fact that nine
plaintiffs brought their own abuse to the attention of Lamm or other
administrators. To the extent these administrators rebuffed their complaints or
otherwise failed to take adequate remedial action, plaintiffs were thus aware
more than three years before filing this suit of a potential claim for deliberate
indifference. Further, these circumstances put plaintiffs at least on inquiry notice
as to administrators' knowledge of and deliberate indifference to other abuse."
(citation omitted)); *Forrester*, 2021 WL 1812700, at *7 ("[E]ven assuming that
Plaintiffs were not aware of all the facts needed to prove that 'the District acted
with deliberate indifference to [the] assaults,' Plaintiffs' claims accrued when they
became aware of their injuries and the abuse." (citations omitted)); *Anderson*,
616 F. Supp. 2d at 668 ("Plaintiffs' causes of action accrued [under the discovery
rule] at the time of the alleged abusive acts.").[7] Plaintiffs' argument that the

---

[7] As noted above, some cases describe the injury triggering accrual as the abuse itself
(rather than the deprivation of educational opportunities and benefits) and thus find a
claim accrues on the date a plaintiff knew or should have known he or she was abused.
Plaintiffs argue that, if the pertinent inquiry for the discovery rule is when Plaintiffs knew
or should have known they suffered abuse, it is not reasonable to infer that Plaintiffs
were aware of the abuse prior to 2018. Resp. 18, ECF No. 169. Specifically, Plaintiffs
state that "Perkins Coie needed to hire two independent doctors to provide input on the
medical necessity or appropriateness of Strauss's reported procedures." *Id.* The Court
rejects Plaintiffs' argument that the Complaint plausibly alleges Plaintiffs did not know or
should not reasonably have known they were sexually abused until the issuance of the
Perkins Coie report. The Complaint is replete with allegations that Plaintiffs were
concerned by Strauss's abuse and felt violated by it, discussed the abuse with

statute of limitations did not begin to run until they learned of Ohio State's

deliberate indifference via the Perkins Coie report is therefore incorrect as a

matter of law.[8]

### b. Plaintiffs' Claims are not Tolled by the Fraudulent Concealment Doctrine

Plaintiffs also argue that Ohio State's "long-term concealment of its

misconduct creates a basis for tolling." Resp. 2, ECF No. 169. The fraudulent

concealment doctrine tolls a limitations period "where a defendant impermissibly

conceals its wrongdoing from the plaintiff." *Lutz v. Chesapeake Appalachia, LLC*,

807 F. App'x 528, 530 (6th Cir. 2020) (citing *Doe v. Archdiocese of Cincinnati*,

849 N.E.2d 268, 278–79 (Ohio 2006)). To toll the statute of limitations based on

fraudulent concealment, a plaintiff must show "(1) a factual misrepresentation,

---

teammates, classmates, or family members, reported the abuse themselves, or that the abuse caused them immediate mental and emotional distress. *E.g.*, Am. Compl. ¶¶ 168, 182, 205, 214–18, 232, 234–35, 242, 247, 268, 270–71, 280–83, 298, 301, 331–33, 382, 386–87, 444, 483, 503, 543–44, 665, ECF No. 157. All of these allegations directly undercut the notion that Plaintiffs were "not aware that Strauss's conduct was not medically necessary and that it was, in fact, sexual assault" until the Perkins Coie report was published. *Id.* ¶ 391. Unfortunately, the very effect the abuse had on Plaintiffs (i.e., that it was enough to deprive them of the educational opportunities or benefits from Ohio State) was sufficient to put them on at least inquiry notice that they suffered abuse and that the abuse might not have happened but for Ohio State's deliberate indifference.

[8] Plaintiffs' argument that they had no reason to know of Ohio State's deliberate indifference until the announcement in 2018 of its internal investigation is also defeated by the factual allegations in their own Complaint. For example, Plaintiffs allege that Strauss's behavior was an open secret, that athletes would openly "joke" about his abuse, and that rumors of his abuse permeated Ohio State. Resp. 16, ECF No. 169; Compl. ¶¶ 147–48, 246, 284, 475, 519, 646, ECF No. 157. Plaintiffs also knew that Strauss continued to be employed at Ohio State despite this widespread knowledge, which was enough to put them on inquiry notice of Ohio State's deliberate indifference to his horrific and predatory behavior.

(2) that the misrepresentation is misleading, (3) that the misrepresentation induced actual reliance that was reasonable and in good faith, and (4) that it caused detriment to the relying party." *Lutz*, 807 F. App'x, at 530–31 (citing cases). The fourth factor means that fraudulent concealment cannot toll the statute of limitations where the plaintiff "knew or should have known all of the elements of potential causes of action." *Archdiocese of Cincinnati*, 849 N.E.2d at 279; *see also King-White*, 803 F.3d at 764 ("The estoppel effect of fraudulent concealment ends, however, when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." (internal quotation marks and citations omitted)); *Anderson*, 616 F. Supp. 2d at 670 (observing, in a discussion of whether fraudulent concealment can toll the statute of limitations that "the plaintiff is always under the duty to exercise reasonable care and diligence to discover whether he has a viable legal claim, and any fact that should arouse his suspicion is equivalent to actual knowledge of his entire claim." (internal quotation marks and citations omitted)).

Even if Plaintiffs had adequately pleaded the first three factors, they have not done so for the fourth. As explained above, Plaintiffs were aware of all the elements of their cause of action by the late 1990s. That is, they knew of the injury, the identity of the perpetrator, and the perpetrator's employer. *See Archdiocese of Cincinnati*, 849 N.E.2d at 279 (concluding that the fraudulent concealment doctrine was inapplicable where the plaintiff, a victim of sexual

abuse, "at all times knew the identity of his alleged perpetrator and knew the employer of his alleged perpetrator").  Because Plaintiffs have known for decades about the elements of their cause of action, any alleged misrepresentation or concealment by Ohio State did not prevent them from investigating or pursuing their claims.  The cases on which Plaintiffs rely are inapposite because they do not analyze Ohio law.  *See, e.g.*, *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 904 (W.D. Tex. 2019).  Therefore, the fraudulent concealment doctrine does not toll the limitations period for Plaintiffs' claims.

### c. This Analysis Applies Equally to any Title IX Claims brought under a Theory of Hostile Environment or Heightened Risk

Plaintiffs also arguably allege a separate theory of Title IX liability based on Ohio State's creation and perpetuation of a sexually hostile environment.  The Sixth Circuit has stated that "[h]ostile environment [Title IX] claims are distinct from deliberate indifference [Title IX] claims."  *Doe v. Univ. of Ky.*, 959 F.3d 246, 251 n.3 (6th Cir. 2020).  "A Title IX hostile-environment claim is analogous to a Title VII hostile-environment claim," and, to state such a claim, a plaintiff "must allege that his educational experience was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of his educational environment."  *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (internal quotations marks and citations omitted).

Here, the statute of limitations analysis for Plaintiffs' post-assault deliberate indifference claim applies with equal force to any separately asserted hostile-

environment theory of liability because Plaintiffs were certainly aware by the time they graduated that their educational experiences were permeated by a sexually hostile environment. Indeed, any claim would fail on the merits were Plaintiffs unaware. *Doe v. Univ. of Dayton*, 766 F. App'x 275, 283 (6th Cir. 2019) ("We hesitate to deem an environment hostile to a plaintiff when there is no evidence that plaintiff was aware of what occurred." (internal quotation marks and citation omitted)).

Similarly, Plaintiffs purport to assert a Title IX claim based on "pre-assault" deliberate indifference, which Plaintiffs sometimes style as a "heightened risk" claim. Ohio State is correct that Plaintiffs have not cited any case law suggesting the Sixth Circuit recognizes a "heightened risk" theory of Title IX deliberate indifference. The Court has independently found no cases in which the Sixth Circuit has recognized such a theory, although some district courts within the Sixth Circuit have at least recognized the possibility of asserting such a theory of liability. *E.g.*, *Doe v. Hamilton Cty. Bd. of Edu.*, 329 F. Supp. 3d 543 (E.D. Tenn. 2018); *Doe v. Mich. State Univ.*, No. 1:18-cv-390, 2019 WL 5085567 (W.D. Mich. Aug. 21, 2019); *Doe 1 v. Cleveland Metro. Sch. Dist. Bd. of Edu.*, No. 1:20-cv-1695, 2021 WL 1334199 (N.D. Ohio Apr. 9, 2021).

Under this theory, Plaintiffs contend that even if they were aware of Ohio State's deliberate indifference to their own complaints of sexual abuse by Strauss, they had no reason to know that Ohio State's deliberate indifference to the complaints made by *other, prior* students heightened the risk that these

Plaintiffs would be assaulted in the first place. They contend that they had no reason to know that Ohio State heightened the risk they would be sexually assaulted until 2018, when Ohio State announced that it hired Perkins Coie to investigate Strauss's wide-spread abuse.

Even if the Sixth Circuit recognizes a heightened risk theory of liability under Title IX, Plaintiffs' claims in this case are barred by the statute of limitations. In cases where the heightened-risk claim is based on a university's deliberate indifference to prior complaints of student-on-student harassment, it makes sense that a plaintiff may have no reason to suspect the school's knowledge of, and deliberate indifference to, prior complaints until a subsequent investigation, admission, or news report breaks.

Here, however, the perpetrator was an employee of Ohio State. Not only that, but Plaintiffs' complaints make clear that Strauss's abuse was widely known amongst both students and faculty. This general knowledge is enough to have put Plaintiffs on notice that Ohio State may have received complaints about Strauss in the past and yet continued employing him. Accordingly, even if the Sixth Circuit recognizes a heightened risk theory of liability, Plaintiffs' claims are time-barred. *Univ. of Cal.*, 2019 WL 4229750, at *4 ("Even if Plaintiff generally did not learn until recently about USC's alleged deliberate indifference spanning over approximately thirty years, Plaintiff's understanding of her injury at the time of her examination by Dr. Tyndall means that the statute of limitations period began to run immediately following the examination."); *but see, e.g.*, *Hernandez*

*v. Baylor Univ.*, 274 F. Supp. 3d 602 (W.D. Texas Apr. 17, 2017) ("[I]t was not
until January 2016 that Plaintiff first knew that, based on her allegations, Baylor
could have stopped or prevented her assault. Plaintiff's pre-assault claim is
therefore not time-barred."); *Dutchuk v. Yesner*, No. 3:19-cv-136-HRH, 2020 WL
5752848, at *5 (D. Alaska Sept. 25, 2020) (finding heightened risk claim timely
because "[p]laintiffs have alleged that they each first became aware of the
University of Alaska's deliberate indifference to Yesner's repeated misconduct
when a formal report was finally issued in March 2019." (internal quotation marks
and citation omitted)); *Jameson v. Univ. of Idaho*, No. 3:18-cv-451-DCN, 2019
WL 5606828, at *8 (D. Idaho Oct. 30, 2019) ("[I]t is plausible that [plaintiff] had no
reason to further investigate her heightened-risk claim until after the release of
the Independent Report and the subsequent media coverage in 2018.").

## V. CONCLUSION

For these reasons, the Court is compelled to dismiss Plaintiffs' claims as
barred by the statute of limitations.[9] In the words of the Supreme Court of Ohio:

> We conclude as we began: however reprehensible the conduct
> alleged, these actions are subject to the time limits created by the
> Legislature. Any exception to be made to allow these types of claims
> to proceed outside of the applicable statutes of limitations would be
> for the Legislature, as other States have done.

*Archdiocese of Cincinnati*, 849 N.E.2d at 279–80 (internal quotation marks and
citations omitted). At all times since the filing of these cases, the Ohio legislature

---

[9] The Court therefore does not address whether Brian Garrett can otherwise state a
claim under Title IX or whether punitive damages are available.

had the power, but not the will, to change the statute of limitations for these Plaintiffs.  For all the reasons stated above, however, the Court is compelled to **GRANT** Ohio State's motion.  The Clerk is **DIRECTED** to enter judgment for Ohio State and close the case.

      **IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**